**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* CHARLES TERRENCE BRUFF, | § | |
| | § | Civil Action No. 5:22-cv-593-DAE |
| *Plaintiff-Relator*, | § | |
| v. | § | |
| | § | |
| USAA INSURANCE AGENCY, INC., *et al.* | § | |
| | § | |
| *Defendants*. | § | |

---

**DEFENDANT UNITED SERVICES AUTOMOBILE ASSOCIATION'S MOTION TO DISMISS**

---

Defendant United Services Automobile Association, improperly named as USAA Insurance Agency Inc. ("USAA"), files this *Motion to Dismiss*. The complaint – *Plaintiff the United States of America ex rel., Charles Terrence Bruff's Original Complaint*, Dkt. 5, ("Complaint") – filed by Relator, Charles Terrence Bruff ("Bruff" or "Relator"), fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). For the following reasons, the Court should dismiss Relator's Complaint with prejudice.

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………..iv

INTRODUCTION…………………………………………………….…………..1

BACKGROUND…………………………………………………………………1

STANDARD OF REVIEW……………………………………..…..…………..3

ARGUMENT…………………………………………………………………...5

    A.  Relator Fails to Plead with Particularity that USAA
       Made or Caused to be Made a False Statement or Record…………………………..5

    B.  Relator Fails to Plead with Particularity that USAA
       Had an Obligation to Pay the Government………………………………………7

CONCLUSION……………………………………………………………...…..9

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                                                      **Page(s)**

*Ackerman v. Nw. Mut. Life Ins. Co.*,
172 F.3d 467, 469-70 (7th Cir. 1999)......................................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662……………….......................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544……….................................................................................................3

*Caldera v. Ins. Co. of the State of Pa.*
716 F.3d 861 (5th Cir. 2013)...............................................................................2

*Collins v. Wellcare Healthcare Plans, Inc.*,
73 F. Supp. 3d 653 (E.D. La. 2014)......................................................................2

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999)...............................................................................5

*Health Choice Alliance LLC on behalf of U.S. v. Eli Lilly & Co., Inc.*,
No. 5:17-CV-123-RWS-CMC, 2018 WL 3802072 (E.D. Tex. Aug. 10,  2018)………………….5

*Health Choice Alliance LLC on behalf of U.S. v. Eli Lilly & Co., Inc.*,
No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986 (E.D. Tex. July 25, 2018)………….................5

*Heinze v. Tesco Corp.*,
971 F.3d 475 (5th Cir. 2020)...............................................................................7

*Lormand v. US Unwired*,
565 F.3d 228 (5th Cir. 2009)...............................................................................3

*Morgan v. Swanson*,
659 F.3d 359 (5th Cir. 2011)...............................................................................3, 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..............................................................................................3

*Thompson v. Goetzmann*,
337 F.3d 489 (5th Cir. 2003)...............................................................................2

*U.S. ex rel. Angelo v. Allstate Ins. Co.*,
106 F.4th 441 (6th Cir. 2024).............................................................................8, 9

*U.S. ex rel. Bain v. Ga. Gulf Corp.*,
386 F.3d 648 (5th Cir. 2004)...............................................................................1, 8

*U.S. ex rel. Graves v. ITT Educational Services*,
284 F. Supp. 2d 487 (S.D. Tex. 2003)............................................................................4

*U.S. ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009)............................................................................4

*U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,
816 F. App'x 892 (5th Cir. 2020)............................................................................1, 4

*U.S. ex rel. Marcy v. Rowan Cos., Inc.*,
520 F.3d 384 (5th Cir. 2008)............................................................................8

*U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*,
843 F.3d 1033 (5th Cir. 2016)............................................................................8

*Universal Health Servs., Inc. v. United States*,
579 U.S. 176 (2016)............................................................................1, 4

**Statutes**

31 U.S.C. § 3729(a)(1)(G)............................................................................1, 5

31 U.S.C. § 3729(b)(3)............................................................................7

42 U.S.C. § 1395w-101(a)(1), (a)(3)(A)............................................................................2

42 U.S.C. § 1395y(b)............................................................................2

42 U.S.C. § 1395y(b)(1)............................................................................2

42 U.S.C. § 1395y(b)(2)(A)(i)............................................................................2

42 U.S.C. § 1395y(b)(2)(A)(i)-(ii)............................................................................2

42 U.S.C. § 1395y(b)(2)(B)............................................................................8

**Rules**

Fed. R. Civ. P. 9(b)............................................................................*Passim*

Fed. R. Civ. P. 12(b)(6)............................................................................3

## INTRODUCTION

This False Claims Act ("FCA") case asserts a reverse false claim. Relator alleges that USAA committed fraud by refusing to coordinate prescription drug benefits with Medicare, thereby avoiding payment of certain costs it should have otherwise incurred. *See* Compl., Dkt. 5, ¶¶ 29-30, 40. The pleading standard under the FCA requires specific allegations that the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government." *See* 31 U.S.C. § 3729(a)(1)(G); *see also U.S. ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 652-53 (5th Cir. 2004). An FCA claim must also satisfy Rule 9(b)'s heightened pleading standard requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 195 n.6 (2016); *U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 896 (5th Cir. 2020). Relator's Complaint fails to meet that high bar. USAA submits this Motion to Dismiss to address the Complaint's numerous pleading deficiencies.

## BACKGROUND

USAA hired Relator as a software engineer in 2016.[1] Compl., Dkt. 5, ¶ 18. During his employment with USAA, Relator accepted health insurance coverage through USAA's group health plan. Compl., Dkt. 5, ¶ 22. USAA used CareMark RX, L.L.C. ("CareMark") as its pharmacy benefits manager to administer prescription drug coverage for its group health plan. *See* Compl.,

---

[1] USAA cites to allegations pled by Relator for purposes of its Motion to Dismiss. However, USAA in no way admits (and in many instances denies) the allegations set forth in Relator's Complaint.

Dkt. 5, ¶ 23. Relator separately procured Medicare and Medicaid benefits, including prescription drug benefits under Medicare Part D.[2] Compl., Dkt. 5, ¶¶ 20-21.

This lawsuit asserts that USAA and CareMark "refuse[d]" to coordinate benefits to determine whether USAA's prescription drug plan or Medicare was the primary payer for Relator's prescription drugs. Compl., Dkt. 5, ¶¶ 29-30. In making this argument, Relator invokes the Medicare Secondary Payer Act ("MSP Act"). *See* Compl., Dkt. 5, ¶ 26. The MSP Act relegates the government to a secondary payer when another source of primary insurance covers a Medicare recipient.[3] *See* 42 U.S.C. § 1395y(b); *Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861, 863 (5th Cir. 2013). "Medicare serves as a back-up insurance plan to cover that which is not paid for by a primary insurance plan." *Thompson v. Goetzmann*, 337 F.3d 489, 496 (5th Cir. 2003).[4]

According to Relator, USAA initially failed to properly coordinate benefits on two occasions and to ensure the group health plan was the primary payer for his individual prescription benefits. Compl., Dkt. 5, ¶¶ 34-36. Notably, however, Relator admits that USAA "fix[ed] the issue" both times. Compl., Dkt. 5, ¶¶ 34-36. Critically, he does not plead, with particularity or otherwise, that USAA ever caused Medicare to incur a reimbursable cost of any amount. In fact, Relator suggests USAA's conduct resulted in payment for all his drug claims being suspended but does not allege any example of Medicare paying for reimbursable-but-not-reimbursed drug claims

---

[2] Medicare Part D provides extra coverage for prescription drug benefits to those eligible for benefits under Medicare Part A or enrolled under Part B. 42 U.S.C. § 1395w-101(a)(1), (a)(3)(A).
[3] For years, Medicare paid first for many medical services, regardless of whether the beneficiary was also covered by other insurance, like a group health care plan. *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 659 (E.D. La. 2014) (J., Fallon). To counteract escalating health costs, Congress enacted the MSP Act. *Id.* The MSP Act provides that Medicare cannot pay medical expenses when "payment has been made or can reasonably be expected to be made" under certain primary plans. *See* 42 U.S.C. § 1395y(b)(2)(A)(i)-(ii). Primary plans can include group health plans. *See* 42 U.S.C. § 1395y(b)(1); 42 U.S.C. § 1395y(b)(2)(A)(i).
[4] For example, Medicare may be a primary payer when a private prescription drug plan does not cover certain expenses or if the private insurance's coverage limits become exhausted.

that should have been paid by USAA. Compl., Dkt. 5, ¶ 35. The Complaint's remaining allegations are similarly rife with conjecture and unsupported accusations against USAA. For example, Relator claims that USAA and several other national healthcare companies willfully perpetrated fraud upon the federal government worth between "$2 to 4 billion dollars." *See* Compl., Dkt. 5, ¶ 23. Relator extrapolates broadly that fraud is rampant in the industry based on his "ongoing research;" however, noticeably missing from the Complaint is any specific allegation of fraud. *See* Compl., Dkt. 5, ¶¶ 31-32, 34, 41-42, 48.

## STANDARD OF REVIEW

A court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint meets the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft*, 556 U.S. at 678. Under Rule 12(b)(6), "[i]t is Relator's burden as the party bringing this action to allege sufficient factual content to plausibly allege a legally cognizable claim." *U.S. ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO2 Co.,* 491 F. Supp. 3d 220, 231 (N.D. Tex. 2020).

Courts evaluating a motion to dismiss are required to accept all well-pleaded factual allegations as true and draw all reasonable inferences in a relator's favor. *Lormand v. US Unwired*, 565 F.3d 228, 232 (5th Cir. 2009); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). But as the Fifth Circuit held, "we do not presume true a number of categories of statements, including legal conclusions; mere labels; [t]hreadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Morgan v.*

*Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (internal citations and quotations omitted). Only a well-pleaded complaint "unlock[s] the doors to discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

An FCA claim must satisfy Rule 9(b)'s heightened pleading standard requiring a plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 195 n.6 (2016); *U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 896 (5th Cir. 2020). Rule 9(b) requires a plaintiff to allege the particulars of time, place, contents of the false representations, identity of the person making the representations, and what he/she obtained thereby. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). A plaintiff must allege facts detailing an "actually submitted false claim" or "by alleging details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190.

The rationale behind Rule 9(b)'s requirements is that "fraud is frequently charged irresponsibly by people who have suffered a loss," and a relator must do "more than the usual investigation before filing [a] complaint." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469-70 (7th Cir. 1999). Rule 9(b) has four purposes: (1) ensure the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; (2) ward off frivolous suits; (3) eliminate fraud actions where all the facts are learned after discovery; and (4) protect defendants from undeserved harm to their goodwill and reputation. *U.S. ex rel. Graves v. ITT*

4

*Educational Services*, 284 F. Supp. 2d 487, 494 (S.D. Tex. 2003) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)).

**ARGUMENT**

A reverse false claim under the FCA arises when a person 1) knowingly 2) made, used or caused to be made or used, 3) a false record or statement 4) to conceal, avoid or decrease 5) an obligation to pay or transmit money or property to the Government. *See* 31 U.S.C. 3729(a)(1)(G). Relator fails to allege any facts that plausibly establish these elements, let alone enough factual content to satisfy the heightened "particularity" standard.

### A. Relator Fails to Plead with Particularity that USAA Made or Caused to be Made a False Statement or Record.

Making sense of Relator's allegations under the FCA framework would require the Court to draw "unwarranted factual inferences," as prohibited by the Fifth Circuit. *See Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). Relator does not identify a single false statement or record made or submitted by USAA to Medicare material to a reverse false claim. He also does not allege the particulars of any scheme with reliable indicia that would lead to a strong inference in his favor. This falls well short of his burden to allege the who, what, when, or where of any reverse false claim, as is required for pleading fraud. *See Health Choice Alliance LLC on behalf of U.S. v. Eli Lilly & Co., Inc.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 3802072, at *1 (E.D. Tex. Aug. 10, 2018) (affirming and adopting *Health Choice Alliance LLC on behalf of U.S. v. Eli Lilly & Co., Inc.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986 (E.D. Tex. July 25, 2018)) (holding that despite an 85-page complaint, the relator did "not allege any information as to dates or amounts of any false claims for reimbursement to Medicare, Medicaid, or any other federal health care program," and the relator improperly relied on the statistical probability of false claims, but

had "not sufficiently identified the who, the what, the rough time periods and locations (the where and when), and the filing of the false claims themselves.").

Relator alleges that USAA "refus[ed]" to coordinate prescription drug coverage with Medicare, resulting in Medicare being the primary payer for care that should have been covered by USAA's group health plan. *See* Compl., Dkt. 5, ¶ 30. In support of this allegation, Relator suggests only that USAA opted out of CareMark's coordination of benefits service. *See* Compl., Dkt. 5, ¶¶ 34-35, 38-39. Relator seems to assert that this action amounted to a false statement (which would have to be made or used in relation to an obligation owed to the government), but he does not plead any logical or factual support, let alone do so with particularity. In fact, Relator fails to allege that USAA ever caused Medicare to incur a reimbursable-but-not-reimbursed cost of any amount. Relator does not link his allegations to a reverse false claim or any fraud whatsoever against the government. Instead, Relator's allegations demonstrate a fundamental misunderstanding of USAA's role in the coordination of benefits process. Even accepting Relator's allegations as true for purposes of a motion to dismiss, he cannot establish a fraud claim without pleading these key elements.

Ultimately, Relator's allegations are nothing but conclusory statements and naked assertions, which cannot satisfy either *Twombly's* plausibility standard or Rule 9(b)'s heightened particularity requirement. With that framing, the Court cannot presume true the following conclusory allegations as they are lacking factual support:

- USAA attempted to "designate itself as the secondary payer after Medicare . . . [and] never informed Medicare." *See* Compl., Dkt 5 ¶ 35.

- "[N]either USAA nor Caremark has repaid Medicare for any drug claims that Medicare erroneously paid." *Id.; see also id.* at ¶ 37.

- "USAA and CareMark's refusal to coordinate benefits results in Medicare being the primary payer." *Id.* at ¶ 30.

- "USAA's actions defraud the government." *Id.* at ¶ 42; *see also id.* at ¶ 41.

Relator's remaining allegations invoke hypothetical scenarios that "could easily arise" based on his "ongoing research into this issue . . . [where] over four million people are *potentially* affected by similar coordination fraud where the pharmacy benefits manager and private insurer do not properly coordinate benefits." Compl., Dkt. 5 ¶¶ 43, 48 (emphasis added). In other factually unsupported examples, Relator states:

- "[T]here are *potentially* hundreds of plan members" affected by USAA's opt-out of the automated coordination of benefits service through the pharmacy benefits manager. *See* Compl., Dkt 5, ¶ 34. (Emphasis added.)

- "USAA and CareMark's practice thus results in Medicare paying *potentially* hundreds of thousands of dollars each year that USAA should be paying under federal law." *Id.* at ¶ 31. (Emphasis added.)

- A "situation *could easily arise* today where prescriptions and medical treatment are not provided because Medicaid limits and USAA's failure to coordinate coverage with public plans." *Id.* at ¶ 43. (Emphasis added.)

To be clear, even accepting these allegations as true, Relator fails to identify a single false statement or record made or submitted by USAA to Medicare material to a reverse false claim. Relator's threadbare allegations do not meet the particularity requirement of Rule 9(b), and the Complaint must therefore be dismissed with prejudice.

### B. Relator Fails to Plead with Particularity that USAA Had an Obligation to Pay the Government.

A reverse false claim requires a showing that the relator owed "an obligation to pay money to the government." *U.S. ex rel. Reddell v. DynCorp Int'l LLC*, No. 1:14-CV-862019, WL 12875471, at *15 (E.D. Tex. Mar. 20, 2019). The FCA defines "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation,

or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3). The monetary obligation to the government must have existed at the time the alleged improper conduct unde r the FCA occurred and does not extend to "potential or contingent obligations." *U.S. ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657-58 (5th Cir. 2004).[5]

Under the MSP Act, USAA must reimburse Medicare if "it is demonstrated that [USAA] has or had a responsibility to pay." *See* 42 U.S.C. § 1395y(b)(2)(B); *see also U.S. ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 449 (6th Cir. 2024). This concept played out in *United States ex rel. Angelo v. Allstate Ins. Co.*, where the Sixth Circuit affirmed a dismissal of a reverse false claim due to a relator's failure to plead an obligation with particularity. *See* 106 F.4th 441, 448-49 (6th Cir. 2024). The relators argued that an auto insurer failed "to reimburse Medicare for auto-accident-related medical costs incurred by beneficiaries insured by Allstate, thereby defrauding the government, in violation of the False Claims Act." *Id.* at 447. The Sixth Circuit reasoned that the complaint was devoid of details as to "whether and when [the insurer] incurred an obligation to pay for medical expenses . . . and, relatedly, what conditional payments were made by Medicare to fill that void." *Id.*[6] The Sixth Circuit reasoned that, without identifying with particularity a concrete, existing duty to pay money or property owed to the United States, relators' allegations

---

[5] For example, "[a]n established duty, as required for an obligation, to repay the Government would exist if the Government had already assessed or initiated a proceeding to assess a penalty that was owed for the purported overpayments." *See also U.S. ex rel. Marcy v. Rowan Cos., Inc.*, 520 F.3d 384, 391 (5th Cir. 2008) ("[E]ven when a statute requires immediate action from a violator, the government still must choose whether to impose a penalty . . . . [W]hen potential fines depend on intervening discretionary government acts, they are not sufficient to create 'obligations to pay' under the [FCA].") But "[a] statute enforceable through an unassessed monetary penalty . . . creates an obligation to obey the law, not an obligation to pay money." *U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1037 (5th Cir. 2016).

[6] *See also U.S. ex rel. Bain*, 386 F.3d at 657-58 (reversing and remanding a district court's order denying a defendant's motion to dismiss because the "obligation" element of a reverse false claim – which does not extend to "potential or contingent obligations to pay the government" – was not pleaded with particularity sufficient to satisfy Rule 9(b)).

"amount to little more than a 'formulaic recitation of the elements of a cause of action' coupled with the controlling statutory scheme." *U.S. ex rel. Angelo*, 106 F.4th at 449.

Here, Relator's allegations as to USAA's obligation suffer from the same deficiencies, and they do not pass muster under Rule 9(b)'s particularity standard. Relator asserts, as a blanket statement, that Medicare made payments for Relator's prescription drugs, but he does not allege with particularity when that occurred or that USAA had a responsibility to pay. Relator does not allege that USAA owed a "concrete, existing duty to pay money" to the government, and his allegations become no more than an improper "'formulaic recitation of the elements.'" *See id.*

## CONCLUSION

For the foregoing reasons, the Complaint fails to state a claim upon which relief can be granted, and the Court should dismiss the Complaint with prejudice.

Dated: June 30, 2025                    Respectfully submitted:

**McGLINCHEY STAFFORD, PLLC**

By: *T. Dylan Reeves*
T. Dylan Reeves
Texas Bar No. 24070483
6688 N Central Expwy., Ste. 400
Dallas, Texas 75206
Phone: 615-762-9050
Email: dreeves@mcglinchey.com

By: *Megan S. Ben'Ary*
Megan S. Ben'Ary
*Pro Hac Vice Application Forthcoming*
Virginia Bar No. 47439
1275 Pennsylvania Ave. NW, Ste. 420
Washington, DC 20004
Phone: 202-802-9949
Email: mbenary@mcglinchey.com

Will Wojcik
*Pro Hac Vice Application Forthcoming*
Tennessee Bar No. 033634
333 Commerce St., Ste. 1425
Nashville, TN 37201
Phone: 615-762-9048
Email: wwojcik@mcglinchey.com

Morgan E. Kelley
*Pro Hac Vice Application Forthcoming*
Louisiana Bar No. 38299
601 Poydras St., Ste. 1200
New Orleans, LA 70130
Phone: 504-596-2755
Email: mkelley@mcglinchey.com

*Attorneys for Defendant USAA*

## CERTIFICATE OF SERVICE

I certify that on June 30, 2025, a copy of this filing was served on counsel of record through the Court's electronic filing system.

*/s/ T. Dylan Reeves*
T. Dylan Reeves