## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* CHARLES TERRENCE BRUFF, | § § § § | |
| | | Civil Action No. 5:22-cv-593-DAE |
| *Plaintiff-Relator*, | § | |
| v. | § § | |
| USAA INSURANCE AGENCY, INC., *et al.* | § § | |
| *Defendants*. | § § | |

---

## DEFENDANT UNITED SERVICES AUTOMOBILE ASSOCIATION'S MOTION TO DISMISS THE AMENDED COMPLAINT

---

Defendant United Services Automobile Association ("USAA") files this *Motion to Dismiss the Amended Complaint*. The amended complaint – *The United States of America ex rel., Charles Terrence Bruff's Amended Complaint*, Dkt. 48, ("Amended Complaint") – filed by Relator, Charles Terrence Bruff ("Bruff" or "Relator"), fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). For the following reasons, the Court should dismiss Relator's Amended Complaint with prejudice.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..……….iii

INTRODUCTION………………………………………………………………….……….…..1

BACKGROUND……………………………………………………………………….……….2

STANDARD OF REVIEW……………………………………………….…….…..…………..4

ARGUMENT…………………………………………………………………………………...6

    A.  Relator Fails to Plead a Scheme with
       Particularity………………………………………….……………….….……….…6

        1.  Fifth Circuit's Interpretation of Rule 9(b) in
           *Grubbs* and *Nunnally*. ……………………………………………….6

        2.  This Court's Application of *Grubbs* and
           *Nunnally* to FCA Scheme Allegations in
           *United States v. Baylor Scott & White Health*
           as Affirmed by the Fifth Circuit…………………………………..8

        3.  Relator's Allegations Fail to Meet Rule 9(b)'s
           Particularity Requirement under Relevant Precedent……………..………9

           a.  Relator Does Not Sufficiently Allege the
               Who, What, When, or Where of Any Scheme
               Actionable under the FCA. …………………………………10

           b.  Relator's Exhibits Do Not Enhance His
               Factual Presentation to Survive Rule
               9(b)'s Particularity Requirement……………………………...11

           c.  Relator's Amended Complaint is Replete
               with Conclusory Statements, Which
               the Court Cannot Presume True……………………………….13

    B.  Despite the Opportunity to Correct His Pleading Deficiencies
       in the Complaint, Relator Still Fails to Allege with Particularity
       that USAA Had an Obligation to Pay the Government……..………...…………….14

    C.  The Court Should Dismiss Relator's "Direct False
       Claim" Allegations………………………………………………….……………15

    D.  Dismissal Should be With Prejudice…………………………………………17

CONCLUSION……………………………………………………………………….…......18

# <u>TABLE OF AUTHORITIES</u>

Cases

*Ackerman v. Nw. Mut. Life Ins. Co.*,
  172 F.3d 467 (7th Cir. 1999) ................................................................................. 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 4, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 4

*Caldera v. Ins. Co. of the State of Pa.*,
  716 F.3d 861 (5th Cir. 2013) ............................................................................. 3

*Collins v. Wellcare Healthcare Plans, Inc.*,
  73 F. Supp. 3d 653 (E.D. La. 2014).................................................................... 3

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ............................................................................. 5

*Health Choice Alliance LLC on behalf of U.S. v. Eli Lilly & Co., Inc.*,
  2018 WL 3802072 (E.D. Tex. Aug. 10, 2018) ............................................................ 10

*Health Choice Alliance, LLC on behalf of U.S. v. Eli Lilly & Co., Inc.*,
   2018 WL 4026986 (E.D. Tex. July 25, 2018) .......................................................... 10

*Heinze v. Tesco Corp.*,
  971 F.3d 475 (5th Cir. 2020) ............................................................................ 13

*Lormand v. US Unwired*,
  565 F.3d 228 (5th Cir. 2009) ............................................................................. 4

*Morgan v. Swanson*,
  659 F.3d 359 (5th Cir. 2011) ............................................................................. 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................ 4

*Thompson v. Goetzmann*,
  337 F.3d 489 (5th Cir. 2003) ............................................................................. 3

*U.S. ex rel. Angelo v. Allstate Ins. Co.*,
  106 F.4th 441 (6th Cir. 2024) ....................................................................... 14, 15

*U.S. ex rel. Bain v. Ga. Gulf Corp.*,
386 F.3d 648 (5th Cir. 2004) ........................................................................... 14, 15

*U.S. ex rel. Doe v. Dow Chem. Co.*,
343 F.3d 325 (5th Cir. 2003) ............................................................................. 5, 17

*U.S. ex rel. Graves v. ITT Educational Services*,
284 F. Supp. 2d 487 (S.D. Tex. 2003) ...................................................................... 5

*U.S. ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ...................................................................... 1, 5, 6, 7

*U.S. ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO2 Co.*,
491 F. Supp. 3d 220 (N.D. Tex. 2020) ...................................................................... 4

*U.S. ex rel. Hendrickson v. Bank of America, N.A.*,
343 F. Supp. 3d 610 (N.D. Tex. 2018) ...................................................................... 9

*U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,
816 Fed. App'x 892 (5th Cir. 2020) .................................................................. 1, 5, 8

*U.S. ex rel. Integra Med Analytics, LLC v. Creative Solutions in Healthcare, Inc.*,
2019 WL 5970283 (W.D. Tex. Nov. 13, 2019) ........................................................ 16

*U.S. ex rel. Jamison v. Career Opportunities, Inc.*,
2019 WL 460229 (N.D. Tex. Feb. 6, 2019) .............................................................. 11

*U.S. ex rel. Ligai v. ETS-Lindgren Inc.*,
2014 WL 4649885 (S.D. Tex. Sept. 16, 2014) ........................................................ 16

*U.S. ex rel. Marcy v. Rowan Cos., Inc.*,
520 F.3d 384 (5th Cir. 2008) ................................................................................. 14

*U.S. ex rel. Nunnally v. West Calcasieu Cameron Hospital*
519 Fed. App'x 890 (5th Cir. 2013) ...................................................................... 7, 9

*U.S. ex rel. O'Neill v. Gopalam*,
2023 WL 6396659 (M.D. La. Sept. 29, 2023) ........................................................... 9

*U.S. ex rel. Reddell v. DynCorp Int'l, LLC*,
2019 WL 12875471 (E.D. Tex. Mar. 20, 2019) ...................................................... 14

*U.S. ex rel. Thomas v. Siemens AG*,
708 F. Supp. 2d 505 (E.D. Pa. 2010) ..................................................................... 16

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*,
336 F.3d 375 (5th Cir. 2003) ................................................................................. 17

*U.S. ex rel. Williams v. McKesson Corp.*, No. 3:12–CV–0371–B,
2014 WL 3353247 (N.D. Tex. July 9, 2014) .................................................................. 12

*U.S. ex rel. Wismer v. Branch Banking & Trust*,
2014 WL 1407584 (N.D. Tex. Apr. 11, 2014) ..................................................... 17, 18

*U.S. ex rel. Polansky v. Executive Heath Res., Inc.*,
599 U.S. 419 (2023) .......................................................................................................... 2

*U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*,
843 F.3d 1033 (5th Cir. 2016) .................................................................................... 14

*United States v. Baylor Scott & White Health*,
2019 WL 3713756 (W.D. Tex. Aug. 5, 2019).................................................... 8, 9, 10

*United States v. HCA Health Servs. of Oklahoma, Inc.*,
2011 WL 4590791 (N.D. Tex. Sept. 30, 2011) ...................................................... 16

*Universal Health Servs., Inc. v. United States*,
579 U.S. 176 (2016) .................................................................................................. 1, 5

Statutes

31 U.S.C. 3729(a)(1)(A) ....................................................................................... 1, 6, 16

31 U.S.C. § 3729(a)(1) ................................................................................................. 15

31 U.S.C. § 3729(a)(1)(G) .............................................................................. 1, 6, 14, 16

31 U.S.C. § 3729(b)(3) ................................................................................................. 14

31 U.S.C. § 3730(b)-(c) .................................................................................................. 2

42 U.S.C. § 1395w-101(a)(1), (a)(3)(A)........................................................................ 2

42 U.S.C. § 1395y(b) ..................................................................................................... 3

42 U.S.C. § 1395y(b)(2)(B) ......................................................................................... 14

Rules

Fed. R. Civ. P. 12(b)(6)................................................................................................... 4

Fed. R. Civ. P. 9(b)………………………………………………………………….*Passim*

**INTRODUCTION**

In the Amended Complaint, Relator reasserts the reverse false claim theory set forth in his initial Complaint and seeks to add a direct false claim theory under the False Claims Act ("FCA"). Yet he still fails to meet the particularity requirements of Rule 9(b). Relator alleges, without the necessary factual support, that USAA conspired to commit fraud by refusing to coordinate prescription drug benefits with Medicare, thereby avoiding payment of costs it should have otherwise incurred. *See* Am. Compl., Dkt. 48, ¶¶ 1, 42-64.

For a relator to allege a viable reverse false claim, he must plead that the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or *knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government*." 31 U.S.C. § 3729(a)(1)(G) (emphasis added). A "direct" false claim requires proof that the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. 3729(a)(1)(A).

An FCA claim (whether reverse or direct) must satisfy Rule 9(b)'s heightened pleading standard, requiring a relator to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 195 n.6 (2016); *U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 Fed. App'x 892, 896 (5th Cir. 2020). A relator must specifically allege the "particular details of a scheme . . . paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).

Despite the opportunity to correct his pleading deficiencies, Relator failed to do so. The Amended Complaint remains riddled with conclusory allegations lacking in factual support.

1

Although Relator attaches three exhibits, their evidentiary value is not established, as Relator fails to explain how the sweeping conclusions made from these documents support his claims. In similar cases, other relators pleaded much more detail than Bruff, yet still fell short of Rule 9(b)'s particularity requirement.

Further, Relator's "direct" false claim is redundant of his "reverse" false claim, which presents additional grounds for dismissal.

For these reasons, USAA moves to dismiss the Amended Complaint.

## **BACKGROUND**

USAA hired Relator as a software engineer in 2016.[1] Am. Compl., Dkt. 48, ¶ 43. During his employment with USAA, Relator enjoyed health insurance coverage through USAA's group health plan. Am. Compl., Dkt. 48, ¶ 47. USAA used CareMark RX, L.L.C. ("CareMark") as its pharmacy benefits manager to administer prescription drug coverage for its group health plan. *See* Am. Compl., Dkt. 48, ¶ 48. Relator separately procured Medicare and Medicaid benefits, including prescription drug benefits under Medicare Part D.[2] Am. Compl., Dkt. 48 ¶ 45.

This lawsuit asserts that USAA and CareMark schemed to defraud the government by "refus[ing]" to coordinate benefits and determine whether USAA's prescription drug plan or Medicare and Medicaid was the primary payer for Relator's prescription drugs. Am. Compl., Dkt. 48, ¶¶ 1,7.[3] In making this argument, Relator invokes the Medicare Secondary Payer Act ("MSP

---

[1] USAA cites to allegations pled by Relator for purposes of its Motion to Dismiss. However, USAA in no way admits (and in many instances denies) the allegations set forth in Relator's Amended Complaint.

[2] Medicare Part D provides extra coverage for prescription drug benefits to those eligible for benefits under Medicare Part A or enrolled under Part B. 42 U.S.C. § 1395w-101(a)(1), (a)(3)(A).

[3] Relator brings suit under the *qui tam* provisions of the FCA, which allow a private citizen to represent the interests of the United States, even when the United States declines to intervene. *See* 31 U.S.C. § 3730(b)-(c). A recent United States Supreme Court dissent highlighted the potential unconstitutionality of the *qui tam* device in such scenarios. *See U.S. ex rel. Polansky v. Executive Heath Res., Inc.*, 599 U.S. 419, 449-50 (2023) (Thomas, J., dissenting). Specifically, the FCA's

Act"). *See* Am. Compl., Dkt. 48, ¶ 3. The MSP Act relegates the government to a secondary payer when another source of primary insurance covers a Medicare recipient.[4] *See* 42 U.S.C. § 1395y(b); *Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861, 863 (5th Cir. 2013). "Medicare serves as a back-up insurance plan to cover that which is not paid for by a primary insurance plan." *Thompson v. Goetzmann*, 337 F.3d 489, 496 (5th Cir. 2003).[5]

Relator filed the Amended Complaint after USAA moved to dismiss his initial Complaint. *See* Compl., Dkt. 5; Mtn. to Dismiss, Dkt. 37. However, the Amended Complaint still cannot survive Rule 9(b). Factually, Relator continues to allege that USAA failed to coordinate benefits properly on two occasions and to ensure the group health plan was the primary payer for his individual prescription benefits. Am. Compl., Dkt. 48, ¶¶ 53, 55, 57-58. But now, Relator also alleges that USAA was acting per a "scheme" that it "orchestrated." *See* Am. Compl., Dkt. 48, ¶1. Despite this alleged "scheme," Relator still admits that USAA "fix[ed] the issue." *See* Am. Compl., Dkt. 48, ¶ 57. And Relator still does not plead at all, let alone with particularity, that USAA ever caused Medicare to incur a reimbursable cost of any amount.

Relator attaches three exhibits to the Amended Complaint, but he provides no explanation of how they support his conclusions. Finally, and most importantly, Relator fails to explain how he learned of the alleged "scheme," what individuals were involved, the contents of any

---

*qui tam* provisions may conflict with Article II of the Constitution by allowing private relators to exercise core executive power reserved to the President by the Appointments Clause. *Id.*

[4] For years, Medicare paid first for many medical services, regardless of whether the beneficiary was also covered by other insurance, like a group health care plan. *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 659 (E.D. La. 2014) (J., Fallon). To counteract escalating health costs, Congress enacted the MSP Act. *Id.* The MSP Act provides that Medicare cannot pay medical expenses when "payment has been made or can reasonably be expected to be made" under certain primary plans. *See* 42 U.S.C. § 1395y(b)(2)(A)(i)-(ii). Primary plans can include group health plans. *See* 42 U.S.C. § 1395y(b)(1); 42 U.S.C. § 1395y(b)(2)(A)(i).

[5] For example, Medicare may become a primary payer when a private prescription drug plan does not cover certain expenses or if the private insurance's coverage limits become exhausted.

conversations, or any details whatsoever that would show reliable indicia leading to a reasonable inference in his favor (to wit, that the scheme occurred). Relator's Amended Complaint is rife with conclusions and naked assertions. It should be dismissed with prejudice.

## STANDARD OF REVIEW

A court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint meets the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Under Rule 12(b)(6), "[i]t is Relator's burden as the party bringing this action to allege sufficient factual content to plausibly allege a legally cognizable claim." *U.S. ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO2 Co.,* 491 F. Supp. 3d 220, 231 (N.D. Tex. 2020).

Courts evaluating a motion to dismiss are required to accept all well-pleaded factual allegations as true and draw all reasonable inferences in a relator's favor. *Lormand v. US Unwired*, 565 F.3d 228, 232 (5th Cir. 2009); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). But as the Fifth Circuit held, "we do not presume true a number of categories of statements, including legal conclusions; mere labels; [t]hreadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (internal citations and quotations omitted). Only a well-pleaded complaint "unlock[s] the doors to discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-

4

pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

An FCA claim must satisfy Rule 9(b)'s heightened pleading standard requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 195 n.6 (2016); *U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 896 (5th Cir. 2020); *see also U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) (applying Rule 9(b)'s particularity standard to reverse false claims). Rule 9(b) requires a plaintiff to allege the particulars of time, place, contents of the false representations, identity of the person making the representations, and what they obtained thereby. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009).  A plaintiff satisfies Rule 9(b) by detailing facts of an "actually submitted false claim" or by "alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  *Id.* at 190.

The rationale behind the requirements of Rule 9(b) is that "fraud is frequently charged irresponsibly by people who have suffered a loss," and a relator must do "more than the usual investigation before filing [a] complaint." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469-70 (7th Cir. 1999). Rule 9(b) has four purposes: (1) ensure the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; (2) ward off frivolous suits; (3) eliminate fraud actions where all the facts are learned after discovery; and (4) protect defendants from undeserved harm to their goodwill and reputation. *U.S. ex rel. Graves v. ITT Educational Services*, 284 F. Supp. 2d 487, 494 (S.D. Tex. 2003) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)).

**ARGUMENT**

Relator alleges that USAA schemed to defraud the government, actionable as both "direct" and "reverse" false claims under the FCA. However, Relator does not properly plead the details of an actually submitted false claim or a scheme to engage in fraudulent behavior. Relator also fails to plead that USAA owed an obligation to the government. Further, Relator's "direct" false claim allegations are impermissibly redundant to his "reverse" false claims. Relator has now twice failed to properly plead the necessary details to state a viable claim against USAA, and this lawsuit should be dismissed with prejudice, as a third chance to properly plead the necessary details is likely to be futile given how little new information Relator added in the prior attempt to cure his pleading deficiencies.

**A. Relator Fails to Plead a Scheme with Particularity.**

A reverse false claim under the FCA arises when a person "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. 3729(a)(1)(G). A "direct" false claim makes liable any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. 3729(a)(1)(A). Relator fails to allege any facts that plausibly establish the necessary elements, let alone enough factual content to satisfy the heightened "particularity" standard. Relator's Amended Complaint centers on the alleged reverse false claim cause of action, so accordingly, this analysis does, too.

**1. Fifth Circuit's Interpretation of Rule 9(b) in *Grubbs* and *Nunnally*.**

The Fifth Circuit held that a relator can satisfy Rule 9(b)'s particularity standard as to a false claim in two ways. First, a relator can "allege the details of an actually submitted false claim." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). In the alternative, a relator

need not evince an actually submitted false claim but can allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.*

In *United States ex rel. Nunnally v. West Calcasieu Cameron Hospital,* the Fifth Circuit cautioned that its ruling in *Grubbs* "does not absolve [Relator] of the burden of otherwise sufficiently pleading the time, place, or identity details of the traditional standard, in order to effectuate Rule 9(b)'s function of fair notice and protection from frivolous suits." 519 Fed. App'x 890, 895 (5th Cir. 2013). There, the relator alleged that a defendant hospital schemed to defraud the Government by charging "reduced test fees to physicians in return for the physician referring to [defendant hospital] all patients in need of laboratory tests, particularly those covered by Medicare;" the defendant hospital would then allegedly charge Medicare significantly higher fees. *Id.* at 892.

The Fifth Circuit affirmed dismissal of these allegations, reasoning that the single example of alleged fraud (involving a purported agreement to charge physicians and Medicare different pay scales), without additional context, was not enough to infer that fraud occurred. *Id.* at 894 (specifying that there was no information about the contents of any improper agreement, the identity of any participating physicians, actual inducements, or improper referrals). The court concluded that the relator failed to plead "factual information with sufficient indicia of reliability" that did not "demonstrate a strong inference that [false] claims were presented to the Government." *Id.* at 893-95 (distinguishing the *Grubbs* relator from the *Nunnally* relator in that the former properly provided an "actual description of a solicitation by two of the defendants to the relator to participate in an elaborate scheme to defraud the government," whereas the latter's complaint was

improperly "broad and sweeping, providing no indicia of any actual knowledge of any FCA-violating fraud").

### 2. This Court's Application of *Grubbs* and *Nunnally* to FCA Scheme Allegations in *United States v. Baylor Scott & White Health* as Affirmed by the Fifth Circuit.

This Court similarly dismissed claims under Rule 9(b) in *United States v. Baylor Scott & White Health*, where a relator alleged that a hospital fraudulently miscoded treatment for Medicare reimbursement to increase hospital revenue. No. 5:17-cv-886, 2019 WL 3713756, at *1 (W.D. Tex. Aug. 5, 2019) (Ezra, J.), *aff'd*, *U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 Fed. App'x 892 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 905 (2020). There, the relator identified an individual who allegedly spearheaded a scheme; the relator also detailed the mechanics of the alleged scheme, pinpointed "tip sheet" documents distributed by the hospital to teach physicians how to miscode, described how the physicians were sent "queries" meant to pressure them into miscoding medical treatment, and alleged that defendants provided medically unnecessary treatment to promote higher reimbursements from Medicare. *Id.* at *2. Finally, the relator provided a document showing that the hospital performed the allegedly miscoded medical procedures at a statistically higher rate than surrounding hospitals. *Id.*

Even so, the Court dismissed the amended complaint because the relator failed to plead with particularity that defendants committed a scheme to submit false claims. *Id.* at *4. The Court contemplated that the hospital's actions could be explained by alternate motives, such as increasing its revenue through legitimate means by more accurate coding. *Id.* at *5. The only allegation implying any improper coding conduct – that physicians were pressured to improperly code – was a "naked assertion[] devoid of further factual enhancement." *Id.* at *5 (reasoning that such "allegations do not specify what the pressure was, who applied the pressure, or how the desired

coding was unethical or fraudulent, and does not give any specific examples of any requests for unethical, inappropriate, or fraudulent coding."). The Court predicated its reasoning on *Ashcroft v. Iqbal*'s rationale: "[W]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citing 556 U.S. 662, 678 (2009) (internal citations omitted)) (cleaned up).

### 3. Relator's Allegations Fail to Meet Rule 9(b)'s Particularity Requirement under Relevant Precedent.

Relators in other cases have pleaded many more details of alleged FCA fraud than are alleged here and still have not survived Rule 9(b)'s particularity requirement. *See, e.g.*, *U.S. ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 Fed. App'x 890, 892-93, 895 (5th Cir. 2013), *supra*; No. 5:17-cv-886, 2019 WL 3713756, at *1 (W.D. Tex. Aug. 5, 2019) (Ezra, J.), *aff'd*, *U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 Fed. App'x 892, 899 (5th Cir. 2020) (reasoning that the relator – an employee of the defendant who alleged that she was pressured to mis-code medical treatments to increase revenue through Medicare – "fail[ed] to state the content of these allegedly unethical and fraudulent directives, trainings, and guidance . . . . [t]hus, the district court correctly dismissed the claim based on these conclusory allegations"); *U.S. ex rel. O'Neill v. Gopalam*, No. 18-567, 2023 WL 6396659, at *11-12, 24 (M.D. La. Sept. 29, 2023) (agreeing that in "Relator's 100+ paragraph Amended Complaint does not include a single allegation regarding a specific patient, false record, claim, or billing date to support his FCA claims" and dismissing the claims under Rule 9(b)); *U.S. ex rel. Hendrickson v. Bank of America, N.A.*, 343 F. Supp. 3d 610, 633 (N.D. Tex. 2018) (applying *Grubbs* to alleged reverse false claims and finding that a scheme was not alleged with sufficient particularity for failing to "include almost any particular details" of the alleged scheme).

### a. Relator Does Not Sufficiently Allege the Who, What, When, or Where of Any Scheme Actionable under the FCA.

Relator alleges direct and reverse false claims, and in similar fashion, they fail to meet Rule 9(b)'s particularity requirement as interpreted by the *Grubbs* and *Nunnally* courts and as applied in *Baylor Scott*. Relator alleges that USAA "orchestrated" a scheme to avoid reimbursing Medicare for prescription drug coverage allegedly owed as a primary payer under the MSP Act. Am. Compl., Dkt. 48, ¶ 1. He claims that USAA's group health plan, through CareMark, allegedly rejects submissions of claims for prescription drug benefits if the group health care beneficiary is also covered by Medicare Part D. *See* Am. Compl., Dkt. 48, ¶ 42. This alleged "refusal to coordinate benefits results in Medicare being the only payer for prescription drugs that should be covered by USAA's large group health plan." Am. Compl., Dkt. 48, ¶ 38.

However, Bruff supplies no details with particularity sufficient to support these conclusory allegations. In terms of personal knowledge, Relator alleges only that he "discovered the lack of coordination," he was told by "USAA's HR that USAA and Caremark do not coordinate prescription medication coverage" for Medicare enrollees, and he was instructed that "employees enrolled with USAA's large group health plan should not seek reimbursement of prescription drug costs paid by Medicare or Medicaid." Am. Compl., Dkt. 48, ¶¶ 53, 55. Relator admits that "USAA agreed to fix the issue and coordinate care for [him]," which belies any inferences of fraudulent or otherwise nefarious intent. *See* Am. Compl., Dkt. 48 ¶ 57.

These allegations fall well short of the burden to allege the who, what, when, or where of any false claim or associated scheme, as is required for pleading fraud. *See Health Choice Alliance LLC on behalf of U.S. v. Eli Lilly & Co., Inc.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 3802072, at *1 (E.D. Tex. Aug. 10, 2018) (affirming and adopting *Health Choice Alliance, LLC on behalf of U.S. v. Eli Lilly & Co., Inc.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986 (E.D. Tex. July

10

25, 2018)) (holding that despite an 85-page complaint, the relator did "not allege any information as to dates or amounts of any false claims for reimbursement to Medicare, Medicaid, or any other federal health care program," and the relator improperly relied on the statistical probability of false claims, but had "not sufficiently identified the who, the what, the rough time periods and locations (the where and when), and the filing of the false claims themselves.").

Instead, Relator's allegations demonstrate a fundamental misunderstanding of USAA's role in the coordination of benefits process. *See* Am. Compl., Dkt 48 ¶ 69. He alleged that Caremark enables fraud because Caremark offers an optional coordination-of-benefits service. However, he relies on the unsupported assumption that benefits would then never be coordinated but for Caremark's optional service. Relator does not identify how he "discovered the lack of coordination" or what information led him to conclude that an optional coordination-of-benefits service becomes a fraud scheme against the government. *See* Am. Compl., Dkt. 48, ¶ 53. Even accepting Relator's allegation as true that benefits are not coordinated through Caremark's optional service, Relator does not provide reliable indicia leading to a strong inference that USAA knew benefits would go uncoordinated. And crucially, Relator fails to rule out that benefits would not be coordinated through other mechanisms or processes.

> **b. Relator's Exhibits Do Not Enhance His Factual Presentation to Survive Rule 9(b)'s Particularity Requirement**.

Relator attaches three exhibits to his Amended Complaint, none of which provide the necessary support to survive Rule 9(b)'s particularity standard. *See, e.g., U.S. ex rel. Jamison v. Career Opportunities, Inc.*, No. 3:16-CV-3248-S, 2019 WL 460229, at *7-9 (N.D. Tex. Feb. 6, 2019) (granting a defendant's motion to dismiss a relator's false claim allegations and reasoning that the relator's exhibits did "not appear to be related to claims for payment, so it is unclear how they could be material to a false or fraudulent claim" and further noting that assumptions relied

11

upon by the relator in utilizing the exhibits were not apparent from the documents); *U.S. ex rel. Williams v. McKesson Corp.*, No. 3:12–CV–0371–B, 2014 WL 3353247, at *7 (N.D. Tex. July 9, 2014) (dismissing a relator's FCA claims under Rule 9(b) and noting that the relator's spreadsheet attached to the complaint "is not explained in any way" beyond the relator's "conclusory description," and "[a]t the very least, these conflicting and undetailed assertions leave Defendants without adequate notice of what particular false claims they must defend against and how these claims were purportedly false").

Here, Relator attaches three exhibits to the Amended Complaint but provides only conclusory statements about their alleged value to his claims. Relator attaches Exhibit A, an explanation of benefits summary, which purportedly shows that "prescriptions paid by CMS are not even submitted to USAA." Am. Compl., Dkt. 48, ¶ 56. However, this conclusion is not self-evident from the document, and Relator fails to provide any factual context correlating this alleged evidence to his FCA claims. For example, there is no indication that any payments submitted to or made by USAA would appear on this document or whether USAA's group health plan even covered the prescriptions listed in Exhibit A, such that USAA would be billed for the prescriptions.

Exhibits B and C are similarly lacking explanation, which is fatal to the conclusions Relator attempts to draw from them. Exhibit B seems to be a spreadsheet created by Relator (or his counsel) purporting to show that "there have been no reimbursements to CMS for the conditional payments." Am. Compl., Dkt. 48, ¶ 61. Assuming Relator's summary of this data is even accurate or comprehensive, there is no interpretation of Exhibit B that leads to such a conclusion without making numerous unsupportable inferences.

Exhibit C shows "screenshots of Mr. Bruff's prescriptions," supposedly supporting the conclusion that "when a pharmacy attempts to submit a claim for payment of a prescription

12

medication to the USAA large group health plan, the submission will be rejected if the patient is a Part D beneficiary." Am. Compl., Dkt. 48, ¶ 62. Again, Relator provides no context for his interpretation of this document or explanation of how he drew such conclusions. In fact, Exhibit C seems to show that a "Third Party" identified as "CareMark" with Group number "RX1015" *did* pay $563.32 towards the prescription at issue. *See* Am. Compl., Dkt. 48, Exhibit C, p. 1. Relator failed to consider the possibility that the plan with Group number RX1015 was actually USAA's group health plan. If so, Exhibit C squarely contradicts his allegations.

### c. Relator's Amended Complaint is Replete with Conclusory Statements, Which the Court Cannot Presume True.

Making sense of Relator's allegations under the FCA framework would require the Court to draw "unwarranted factual inferences," as prohibited by the Fifth Circuit. *See Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). Here, Relator's remaining allegations are nothing but conclusory statements and naked assertions, which cannot satisfy either *Twombly's* plausibility standard or Rule 9(b)'s heightened particularity requirement. The Court cannot presume true Relator's conclusory allegations, as they are lacking in factual support. These include:

- USAA attempted to "designate itself as the secondary payer after Medicare . . . [and] never informed Medicare." Am. Compl., Dkt 48, ¶ 58.

- "[N]either USAA nor Caremark has repaid Medicare for any drug claims that Medicare conditionally paid." *Id.* at ¶ 60.

- "USAA and Caremark's refusal to coordinate benefits results in Medicare being the only available payer." *Id.* at ¶ 51.

- "USAA's actions defraud the United States Government of millions, if not billions of dollars." *Id.* at ¶ 67.

Relator had an opportunity to correct his pleading deficiencies, yet he simply doubled-down on his myriad conclusory allegations, including these indecipherable exhibits as the only additional

support. Ultimately, Relator's threadbare allegations do not meet the particularity requirement of Rule 9(b), and the Amended Complaint must therefore be dismissed with prejudice.

**B. Despite the Opportunity to Correct His Pleading Deficiencies in the Complaint, Relator Still Fails to Allege with Particularity that USAA Had an Obligation to Pay the Government.**

A reverse false claim requires a showing that the relator owed "an obligation to pay the United States." *U.S. ex rel. Reddell v. DynCorp Int'l, LLC*, No. 1:14-CV-86, 2019 WL 12875471, at \*15 (E.D. Tex. Mar. 20, 2019) (citing *U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1035 (5th Cir. 2016) (citing 31 U.S.C. § 3729(a)(1)(G))). The FCA defines "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3). The monetary obligation to the government must have existed at the time the alleged improper conduct under the FCA occurred and does not extend to "potential or contingent obligations." *U.S. ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657-58 (5th Cir. 2004).[6]

Under the MSP Act, USAA must reimburse Medicare if "it is demonstrated that [USAA] has or had a responsibility" to pay. *See* 42 U.S.C. § 1395y(b)(2)(B); *see also U.S. ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 449 (6th Cir. 2024). This concept played out in *United States ex rel. Angelo v. Allstate Ins. Co.*, where the Sixth Circuit affirmed a dismissal of a reverse false

---

[6] For example, "[a]n established duty, as required for an obligation, to repay the Government would exist if the Government had already assessed or initiated a proceeding to assess a penalty that was owed for the purported overpayments." *See also U.S. ex rel. Marcy v. Rowan Cos., Inc.*, 520 F.3d 384, 391 (5th Cir. 2008) ("[E]ven when a statute requires immediate action from a violator, the government still must choose whether to impose a penalty . . . . [W]hen potential fines depend on intervening discretionary government acts, they are not sufficient to create 'obligations to pay' under the [FCA].") But "[a] statute enforceable through an unassessed monetary penalty . . . creates an obligation to obey the law, not an obligation to pay money." *U.S. ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1037 (5th Cir. 2016).

claim due to a relator's failure to plead an obligation with particularity. *See* 106 F.4th at 448-49. The relators argued that an auto insurer failed "to reimburse Medicare for auto-accident-related medical costs incurred by beneficiaries insured by Allstate, thereby defrauding the government, in violation of the False Claims Act." *Id.* at 447. The Sixth Circuit reasoned that the complaint was devoid of details as to "whether and when [the insurer] incurred an obligation to pay for medical expenses . . . and, relatedly, what conditional payments were made by Medicare to fill that void." *Id.*[7] The Sixth Circuit reasoned that, without identifying with particularity a concrete, existing duty to pay money or property owed to the United States, relators' allegations "amount to little more than a 'formulaic recitation of the elements of a cause of action' coupled with the controlling statutory scheme." *U.S. ex rel. Angelo*, 106 F.4th at 449.

Here, Relator's allegations as to USAA's obligation suffer from the same deficiencies and therefore do not pass muster under Rule 9(b)'s particularity standard. Relator blanketly asserts that Medicare made payments for Relator's prescription drugs when USAA had an obligation to pay, but he fails to allege with the required particularity that USAA had the responsibility to pay. Relator does not allege that USAA owed a "concrete, existing duty to pay money" to the government, making his allegations no more than an improper "'formulaic recitation of the elements.'" *See id.* Even after the opportunity to amend, Relator still cannot plead with particularity that USAA had an obligation to pay the government.

### C. The Court Should Dismiss Relator's "Direct False Claim" Allegations.

Section 31 U.S.C. § 3729(a)(1) imposes liability for knowingly presenting a false claim for payment to the federal government. This is a "direct" false claim. In contrast, a "reverse" false

---

[7] *See also U.S. ex rel. Bain,* 386 F.3d at 657-58 (reversing and remanding a district court's order denying a defendant's motion to dismiss because the "obligation" element of a reverse false claim – which does not extend to "potential or contingent obligations to pay the government" – was not pleaded with particularity sufficient to satisfy Rule 9(b)).

claim arises when payment to the government is wrongfully avoided. *See* 31 U.S.C. § 3729(a)(1)(G). Relators cannot make "redundant" claims under the False Claims Act by "recasting" a direct false claim as a reverse false claim. *See United States v. HCA Health Servs. of Oklahoma, Inc.*, No. 3:09–CV–099, 2011 WL 4590791, at *8 (N.D. Tex. Sept. 30, 2011) (noting that "Congress's purpose in enacting [Subsection 3729(a)(1)(G)] was to ensure that one who makes a false statement in order to avoid paying money owed the government '"would be equally liable under the Act as if he had submitted a false claim to receive money"'"") (citing *U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 514 (E.D. Pa. 2010)). This "type of redundant false claim is not actionable." *U.S. ex rel. Ligai v. ETS-Lindgren Inc.*, No. H-112973, 2014 WL 4649885, at *13 (S.D. Tex. Sept. 16, 2014). For example, when dismissing a reverse false claim that was redundant to a direct false claim, a Western District of Texas court reasoned that the relator provided "no additional facts and cites to no case to support its contention that any violation of § 3729(a)(1)(A) necessarily carries with it a violation of § 3729(a)(1)(G)." *U.S. ex rel. Integra Med Analytics, LLC v. Creative Solutions in Healthcare, Inc.*, No. SA-17-CV-1249-XR, 2019 WL 5970283, at *13 (W.D. Tex. Nov. 13, 2019).

Here, Relator alleges only that "USAA . . . present[s] fraudulent claims for payment to the United States Government when they knowingly cause Medicare and Medicaid to be charged for prescription drugs that should be covered by the large group health plans of the PBM's clients." Am. Compl. Dkt. 48, ¶ 74. This allegation is redundant to Relator's alleged reverse false claims, making the two causes of action mutually exclusive by their very nature. Relator provides no new facts or justification in support of his direct false claim, a flaw that was similarly fatal to the *Integra* relator's direct and reverse false claims. Logically and as contemplated in precedent, USAA cannot (allegedly) both avoid an obligation to pay the Government *and* submit a claim to the government

16

for (allegedly) fraudulent payment, at least under the facts as pleaded. This could lead to an impermissible double recovery.

Notwithstanding the redundancy, Relator's direct false claims also fail for similar reasons as his reverse false claims; he does not allege enough factual content to satisfy the heightened "particularity" standard of Rule 9(b). In fact, Relator does not even *plausibly* allege key elements of a direct false claim, like an obligation owed or a false statement made. For all these reasons, Relator's "direct" false claims should be dismissed.

### D. Dismissal Should be With Prejudice.

Leave to amend is not automatic but "within the sound discretion of the district court." *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003). Leave to amend may be denied where the party seeking leave has repeatedly failed to cure deficiencies by amendments previously allowed and when amendment would be futile. *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).

For example, a court dismissed with prejudice a relator's FCA claims in his first amended complaint, observing that the relator "came back with more carefully worded allegations but essentially the same operative facts as before. His repeated failure to produce sufficient facts to satisfy Rule 9(b)'s exacting standards, in a case filed nearly two years ago, suggests that all further re-pleading will be futile." *U.S. ex rel. Wismer v. Branch Banking & Trust*, No. 3:13–CV–1894–B, 2014 WL 1407584, at *3, 5 (N.D. Tex. Apr. 11, 2014) (noting that, in the amended complaint, the relator added the name of an employee who supposedly told the relator of the fraudulent scheme to submit false claims, but "without more, does not render the allegations sufficient under Rule 9(b)'s exacting standards"). The court suggested that the relator's amended complaint contained allegations that were still "either too conclusory or based solely on [the relator's] un-

sourced independent 'knowledge and belief,' neither of which live up to Rule 9(b)'s standards." *Id.* at *3.

Here, Relator already had two opportunities to properly plead his claims, yet he is still unable to state a claim for relief. Relator provided little additional information in his Amended Complaint, which is particularly salient as this suit has been pending for over three years. Relator's pleading deficiencies are sizeable, and there is no indication that he can overcome them through a third complaint.

## <u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint fails to state a claim upon which relief can be granted, and the Court should dismiss the Amended Complaint with prejudice.

**McGLINCHEY STAFFORD, PLLC**

By: *T. Dylan Reeves*
T. Dylan Reeves
Texas Bar No. 24070483
6688 N Central Expwy., Ste. 400
Dallas, Texas 75206
Phone: 615-762-9050
Email: dreeves@mcglinchey.com

By: *Megan S. Ben'Ary*
Megan S. Ben'Ary
*Pro Hac Vice Admission*
Virginia Bar No. 47439
1275 Pennsylvania Ave. NW, Ste. 420
Washington, DC 20004
Phone: 202-802-9949
Email: mbenary@mcglinchey.com

Will Wojcik
*Pro Hac Vice Admission*
Tennessee Bar No. 033634
333 Commerce St., Ste. 1425
Nashville, TN 37201
Phone: 615-762-9048
Email: wwojcik@mcglinchey.com

Morgan E. Kelley
*Pro Hac Vice Admission*
Louisiana Bar No. 38299
601 Poydras St., Ste. 1200
New Orleans, LA 70130
Phone: 504-596-2755
Email: mkelley@mcglinchey.com

*Attorneys for Defendant USAA*

## CERTIFICATE OF SERVICE

I certify that on September 19, 2025, a copy of this filing was served on counsel of record

through the Court's electronic filing system.

*/s/ Megan S. Ben'Ary*
Megan S. Ben'Ary