| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* CHARLES TERRENCE BRUFF,<br><br>    *Plaintiff-Relator*,<br><br>v.<br><br>USAA INSURANCE AGENCY, INC., *et al.*<br><br>    *Defendants*. | Civil Action No. 5:22-cv-593-DAE |

## <u>OPTUM RX, INC.'S MOTION TO DISMISS</u>

Defendant Optum Rx, Inc. ("Optum") moves under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) to dismiss Relator Charles Terrence Bruff's Amended Complaint (ECF No. 48). In support of its Motion, Optum incorporates the accompanying Memorandum of Law.

Dated: September 19, 2025

Henry P. Van Dyck (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE &
REATH LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 230-5251
henry.vandyck@faegredrinker.com

Antonio M. Pozos (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE &
REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
(215) 988-3327
antonio.pozos@faegredrinker.com

Respectfully Submitted,

<u>/s/ Eliot T. Burriss</u>
Eliot T. Burriss
FAEGRE DRINKER BIDDLE &
REATH LLP
2323 Ross Ave., Suite 1700
Dallas, Texas 75201
(469) 357-2500
eli.burriss@faegredrinker.com

*Counsel for Defendant Optum Rx, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* CHARLES TERRENCE BRUFF,<br><br>    *Plaintiff-Relator*,<br><br>v.<br><br>USAA INSURANCE AGENCY, INC., *et al.*<br><br>    *Defendants*. | Civil Action No. 5:22-cv-593-DAE |

**MEMORANDUM OF LAW IN SUPPORT OF OPTUM RX, INC.'S**
**<u>MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 2

    I.      Allegations Relating to Co-Defendants USAA and CareMark ............................ 2

    II.     Allegations Relating to Optum ............................................................................. 3

PROCEDURAL HISTORY ................................................................................................... 4

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT .......................................................................................................................... 5

    I.      The Court Should Dismiss Relator's Claims Against Optum Because
            Relator Fails to Plead a Valid Cause of Action Under the FCA ........................... 5

            A.      Relator Fails to Adequately Plead a "Reverse" FCA Claim...................... 6

                         1.      Relator Does Not Allege or Identify Any Allegedly False
                                    Statement or Record—Much Less With the Particularity
                                    that Rule 9(b) Demands ................................................................. 6

                          2.      Relator Fails to Plead with Particularity an Obligation to
                                      Pay or Transmit Money or Property to the Government .............. 8

            B.      Relator Fails to Adequately Plead a Presentment Claim ........................... 9

             C.      Relator Fails to Adequately Plead Materiality Under Any Theory
                  of Liability .............................................................................................. 12

    II.      The Court Should Dismiss Relator's Claims Because FCA Qui Tam Suits
            Are Unconstitutional................................................................................. 15

            A.      FCA Qui Tam Suits Violate the Appointments Clause ........................... 16

            B.      FCA Qui Tam Suits Violate the Take Care Clause ................................. 17

CONCLUSION.................................................................................................................... 18

**TABLE OF AUTHORITIES**

**Cases**                                                                      **Page(s)**

*Abbott v. BP Expl. & Prod., Inc.*,
  851 F.3d 384 (5th Cir. 2017) ............................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................4, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................4

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ...........................................................................................16

*Derouuseau v. Korzeilus*,
  No. 24-CV-6516, 2025 WL 1684860 (S.D.N.Y. June 16, 2025) ...........................14

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) .......................................................................................18

*Morrison v. Olson*,
  487 U.S. 654 (1988) .......................................................................................18

*Reddy v. Chubb Lloyd's Ins. Co. of Tex.*,
  No. 23-CV-02818, 2024 WL 5274522 (S.D. Tex. Mar. 26, 2024)........................10

*Riley v. St. Luke's Episcopal Hosp.*,
  252 F.3d 749 (5th Cir. 2001) ...............................................................2, 15, 18

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)........................................................................................17

*United States ex rel. Angelo v. Allstate Insurance Co.*,
  106 F.4th 441 (6th Cir. 2024) ..........................................................................8, 9

*United States ex rel. Bain v. Ga. Gulf Corp.*,
  386 F.3d 648 (5th Cir. 2004) ...............................................................................8

*United States ex rel. Foster v. Bristol-Myers Squibb Co.*,
  587 F. Supp. 2d 805 (E.D. Tex. 2008) ................................................................11

*United States ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) ...............................................................4, 5, 10, 11

*United States ex rel. Integra Med Analytics, LLC v. Baylor Scott & White Health*,
  No. 17-CV-886, 2019 WL 3713756 (W.D. Tex. Aug. 5, 2019), *aff'd*, 816 F.
  App'x 892 (5th Cir. 2020) ...................................................................4, 5, 10, 11

*United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*,
667 F. Supp. 3d 332 (E.D. Tex. 2023) ..................................................................13, 14

*United States ex rel. Longhi v. United States*,
575 F.3d 458 (5th Cir. 2009) ........................................................................................5

*United States ex rel. Mich. v. State Farm Auto. Ins. Co.*,
No. 24-1379, 2025 WL 101639 (6th Cir. Jan. 15, 2025) ............................................9

*United States ex rel. Mitchell v. CIT Bank, N.A.*,
No. 14-CV-00833, 2022 WL 812364 (E.D. Tex. Mar. 26, 2022) ...........................12

*United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*,
133 F.4th 395 (5th Cir. 2025) .................................................................15, 16, 17, 18

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
519 F. App'x 890 (5th Cir. 2013) ..........................................................................4, 11

*United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*,
612 F.3d 724 (4th Cir. 2010) .......................................................................................5

*United States ex rel. Poehling v. UnitedHealth Grp., Inc.*,
No. 16-CV-08697, 2025 WL 682285 (C.D. Cal. Mar. 3, 2025)...............................13

*United States ex rel. Polansky v. Exec. Heath Res., Inc.*,
599 U.S. 419 (2023)............................................................................................15, 17

*United States ex rel. Porter v. Magnolia Health Plan, Inc.*,
810 F. App'x 237 (5th Cir. 2020) .........................................................................12, 14

*United States ex rel. Reddell v. DynCorp Int'l, LLC*,
No. 14-CV-86, 2019 WL 12875471 (E.D. Tex. Mar. 20, 2019) ...............................8

*United States ex rel. Schutte v. SuperValu, Inc.*,
598 U.S. 739 (2023)....................................................................................................13

*United States ex rel. Spicer v. Westbook*,
751 F.3d 354 (5th Cir. 2014) ..................................................................................7, 11

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
336 F.3d 375 (5th Cir. 2003) ...............................................................................4, 5, 7

*United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*,
751 F. Supp. 3d 1293 (M.D. Fla. 2024)..................................................15, 16, 17, 18

*United States v. Cath. Health Initiatives*,
312 F. Supp. 3d 584 (S.D. Tex. 2018) ................................................................13, 14

*United States v. Donziger*,
  38 F.4th 290 (2d Cir. 2022) ...................................................................................17

*United States v. Lakeway Reg'l Med. Ctr., LLC*,
  No. 19-CV-00945, 2020 WL 6146571 (W.D. Tex. Feb. 13, 2020).......................................10

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  579 U.S. 176 (2016)................................................................................... *passim*

## Statutes, Rules & Regulations

31 U.S.C. § 3729................................................................................... *passim*

31 U.S.C. § 3730(c)(1)...................................................................................18

42 U.S.C. § 1395y(b)(2)(B) ...................................................................................8

Fed. R. Civ. P. 8(a) ................................................................................... *passim*

Fed. R. Civ. P. 9(b) ................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 2, 4, 14

## Other Authorities

26 R. Lord, Williston on Contracts § 69:12 (4th ed. 2003) ...........................................................12

U.S. Const. Article II, § 2, cl. 2 (Appointments Clause) ...............................................2, 15, 16, 17

U.S. Const. Article II, § 3 (Take Care Clause) ................................................................... *passim*

## **INTRODUCTION**

Relator Charles Terrence Bruff ("Relator") brought this qui tam case under the False Claims Act ("FCA"). After nearly three years of investigation, the government declined to intervene in the case. Relator amended the complaint, but he still does not allege sufficient facts to satisfy the stringent pleading standard for FCA cases. Indeed, there are *fewer* allegations regarding Optum Rx, Inc. ("Optum") in the Amended Complaint than in the original Complaint. Optum is mentioned in only three paragraphs in the Amended Complaint. Accordingly, Optum moves to dismiss Relator's Amended Complaint under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).

Relator is employed by Defendant United Services Automobile Association ("USAA") and is enrolled in USAA's group health plan, as well as Medicare Part D and Medicaid. As Relator tells it, USAA and several Pharmacy Benefit Managers ("PBMs"), including defendants Caremark Rx, LLC, Express Scripts, Inc., and Optum, engaged in a wide-ranging scheme to defraud Medicare and Medicaid by failing, or, in the case of PBMs, allowing health plan sponsors like USAA to fail, to coordinate with government health care programs to ensure that covered items are paid first by private payors and second by government payors, as required by the Medicare Secondary Payer Act ("MSP Act"). Relator further contends the PBMs failed, or allowed health plan sponsors to fail, to reimburse government payors for payments the health plan sponsors should have made as primary insurers. Relator therefore contends that Defendants violated the FCA by causing the government to pay for claims that should be covered first by a private insurer.

Optum appears in only three paragraphs of the Amended Complaint, and Relator does not allege facts showing that Optum submitted a false claim or engaged in conduct that would constitute a reverse false claim. Indeed, as set forth below, the only remotely substantive allegations against Optum constitute conclusory speculation that falls woefully short of the level

of specificity required under Rule 9(b). The Court therefore should dismiss Relator's claims against Optum for failure to state a claim under Rules 8(a), 9(b), and 12(b)(6).

Beyond these pleading failures, the Court should dismiss this case because qui tam actions under the FCA conflict with Article II of the Constitution by allowing private relators to exercise core executive power reserved to the President by the Appointments Clause and the Take Care Clause. While Optum recognizes that the Fifth Circuit came to the opposite conclusion in the matter of *Riley v. St. Luke's Episcopal Hospital*, 252 F.3d 749 (5th Cir. 2001), recent opinions by members of the Supreme Court and U.S. Court of Appeals for the Fifth Circuit, as well as developments in another closely watched matter, counsel that False Claims Act qui tams may be found to be unconstitutional, notwithstanding the Fifth Circuit's decision in *Riley*. For these reasons, and to preserve the arguments if this case were to be dismissed and proceed on appeal, Optum respectfully requests that the Court also dismiss Relator's Amended Complaint in its entirety as unconstitutional.

## <u>FACTUAL BACKGROUND</u>[1]

### I.      Allegations Relating to Co-Defendants USAA and CareMark

Relator alleges he began working for USAA as a software engineer in 2016. Am. Compl. ¶ 43. Relator suffers from autism and cerebral palsy and receives both Medicare and Medicaid benefits, including Medicare Part D and Extra Help. *Id.* ¶ 45. Relator also has coverage through the USAA Employer Group Health Plan, which is administered by CVS's CareMark Rx, a PBM. *Id.* ¶¶ 47–49.

Relator claims he discovered a "lack of coordination" between USAA, CareMark, and Medicare relating to Relator's drug coverage. *Id.* ¶ 53. According to Relator, he raised this "failure

---

[1] Relator has alleged the following facts, which Optum treats as true for the purposes of this Motion only (and as to which it reserves the right to demand strict proof).

to coordinate" with USAA's Human Resources department, and "USAA ultimately agreed to fix the issue and coordinate care for [Relator], but failed to do it for any other employee in a similar position." *Id.* ¶¶ 54–57. Relator alleges he took a leave of absence under the Family Medical Leave Act in January 2021. *Id.* ¶ 58. For a period during his leave, payment for Relator's medical services and drug claims were suspended. *Id.* Relator contends that this happened because USAA and CareMark "flipped his coverage attempting to designate itself as the secondary payer after Medicare." *Id.* Relator claims that Medicare has not been repaid by USAA or CareMark for any drug claims that Medicare paid for Relator, nor has CareMark sought Medicare reimbursement from the USAA Group Health Plan. *Id.* ¶ 60.

## II. Allegations Relating to Optum

Relator's limited allegations against Optum are found in only three paragraphs. *Id.* ¶¶ 20 (Parties),[2] 70, 74. In those paragraphs, Relator generally alleges Optum is a PBM that administers group health plans on behalf of companies or other organizations that wish to provide health benefits. *Id.* ¶¶ 20, 70. According to Relator, Optum "engages in a . . . practice with all of its administered plans by allowing large group health plans to determine whether to coordinate benefits with public programs." *Id.* ¶ 70. Relator alleges "[t]his makes it impossible for any Medicare Part D beneficiary to enroll, which means Medicare is paying for claims that should be covered by the private insurer." *Id.* Relator also lumps Optum in with all other defendants in alleging that all defendants "present fraudulent claims for payment to the United States Government when they knowingly cause Medicare and Medicaid to be charged for prescription drugs that should be covered by the large group health plans of the PBM's clients." *Id.* ¶ 74. These are the only factual allegations concerning Optum. *See generally id.*

---

[2] Relator includes two paragraphs 20 on page 4 of his pleading. The allegation regarding Optum is in the first paragraph 20.

In early 2022, Relator filed his Complaint under seal. *See* ECF No. 5. Nearly three years later, the Government declined to intervene, *see* ECF No. 24, and thereafter the Court unsealed Relator's Complaint and ordered the Complaint be served on the Defendants. *See* ECF No. 25. Optum waived service on May 28, 2025. *See* ECF No. 35. On July 21, 2025, Relator filed an Amended Complaint. *See* ECF No. 48. Optum now moves to dismiss.

**LEGAL STANDARD**

Rule 12(b)(6) requires courts to dismiss claims that "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts that, if accepted as true, state a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere conclusory statements do not suffice. *See Iqbal*, 556 U.S. at 678. Only by "nudg[ing]" the claims "across the line from conceivable to plausible" may plaintiffs "show[]" that they are entitled to relief and survive a motion to dismiss. *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a).

An FCA claim must also comply with the heightened pleading requirements of Rule 9(b), requiring that a plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 892 (5th Cir. 2013). Rule 9(b) requires a plaintiff to allege the "who, what, when, where, and how" of the alleged fraud. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003). To meet this standard in an FCA case, Relator must plead facts detailing "an actually submitted false claim" or "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *United States ex rel. Integra Med Analytics, LLC v. Baylor Scott & White Health*, No. 17-CV-886, 2019 WL 3713756, at *3 (W.D. Tex. Aug. 5, 2019) (citing *United States ex rel.*

*Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)), *aff'd*, 816 F. App'x 892 (5th Cir. 2020). Failure to do so warrants dismissal. *See Willard*, 336 F.3d at 387–88 (affirming dismissal of action); *Integra Med Analytics*, 2019 WL 3713756, at *3, *6 (granting defendants' motion to dismiss).

Rule 9(b) serves as a gatekeeper "to weed out meritless fraud claims." *See Grubbs*, 565 F.3d at 185. This is because the FCA "is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192–94 (2016) (cleaned up) (citation omitted). "There is a difference between a false statement sufficient to support a claim of fraud, on the one hand, and honest disagreements, routine adjustments and corrections, and sincere and comparatively minor oversights, on the other. Bad math is no fraud, [and] proof of mistakes is not evidence that one is a cheat . . . ." *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 734 (4th Cir. 2010) (cleaned up).

## **ARGUMENT**

### I. The Court Should Dismiss Relator's Claims Against Optum Because Relator Fails to Plead a Valid Cause of Action Under the FCA

Relator's claims against Optum should be dismissed because Relator fails to plead the requisite elements of an FCA claim. To establish liability under the FCA, Relator must plead and ultimately prove: (1) "a false statement or fraudulent course of conduct"; (2) "made or carried out with the requisite scienter"; (3) "that was material"; and (4) "that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *See Integra Med Analytics*, 2019 WL 3713756, at *3 (citing *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009)); *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387 (5th Cir. 2017). Relator fails to

allege facts establishing an FCA claim under either a "reverse" false claim theory or a direct presentment theory.

### A. Relator Fails to Adequately Plead a "Reverse" FCA Claim

While Relator's Amended Complaint does not contain enumerated counts, Relator's Amended Complaint appears first to attempt to assert a cause of action based on a "reverse" false claims theory under 31 U.S.C. § 3729(a)(1)(G). *See* Am. Compl. ¶¶ 39–71. Section 3729(a)(1)(G) prohibits "mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G); *see* Am. Compl. ¶¶ 39–71. To state a claim under such a "reverse" false claim theory, Relator must plead that the defendant: (1) knowingly (2) made, used, or caused to be made or used (3) a materially false record or statement (4) to conceal, avoid, or decrease (5) an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G).

Relator's factual allegations against Optum (which, again, are found in only two substantive paragraphs of the Amended Complaint, and only one within this Count) entirely fail to plead these elements.

#### 1. Relator Does Not Allege or Identify Any Allegedly False Statement or Record—Much Less With the Particularity that Rule 9(b) Demands

Relator's Amended Complaint fails to assert, much less with particularity, that Optum made, used, or caused to be made or used, any false statement or record. Indeed, the sum total of Relator's factual allegations against Optum (a single sentence) regarding the purported actus reus of the supposed violations is that Optum engages in a "practice" of "allowing large group health plans to determine whether to coordinate benefits with public programs." *See* Am. Compl. ¶ 70. This allegation is, however, entirely devoid of any reference to any false statement or record.

Instead, Relator attempts to plead that plans administered by Optum are not in compliance with the MSP Act and/or its implementing regulations, and that Optum has therefore committed fraud. *See id.* (contending that Optum's practice "makes it impossible for any Medicare Part D beneficiary to enroll, which means Medicare is paying for claims that should be covered by the private insurer. That is fraud."). These allegations not only fail to identify any "false record or statement", much less how such a false record or statement was "made or used," *see* 31 U.S.C. § 3729(a)(1)(G), they also fall far short of stating the "who, what, when, where, and how" required by Rule 9(b). These deficiencies require dismissal. *See United States ex rel. Spicer v. Westbook*, 751 F.3d 354, 366–67 (5th Cir. 2014) (affirming dismissal because relator failed to allege an FCA false statement at all); *Willard*, 336 F.3d at 387–88 (affirming dismissal because relator failed to identify a false claim).

Even assuming that Relator's interpretations of the MSP Act and the roles of PBMs under the MSP Act were correct (which they are not),[3] at most, Relator is attempting to transmute a regulatory violation into a violation of the False Claims Act. But the FCA does not create liability merely for regulatory violations. *See Escobar*, 579 U.S. at 192–94 (explaining "[t]he False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations" (cleaned up) (citation omitted)); *see also Willard*, 336 F.3d at 381. Moreover, Relator has not attempted to plead any facts which would connect such a regulatory violation to an allegedly false statement or record sufficient to support a cause of action under Section 3729(a)(1)(G). Therefore, Relator fails to meet even basic pleading requirements, and the Complaint must be dismissed for failure to state a claim.

---

[3] While Optum does not concede Relator's interpretations and characterizations, Optum will refrain from engaging with these arguments at this time given the manifest pleading deficiencies present on the face of Relator's Amended Complaint.

      2.       *Relator Fails to Plead with Particularity an Obligation to Pay or Transmit Money or Property to the Government*

A "reverse" false claim is premised on the existence of an "obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G); *see also United States ex rel. Reddell v. DynCorp Int'l, LLC*, No. 14-CV-86, 2019 WL 12875471, at *15 (E.D. Tex. Mar. 20, 2019). An "obligation" is defined as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3). The "obligation" to the government must have existed at the time the alleged improper conduct under the FCA occurred and must be more than a "potential or contingent" obligation. *See United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657–58 (5th Cir. 2004). As with all elements of an FCA claim, an obligation must be pleaded with particularity to survive dismissal. *See id.* (finding that relator failed to plead the "obligation" element with particularity sufficient to satisfy Rule 9(b) and reversing and remanding the district court's order denying defendant's motion to dismiss).

In *United States ex rel. Angelo v. Allstate Insurance Co.*, the Sixth Circuit affirmed dismissal of a reverse false claim for failure to allege an obligation with particularity in a case with striking parallels. *See* 106 F.4th 441, 449 (6th Cir. 2024). In *Angelo*, the relators argued that defendant Allstate was a "primary payer" under the MSP Act, yet "fail[ed] to reimburse Medicare for auto-accident-related medical costs . . . thereby defrauding the government, in violation of the [FCA]." *Id.* at 447. The Sixth Circuit, however, reasoned that under the MSP Act a primary payer obligation arises only after Medicare has made a "conditional" or secondary payment and accordingly, relators must plead sufficient facts demonstrating that Allstate had an obligation as a primary payer. *Id.* at 449; *see also* 42 U.S.C. § 1395y(b)(2)(B). The Sixth Circuit found that

relators failed to do so: "the complaint lacks detail as to whether and when Allstate incurred an obligation to pay for medical expenses for which it was liable and, relatedly, what conditional payments were made by Medicare to fill that void." *Angelo*, 106 F.4th at 449. The Sixth Circuit concluded that "[w]ithout identifying with particularity a concrete, existing duty to pay money or property owed" to the government, relators failed to plead sufficient facts to state a claim and their allegations "amount[ed] to little more than a formulaic recitation of the elements of a cause of action." *Id.* (cleaned up); *see also United States ex rel. Mich. v. State Farm Auto. Ins. Co.*, No. 24-1379, 2025 WL 101639, at *3 (6th Cir. Jan. 15, 2025) (affirming dismissal of a reverse FCA claim involving the MSP Act because the complaint failed to plead with specificity that insurers were liable for underlying medical expenses, that Medicare made conditional payments, or that the insurers had an obligation to reimburse the government).

Here, Relator fails to allege that Optum (or any plan sponsor with which Optum works) had an obligation to pay money to the government. Relator contends in a conclusory fashion that "Medicare is paying for claims that should be covered by the private insurer." Am. Compl. ¶ 70. But Relator does not assert, let alone with particularity, whether, how, and when an obligation or responsibility to pay arose, or how such an obligation attached or otherwise became attributable to Optum in its capacity as a PBM. In this respect, Relator fails to allege that Optum had a "concrete, existing duty to pay money" owed to the government. Such pleading is not enough to state a claim, much less to pass muster under Rule 9(b).

### B.      *Relator Fails to Adequately Plead a Presentment Claim*

Relator's attempt to assert a presentment claim under Section 3729(a)(1)(A) similarly fails to plead a valid cause of action because it is devoid of facts detailing "an actually submitted false claim" or "particular details of a scheme to submit false claims paired with reliable indicia that

9

lead to a strong inference that claims were actually submitted." *Integra Med Analytics*, 2019 WL 3713756, at *3 (citing *Grubbs*, 565 F.3d at 190).

As with his "reverse" false claim, Relator's presentment claim only includes a single paragraph referencing Optum. This time, however, Relator does not set forth *any* facts supporting his claim against Optum. Instead, he summarily alleges all defendants "present fraudulent claims for payment to the United States Government when they knowingly cause Medicare and Medicaid to be charged for prescription drugs that should be covered by the large group health plans of the PBM's clients." Am. Compl. ¶ 74. This sentence is both improper group pleading and little more than a blanket and conclusory recitation of some of the elements of a presentment claim under Section 3729(a)(1)(A) and therefore is clearly insufficient under Rules 8(a) and 9(b). *See Iqbal*, 556 U.S. at 677–78 (holding that mere conclusory statements do not satisfy Rule 8(a)'s pleading standard); *Reddy v. Chubb Lloyd's Ins. Co. of Tex.*, No. 23-CV-02818, 2024 WL 5274522, at *1 (S.D. Tex. Mar. 26, 2024) ("The Court takes 'the well-pleaded factual allegations in the complaint as true' but does 'not credit conclusory allegations or allegations that merely restate the legal elements of a claim.'"); *United States v. Lakeway Reg'l Med. Ctr., LLC*, No. 19-CV-00945, 2020 WL 6146571, at *2, *4 (W.D. Tex. Feb. 13, 2020) (dismissing FCA claims as "an improper shotgun pleading" when counts did "not distinguish between Defendants" and finding that Rule 9(b) cannot "be met by use of a group pleading").

Indeed, neither this sentence nor any other portion of Relator's Amended Complaint provides details regarding any false claim Optum supposedly submitted. With respect to Optum, it does not provide the amount of even one claim, when it was supposedly submitted to the government, the prescription drug involved, the "large group health plan" or PBM client involved, or—most problematically—any facts supporting that a claim Optum actually submitted was false.

10

*See, e.g.*, *Spicer*, 751 F.3d at 366–67 (affirming dismissal because relator failed to allege an FCA false statement at all).

Likewise, Relator's Amended Complaint does not provide "particular details" (or any details at all) "of a scheme" by Optum "to submit false claims," much less facts that could provide the Court with "reliable indicia that lead to a strong inference that claims were actually submitted." *Integra Med Analytics*, 2019 WL 3713756, at *3. In the absence of an allegation identifying a specific false claim submitted to the government, a Relator's complaint must raise "the inference of fraud beyond mere possibility" and "plead a level of detail that demonstrates that an alleged scheme likely resulted in bills submitted for government payment." *Nunnally*, 519 F. App'x at 893. Such details may include "dates that services were fraudulently provided or recorded, by whom, and evidence of [a party's] standard billing procedure." *Grubbs*, 565 F.3d at 190. Relator's allegation, however, that Optum "knowingly cause[s] Medicare and Medicaid to be charged for prescription drugs that should be covered by the large group health plans of [Optum's] clients," Am. Compl. ¶ 74, does not contain even "a shred of detail or particularity." *See Nunnally*, 519 F. App'x at 894. Rather, it is entirely void of "time, place, or identity details," without which there cannot be "sufficient indicia of reliability" that "demonstrate a strong inference that" Optum presented claims to the government in violation of 31 U.S.C. § 3729(a)(1)(A). *See, e.g.*, *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 824–25 (E.D. Tex. 2008) (holding relator failed to provide a factual basis for FCA allegations where relator did not provide any factual detail for the Court to infer that a claim for payment was actually submitted to the government).

Accordingly, Relator's presentment cause of action also fails to satisfy Rule 9(b) and should be dismissed. *See, e.g.*, *Nunnally*, 519 F. App'x at 895 (affirming dismissal); *Integra Med*

11

*Analytics*, 2019 WL 3713756, at *3, *6 (granting defendants' motion to dismiss).

**C.  *Relator Fails to Adequately Plead Materiality Under Any Theory of Liability***

Relator's Amended Complaint similarly fails to plead facts sufficient to support its contention that Optum knowingly made or used "a false record or statement *material* to an obligation to pay or transmit money or property to the [g]overnment," 31 U.S.C. § 3729(a)(1)(G) (emphasis added), or presented or caused to be presented a material false or fraudulent statement that caused the government to pay money under 31 U.S.C. § 3729(a)(1)(A). *See Escobar*, 579 U.S. at 192–96 (defining the materiality requirement in connection with a § 3729(a)(1)(A) claim) *United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 14-CV-00833, 2022 WL 812364, at *9 (E.D. Tex. Mar. 26, 2022) (materiality requirement applies to all claims under 31 U.S.C. § 3729(a)(1)(A)).

31 U.S.C. § 3729(b)(4) defines the term "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). While the Supreme Court has not resolved the question of whether the materiality requirements of particular provisions of Section 3729(a) are controlled by Section 3729(b)(4) or derived from common law, "[u]nder any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Escobar*, 579 U.S. at 193 (quoting 26 R. Lord, Williston on Contracts § 69:12, at 549 (4th ed. 2003)).

The FCA contains a "rigorous materiality requirement," and an alleged "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision." *Escobar*, 579 U.S. at 181, 192–94. Importantly, "the Supreme Court has explicitly rejected the argument that 'any statutory, regulatory, or contractual violation is material so long as the defendant knows that the [g]overnment would be entitled to refuse payment if it were aware of the violation.'" *United States ex rel. Porter v. Magnolia Health Plan,*

12

*Inc.*, 810 F. App'x 237, 241 (5th Cir. 2020) (quoting *Escobar*, 579 U.S. at 195).  This is because the FCA "is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations."  *Escobar*, 579 U.S. at 192–95 (cleaned up) (citation omitted); *see also United States ex rel. Schutte v. SuperValu, Inc.*, 598 U.S. 739, 750–51 (2023) (explaining the "FCA is largely a fraud statute," and, therefore, "[i]n the absence of statutory text to the contrary," courts should interpret the FCA as incorporating "the well-settled meaning of such a common-law term" (cleaned up)).

In the context of a reverse false claim, it is therefore not enough for a relator to simply contend that the government is entitled to recover money or property at issue.  Rather, a relator must allege facts establishing how the government would act if it were aware of the alleged non-conformity, i.e., that it would require the defendant to transmit the money or property at issue to the government if the government were aware of the alleged non-conformity.  *See, e.g.*, *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. 16-CV-08697, 2025 WL 682285, at \*20 (C.D. Cal. Mar. 3, 2025) (report and recommendation applying the *Escobar* materiality standard to the FCA's reverse false claims provision and explaining that the government's knowledge of alleged misconduct resulting in retention of alleged overpayments is a "factor undermining a 'false claim' or materiality contention").  Similarly, for presentment claims, a relator must provide facts showing that the government would not "pay the claim . . . if it knew of the claimant's violation." *United States v. Cath. Health Initiatives*, 312 F. Supp. 3d 584, 605 (S.D. Tex. 2018) (granting dismissal because "[n]othing in Relators' filings suggests that the government would stop the flow of funds to this hospital if it knew the truth" of the alleged violation); *United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*, 667 F. Supp. 3d 332, 358–65 (E.D. Tex. 2023) (applying the

*Escobar* materiality standard and dismissing relator's claims where the government continued to purchase the drug despite allegations of fraud).

Failure to plead materiality with particularity is grounds for dismissal. *See Escobar*, 579 U.S. at 195 n.6 ("We reject [the] assertion that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss or at summary judgment."); *Porter*, 810 F. App'x at 242 (affirming dismissal because relator's complaint failed to contain specific allegations regarding the materiality of the alleged fraud).

Here, nowhere in Relator's Amended Complaint does he plead any facts to support materiality. At most, Relator asserts his understanding of the significance of the MSP Act and invites the Court to infer that Optum's business practices violate it. Without more, such pleading is plainly at odds with the Supreme Court's holding in *Escobar* that statutory or regulatory non-compliance (assuming such occurred, which Optum does not concede) is not automatically material. And the law in the Fifth Circuit is clear that a relator must present specific allegations regarding the materiality of allegedly fraudulent record(s), statement(s), or scheme(s) and more than just a formulaic recitation of the elements to satisfy Rule 9(b). *See Porter*, 810 F. App'x at 242; *Cath. Health Initiatives*, 312 F. Supp. 3d at 605; *Jackson,* 667 F. Supp. 3d at 358–65. Relator's allegations fall far short of satisfying this standard.

For the reasons set forth above, Relator's Amended Complaint should be dismissed under Rule 12(b)(6) for failure to satisfy Rules 8(a) and 9(b). Because Relator has already had an opportunity to amend his complaint and in doing so has alleged *fewer* details regarding Optum (*compare* ECF No. 5 ¶¶ 8, 46 *with* Am. Compl. ¶¶ 20, 70, 74), dismissal should be with prejudice. *See, e.g., Derouuseau v. Korzeilus*, No. 24-CV-6516, 2025 WL 1684860, at *2 (S.D.N.Y.

14

June 16, 2025) (dismissing amended complaint that included "fewer factual allegations than the original complaint" without "another opportunity to amend").

**II.      The Court Should Dismiss Relator's Claims Because FCA Qui Tam Suits Are Unconstitutional**

The FCA's qui tam provisions conflict with Article II of the Constitution by allowing private relators to exercise core executive power reserved to the President by the Appointments Clause and the Take Care Clause. Indeed, "[t]he potential inconsistency of *qui tam* suits with Article II has been noticed for decades." *United States ex rel. Polansky v. Exec. Heath Res., Inc.*, 599 U.S. 419, 450 (2023) (Thomas, J., dissenting). As several Supreme Court Justices have recognized, "[t]here are substantial arguments that the *qui tam* device is inconsistent with Article II and that private relators may not represent the interests of the United States in litigation." *See id.* at 442 (Kavanaugh, J., joined by Barrett, J., concurring); *id.* at 449 (Thomas, J., dissenting).

Although the Fifth Circuit has held that the FCA's qui tam provisions do not violate the Constitution, *see Riley*, 252 F.3d at 758, Judge Duncan's recent concurring opinion in *United States ex rel. Montcrief v. Peripheral Vascular Associates, P.A.*, 133 F.4th 395, 410 (5th Cir. 2025), has emphasized the renewed vitality of concerns regarding the constitutionality of the False Claims Act's qui tam provisions. This tracks the apparent willingness of certain members of the Supreme Court to "consider . . . the Article II issue in an appropriate case." *See Polansky*, 599 U.S. at 442 (Kavanaugh, J., joined by Barrett, J., concurring). And, the issue is poised for further review as the closely watched decision in *United States ex rel. Zafirov v. Florida Medical Associates, LLC*, 751 F. Supp. 3d 1293, 1323–24 (M.D. Fla. 2024), in which the district court found the FCA's qui tam provisions unconstitutional, is now on appeal as *United States ex rel. Zafirov v. Florida Medical Associates, LLC*, Nos. 24-13581 & 24-13583 (11th Cir.), as well as in a separate case now

pending before the Third Circuit, *United States ex rel Penelow v. Janssen Products, LP*, No. 25-1818 (3d Cir.).

While recognizing the Fifth Circuit's decision in *Riley*, Optum submits that qui tam actions pursued by private citizens, such as Relator in the instant case, are unconstitutional. Relator, a private person, initiated an enforcement action against Optum on behalf of the United States. The United States refused to intervene, allowing Relator the lead role in litigating the case, effectively permitting Relator to commandeer powers belonging to the Executive Branch, and to wield those powers in a manner that is inconsistent with the Constitution. The Appointments Clause and the Take Care Clause do not allow this. Accordingly, and to preserve the argument, Optum also respectfully requests that the Court dismiss Relator's complaint in its entirety.

### A.      *FCA Qui Tam Suits Violate the Appointments Clause*

The FCA's qui tam provisions violate the Appointments Clause by allowing relators, who are private parties, to sue on behalf of the United States. *See Montcrief*, 133 F.4th at 410–11 (Duncan, J., concurring); *Zafirov*, 751 F. Supp. 3d at 1323–24.

Article II of the Constitution reserves for the President the power to appoint "Officers of the United States." U.S. Const. art. II, § 2, cl. 2. "Under Article II, an 'Officer of the United States' is someone who occupies a 'continuing' position, and 'exercis[es] significant authority pursuant to the laws of the United States.'" *Montcrief*, 133 F.4th at 410–11 (citation omitted) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)).

A False Claims Act relator "exercis[es] significant authority pursuant to the laws of the United States" by "conducting civil litigation in the courts of the United States for vindicating public rights.'" *Id.* at 411. Where, as here, a Relator initiates a False Claims Act action, and the United States declines to intervene, the relator takes the "lead role" in litigating the case and "exercise[s] core executive power by deciding 'how to prioritize and how aggressively to pursue

legal actions'" in the name of the United States against the defendants. *Id.* (quoting *Polansky*, 599 U.S. at 423, *Zafirov*, 751 F. Supp. 3d at 1309); *see also Polansky*, 599 U.S. at 449–50 (Thomas, J., dissenting) (explaining that a private relator cannot be authorized "to wield executive authority to represent the United States' interests in civil litigation").

False Claims Act relators also occupy a "continuing position" within the meaning of Article II because "(1) the position is not personal to a particular individual; (2) the position is not transient or fleeting; and (3) the duties of the position are more than incidental" because "anyone can sue under the FCA," the position "can last years" as litigation proceeds, and "relators conduct litigation on behalf of the United States." *Montcrief*, 133 F.4th at 411 (quoting *United States v. Donziger*, 38 F.4th 290, 297 (2d Cir. 2022)); *see also Zafirov*, 751 F. Supp. 3d at 1313–17.

This exercise of power runs afoul of the Appointments Clause, and it is exactly what occurred here. Relator, a private person, initiated his own litigation against Optum on behalf of the United States. The United States refused to intervene, letting Relator take the "lead role" in litigating the case. By doing so, Relator is unconstitutionally exercising "core executive power" to represent the United States' interests in litigation, and this action should be dismissed. *See Montcrief*, 133 F.4th at 411; *Zafirov*, 751 F. Supp. 3d at 1322–23 (dismissal is appropriate remedy).

### B.      *FCA Qui Tam Suits Violate the Take Care Clause*

The FCA's qui tam provisions also contravene the exclusive prerogative given to the Executive Branch to ensure that the laws are faithfully executed. Under Article II of the Constitution, the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. This executive power includes "the choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." *See Montcrief*, 133 F.4th at 412 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021)). The Take Care Clause is not satisfied if the President "cannot oversee the faithfulness of the officers who execute [the Laws]."

*See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 484 (2010).  Therefore, the Executive Branch must be the one to exercise "sufficient control" over the litigation.  *See Morrison v. Olson*, 487 U.S. 654, 696 (1988).

Here, the United States declined to intervene, leaving Relator with the "primary responsibility for prosecuting the action," *see* 31 U.S.C. § 3730(c)(1), and leaving the government without "sufficient control" over the litigation.  In this scenario, the government has neither the power to "remove" Relator from his role, nor to "unilaterally" dismiss Relator's suit.  *See Riley*, 252 F.3d at 763 (Smith, J., dissenting) (explaining that the Executive branch has no power to remove a relator under any circumstances, to freely settle a qui tam action, or to freely restrict a relator's participation).  What's more, the government lacks control over the breadth of the matter and other strategic aspects of the litigation.  *See, e.g.*, *id.* ("a relator may make sweeping allegations that, while true, he is unable effectively to litigate, but which nonetheless bind the government"); *Zafirov*, 751 F. Supp. 3d at 1301–02 ("A relator determines whether to appeal and which arguments to preserve, thereby shaping the broader legal landscape for the federal government.").  As a result, the government is not exercising control over this litigation necessary to satisfy the Take Care Clause.

These constitutional infirmities are substantial, and "not some arcane technicality.  If people outside government could wield the government's power—then the government's promised accountability to the people would be an illusion." *Montcrief*, 133 F.4th at 412 (cleaned up).  And the court should dismiss the instant action for these reasons as well.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant Optum respectfully requests that its Motion be granted and the claims against it be dismissed with prejudice.

18

Dated: September 19, 2025

Respectfully submitted,

*/s/ Eliot T. Burriss*
Eliot T. Burriss
FAEGRE DRINKER BIDDLE &
REATH LLP
2323 Ross Ave., Suite 1700
Dallas, Texas 75201
(469) 357-2500
eli.burriss@faegredrinker.com

Henry P. Van Dyck (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE &
REATH LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 230-5251
henry.vandyck@faegredrinker.com

Antonio M. Pozos (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE &
REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
(215) 988-3327
antonio.pozos@faegredrinker.com

*Counsel for Defendant Optum Rx, Inc.*