**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* CHARLES TERRENCE BRUFF, | § | |
| | § | |
| *Plaintiff-Relator*, | § | |
| v. | § | Civil Action No. 5:22-cv-593-DAE |
| | § | |
| UNITED SERVICES AUTOMOBILE | § | |
| ASSOC., *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

## UNITED SERVICES AUTOMOBILE ASSOCIATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

United Services Automobile Association ("USAA") submits this *Reply Memorandum in Support of Motion to Dismiss Amended Complaint* to address two arguments in *Relator's Response in Opposition to Defendant United Services Automobile Association's Motion to Dismiss*, Doc. 61. The Court should dismiss the *Amended Complaint*, Doc. 48, with prejudice.

### I. Introduction

Relator Bruff argues he met Federal Rule of Civil Procedure 9(b)'s particularity requirement as interpreted in *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). But Bruff must still meet *Grubbs'* requirement to plead reliable indicia leading to a strong inference that fraud was committed. Critically, Bruff fails to distinguish any of the dismissals of FCA claims under *Grubbs'* interpretation of Rule 9(b), as many of those cases involved allegations with significantly more detail than what Bruff alleges here.

Bruff also claims that he sufficiently pleaded an "obligation" based on two (faulty) assumptions: (1) USAA would always pay in the primary position as a "primary payer" under the

Medicare Secondary Payer Act ("MSP Act"), and (2) USAA, as a purported primary payer, solely shouldered the burden of coordinating benefits with Medicare.

But Bruff's interpretation of the "obligation" element is flawed. USAA does not bear an obligation simply by being categorizable as a primary payer. For example, Bruff fails to consider that USAA does not pay in the primary position if, for example, its plan does not cover a certain medication or an employee's deductible has not been met. Bruff's allegations fall short because he does not rule out legally valid explanations for USAA's alleged conduct. Further, an obligation to coordinate benefits does not amount to an obligation to repay the government under the FCA, which is evident from the express language of the MSP Act. Bruff confuses USAA's role in the coordination of benefits process with other entities in the Medicare ecosystem; he also conflates the allegation that USAA decided to opt out of CareMark's optional service with a purported scheme to defraud the federal government. In sum, Bruff cannot meet his burden of sufficiently alleging an obligation owed.

## II. Legal Analysis

### A. Bruff Misinterprets *Grubbs* and Fails to Distinguish Cases in Which Courts Dismiss FCA Claims under Rule 9(b).

To survive USAA's Motion to Dismiss, Bruff must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).

Here, Bruff alleges that USAA "refuses" coordination of benefits for those enrolled in its group health plan and Medicare, such that claims for payment will be automatically rejected by USAA. *See* Am. Compl., Dkt. 48, ¶¶ 1, 42.[1] His lone supporting detail is that USAA's HR told

---

[1] In his Opposition, Bruff suggests that USAA failed to deny certain allegations, like his claim that it is "the primary payer for [his] prescription medication," and implies that USAA's failure to deny

him that USAA does not coordinate benefits for prescription drug enrollees covered by Medicare. *Id.* at ¶ 54. Then, Bruff alleges that USAA "fixed the issue." *Id.* at ¶ 57. Notably, Bruff's description of the alleged scheme is lacking in substance, especially compared with the relators described in the cases cited below, as Bruff provides no details allowing a reasonable inference that USAA was acting fraudulently. Bruff describes no documents or conversations suggesting that USAA acted with the purpose of defrauding the government, nor does Bruff identify individuals involved in the alleged scheme or describe that he has insider knowledge. Bruff's exhibits provide no clarity to his allegations that USAA acted improperly. Even construing Bruff's allegations most favorably to him, he does not and cannot rule out that USAA simply made an error or had a legally permissible justification for its alleged actions.

In its Motion to Dismiss, USAA cited *seven* cases in which the Fifth Circuit and its district courts dismissed or affirmed dismissal of FCA claims for failure to meet Rule 9(b)'s particularity standard as interpreted by the *Grubbs* court. In the following cases, the relators pleaded many more details than Bruff has here, yet Bruff failed to distinguish them. Below is a comparison of some of these cases to Bruff's allegations.[2]

---

such a statement should be considered in determining whether the Amended Complaint meets federal pleading standards. *See* Pl.'s Opp., Doc. 61, p. 18. As this Court is aware, the purpose of a Rule 12(b) motion to dismiss is to evaluate the four corners of a complaint and determine whether it contains sufficient allegations to survive a technical challenge. A Rule 12(b) motion is procedural in nature, not a device to evaluate the merits of the allegations in a complaint or attempt to litigate the evidence. Even so, USAA has previously explained that it cites to Bruff's allegations for purposes of its Motion to Dismiss; however, USAA in no way admits (and in many instances denies) the allegations set forth in the Amended Complaint. *See* USAA's Mtn. to Dismiss Am. Compl., Doc. 56, n.1.

[2] It should be noted that the relators described here all allege more details than Bruff, in varying degrees, but a true appreciation of their differences is best gained from seeing the volume of description contained in their complaints as compared with that alleged by Bruff, rather than reading a distillation, as is attempted here.

### 1. *U.S. ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 Fed. App'x 890 (5th Cir. 2013)

Bruff did not address *Nunnally*. In *Nunnally*, the relator alleged that he was personally involved in a scheme, unlike Bruff, who does not allege personal involvement. Further, the *Nunnally* scheme was described in far greater detail than the scheme alleged by Bruff. Regardless the *Nunnally* relator's allegations were dismissed for failure to comply with Rule 9(b).

Specifically, the *Nunnally* relator (1) outlined the contours of an alleged scheme (to upcharge Medicare for services charged more cheaply and supply kickbacks to referring physicians), (2) claimed he was involved, and (3) provided an example of a false claim where a medical service was up-charged to Medicare but billed cheaper internally. *See id.* at 892. Still, the Fifth Circuit noted the "**who**" was missing – there were no allegations regarding the individuals involved in such agreements. *Id.* at 894. The "**what**" was missing – there were no details as to the contents of the agreements or the inducements. *Id.* Finally, the example of a false claim provided was "insufficient" because the relator did "not allege, nor reliably indicate, that the two differing pay scales constitute 'remuneration' to the physicians." *Id.*

In comparison, the scheme alleged by Bruff is much scanter in detail. Bruff describes no documents or conversations suggesting that USAA acted to defraud the government. Bruff identifies no individuals and claims no insider knowledge. His exhibits provide no clarity to his allegations that USAA acted improperly. And assuming any truth to Bruff's allegations, he still does not eliminate the possibility that USAA simply made a mistake or acted for valid reasons.

### 2. *United States v. Baylor Scott & White Health*, No. 5:17-cv-886, 2019 WL 3713756, at *1 (W.D. Tex. Aug. 5, 2019) (Ezra, J.), *aff'd*, *U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 Fed. App'x 892 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 905 (2020).

Bruff did not address *Baylor Scott*. There, the relator alleged many more details than Bruff, including "**who**," "**what**," "**where**," and "**how**." Specifically, the *Baylor Scott* relator (1) named

individuals involved, (2) quoted from specific conversations, (3) cited to documents allegedly used to enable teach hospital staff how to further the alleged fraudulent conduct, and (4) referenced statistical evidence supporting the alleged scheme. *See id.* at \*2-4. Even so, this Court noted the relator failed to describe how the conduct was fraudulent, rather than lawful, an analysis that was affirmed by the Fifth Circuit. *See U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 Fed. App'x 892, 897-98 (5th Cir. 2020). Here, Bruff's level of detail falls far short of that in *Baylor Scott*, and he fails to consider the possibility that USAA's (alleged) conduct could be attributed to other explanations, like Bruff's prescription benefits plan did not provide coverage for the prescription in question or his deductible had not been met.

### 3. *U.S. ex rel. O'Neill v. Gopalam*, No. 18-567, 2023 WL 6396659 (M.D. La. Sept. 29, 2023)

Bruff did not address *Gopalam*. The *Gopalam* relator (1) provided extensive of explanation on the alleged scheme, (2) excerpted allegedly damning emails, (3) named individuals, (4) quoted specific conversations, and (5) described that the relator himself was involved in discovering and reporting violations. *See id.* at \*4-7. Regardless, the *Gopalam* relator did not survive Rule 9(b)'s particularity standard, in part because the allegations were conclusory and inconsistent with the standard set forth in *Grubbs*. *See id.* at \*22-24. The *Gopalam* relator's level of detail eclipsed any detail in Bruff's allegations, yet the *Gopalam* relator still failed to meet the particularity standard.

> **4-7. *U.S. ex rel. Hendrickson v. Bank of America, N.A.*, 343 F. Supp. 3d 610 (N.D. Tex. 2018); *Health Choice Alliance LLC on behalf of U.S. v. Eli Lilly & Co., Inc.*, 2018 WL 3802072 (E.D. Tex. Aug. 10, 2018); *U.S. ex rel. Jamison v. Career Opportunities, Inc.*, 2019 WL 460229 (N.D. Tex. Feb. 6, 2019); *U.S. ex rel. Williams v. McKesson Corp.*, No. 3:12–CV–0371–B, 2014 WL 3353247 (N.D. Tex. July 9, 2014)**

The pattern in these cases becomes readily apparent. Relators may provide extensive hypothesizing of an alleged scheme, but without the requisite particularity, courts uphold Rule

9(b)'s high standard, disregarding conclusory language, regardless of its volume. Such pattern is reflected in the four other cases cited by USAA – *Bank of America*, *Eli Lilly & Co. Inc.*, *Career Opportunities, Inc.*, and *McKesson Corp.* – none of which Bruff addressed. It is not enough for Bruff to simply identify what he perceives as an alleged scheme. There is no indicia whatsoever – reliable or otherwise – that could lead to any inference – strong or otherwise – that Bruff's allegations are meritorious. Bruff simply pitches an idea but gives it no color; Bruff's allegations read like a headline without a story. Without more, Bruff's allegations must be dismissed.

Instead of tackling any of these cases, Bruff argues that the Rule 9(b) standard is flexible under *Grubbs* and suggests that his allegations are consistent with *Grubbs'* relaxed interpretation. This argument fails. The *Grubbs* court added a second standard[3] to allow a relator who cannot cite an actual claim to plead a viable false claim – a relator must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190. This alternative standard *is* the flexibility of which Bruff speaks but cannot satisfy.

Importantly, the *Nunnally* court cautioned that this second standard "does not absolve [a relator] of the burden of otherwise sufficiently pleading the time, place, or identity details of the traditional standard, in order to effectuate Rule 9(b)'s function of fair notice and protection from frivolous suits." *U.S. ex rel. Nunnally*, 519 Fed. App'x at 895. To be sure, the *Grubbs* court held that the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)," but a relator must still allege, in some fashion, "particular details of a scheme to submit false claims

---

[3] Under the first standard, a relator can plead the "specific contents of actually submitted claims, such as billing numbers, dates, and amounts." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

Here, Bruff has not alleged the "time, place, contents, or identity," nor has he alleged any other reliable indicia such that his deviation from the "time, place, contents or identity" standard is justified. While the standard is flexible, it is not lower, and Bruff has not demonstrated how his allegations meet the requirements in *Grubbs*.

### B. Relator Misunderstands the "Obligation" Element Under the FCA.

Bruff failed to plead at all, let alone with particularity, that USAA owed an obligation to pay, as required under the FCA. Bruff's reverse false claim would become viable under the FCA only by alleging USAA "knowingly conceals or knowingly and improperly avoids or decreases *an obligation to pay* or transmit money or property to *the Government*." 31 U.S.C. § 3729(a)(1)(G) (emphasis added). The Fifth Circuit held that the FCA "does not extend to the *potential* or *contingent obligations* to pay the government fines or penalties which have not been levied or assessed (and as to which no formal proceedings to do so have been instituted) . . ." *U.S. ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657-58 (5th Cir. 2004) *(*emphasis added).

In this context, Bruff has not alleged the steps factually necessary to show an obligation. Bruff has not ruled out, as he must, possibilities that could explain the alleged conduct, such as USAA's group health plan not providing coverage for certain prescription drug expenses, in which case Medicare could become the primary payer. He similarly fails to eliminate the possibility that Medicare made payments after USAA exhausted its coverage limits. There are multiple potentialities in which Medicare could have made a valid payment on Bruff's prescription drug expense without creating an obligation to USAA as a primary payer. But without particulars, Bruff's allegations become no more than theoretical musings, which fail to meet the Rule 9(b) pleading standard as interpreted by *Grubbs*.

Bruff contests this argument. He posits that USAA's alleged obligation was not contingent or potential; rather, USAA allegedly had an obligation to pay by default. Bruff suggests that USAA's (alleged) automatic responsibility to repay the government arose simply because USAA is categorizable as a "primary payer," as defined under the MSP Act. Bruff also appears to argue that USAA's obligation arose automatically because USAA allegedly is responsible for coordinating benefits. These arguments fail.

First, USAA bears no responsibility as a primary payer to automatically pay Medicare any time Medicare makes a payment for Bruff's prescription medication. Under the MSP Act, "a primary plan . . . shall reimburse . . . any payment made by the Secretary under this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or <u>had a responsibility</u> to make payment with respect to such item or service*." 42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added); *see also U.S. ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 449 (6th Cir. 2024). As explained above, a primary payer may not pay first if the relator's prescription drug plan does not provide coverage for the prescription drug in question, the plan does not cover the period at issue, or a beneficiary's deductible has not been met. Despite these nuances, Bruff alleges simply that USAA had an obligation because it was categorizable as a primary payer. This blanket statement is insufficient to properly plead that USAA owed an obligation to pay under the MSP Act.

Even if USAA did owe Medicare reimbursements, which USAA denies, Bruff fails to allege that Medicare made a claim to USAA for payment, such that USAA was on notice that payment was owed. Under the MSP Act, "[a] primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items

or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii).

The analysis should end there, but Bruff further (and wrongfully) alleges that USAA has a responsibility to coordinate benefits, conflating that alleged responsibility with an "obligation to pay the government" under the FCA. Bruff appears to allege a false dichotomy – Bruff's benefits would not be coordinated if USAA did not do so. To be clear, an obligation to repay the government under the FCA is not tantamount to any obligation to coordinate benefits. But in response to the underlying premise, Bruff's argument is unfounded. The language in 24 C.F.R § 411.25, for example, reveals that the coordination-of-benefits process occurs on multiple levels, such that USAA would not be solely responsible for coordinating Bruff's benefits. Bruff provides an oversimplified and limited glimpse into the intricate regulatory requirements that underlie the coordination-of-benefits process, in support of a premise he has wrongfully conflated as an "obligation" under the FCA.

## III.     Conclusion

For these reasons and those set forth in USAA's Motion to Dismiss the Amended Complaint, USAA respectfully requests the Court dismiss the Amended Complaint with prejudice.

Dated: November 7, 2025

Respectfully submitted,

**McGLINCHEY STAFFORD, PLLC**


*/s/ Megan S. Ben'Ary*
Megan S. Ben'Ary
*Admitted Pro Hac Vice*
Virginia Bar No. 47439
1275 Pennsylvania Ave. NW, Ste. 420
Washington, DC 20004
Phone: 202-802-9949
Email: mbenary@mcglinchey.com


T. Dylan Reeves
Texas Bar No. 24070483
6688 N Central Expwy., Ste. 400
Dallas, Texas 75206
Phone: 615-762-9050
Email: dreeves@mcglinchey.com

William G. Wojcik
*Admitted Pro Hac Vice*
Tennessee Bar No. 033634
333 Commerce St., Ste. 1425
Nashville, TN 37201
Phone: 615-762-9048
Email: wwojcik@mcglinchey.com

Morgan E. Kelley
*Admitted Pro Hac Vice*
Louisiana Bar No. 38299
601 Poydras St., Ste. 1200
New Orleans, LA 70130
Phone: 504-596-2755
Email: mkelley@mcglinchey.com

*Attorneys for Defendant United Services
Automobile Association*

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, a copy of the above and foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF system, which will forward notice of this filing to all counsel of record.

*/s/ Megan Ben'Ary*