**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, CHARLES TERRENCE BRUFF, <br><br>          Plaintiff, <br><br>          v. <br><br> UNITED SERVICES AUTOMOBILE ASSOCIATION, *et al.*, <br><br>          Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Case No: 5:22-CV-00593-DAE |

**DEFENDANT CAREMARK RX, L.L.C.'S**
**<u>MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)</u>**

TO SENIOR UNITED STATES DISTRICT JUDGE DAVID A. EZRA:

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

STATUTORY BACKGROUND ...............................................................................................2

    A.    The False Claims Act. ...........................................................................................2

    B.    The Medicare Secondary Payer Act. ..................................................................3

FACTUAL BACKGROUND .....................................................................................................4

PROCEDURAL BACKGROUND ............................................................................................5

LEGAL STANDARD ...............................................................................................................6

ARGUMENT ............................................................................................................................6

I.     THE MSP ACT'S REMEDIAL SCHEME FORECLOSES RELATOR'S FCA CLAIM. ....6

II.    RELATOR FAILS TO ALLEGE A REVERSE FCA CLAIM. ..................................................8

    A.    The Alleged Reverse FCA Claim Fails Rule 9(b). .................................................8

    B.    The Amended Complaint Fails to Allege the Elements of a Reverse FCA Claim. ....12

        1.    The Amended Complaint Fails to Allege an "Obligation." ..............................12

        2.    The Amended Complaint Fails to Allege a "Knowing Concealment" or "Knowing and Improper Avoidance." .................................................................14

III.   RELATOR FAILS TO ALLEGE A CLAIM UNDER SECTION 3729(a)(1)(A) ................17

    A.    Relator's Section 3729(a)(1)(A) Claim Fails Rule 9(b) .......................................17

    B.    Relator's Section 3729(a)(1)(A) Claim Fails on Its Own Merits. ................................18

IV.   IN THE ALTERNATIVE, THE CONSTITUTION PROHIBITS THIS *QUI TAM* ACTION. ..............................................................................................................................20

CONCLUSION ........................................................................................................................20

STATUTORY APPENDIX ......................................................................................................1a

**TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................6

*City of Rancho Palos Verdes v. Abrams*,
544 U.S. 113 (2005)............................................................................................7

*Cochran v. U.S. Health Care Fin. Admin.*,
291 F.3d 775 (11th Cir. 2002) ............................................................................3

*D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*,
629 F.3d 450 (5th Cir. 2010)..............................................................................7

*Lollar v. Baker*,
196 F.3d 603 (5th Cir. 1999)..............................................................................7

*M.V. ex rel. J.C. v. Conroe Indep. Sch. Dist.*,
2018 WL 4564948 (S.D. Tex. Sept. 24, 2018)...................................................7

*Muth v. United States*,
2021 WL 3017992 (W.D. Tex. Apr. 22, 2021) .......................................... 15, 16

*Riley v. St. Luke's Episcopal Hosp.*,
252 F.3d 749 (5th Cir. 2001) (en banc) ...........................................................20

*Stalley ex rel. United States v. Mountain States Health All.*,
644 F.3d 349 (6th Cir. 2011)..............................................................................4

*Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys.*,
524 F.3d 1229 (11th Cir. 2008) ..........................................................................4

*Stalley v. Methodist Healthcare*,
517 F.3d 911 (6th Cir. 2008)..............................................................................3

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016).................................................................................16, 18, 19

*United States ex rel. Angelo v. Allstate Ins. Co.*,
106 F.4th 441 (6th Cir. 2024) ...........................................................8, 11, 15, 16

*United States ex rel. Bain v. Ga. Gulf Corp.*,
386 F.3d 648 (5th Cir. 2004)............................................................................13

*United States ex rel. Colquitt v. Abbott Lab'ys,*
858 F.3d 365 (5th Cir. 2017)...........................................................................................17

*United States ex rel. Frey v. Health Mgmt. Sys.,*
2023 WL 2563239 (S.D. Tex. Feb. 10, 2023)...................................................................11

*United States ex rel. Gage v. Davis S.R. Aviation,*
623 F. App'x 622 (5th Cir. 2015) ................................................................................8, 10

*United States ex rel. Gentry v. Encompass Health Rehab Hosp. of Pearland,*
157 F.4th 758 (5th Cir. 2025) .........................................................................17, 18, 20

*United States ex rel. Grubbs v. Kanneganti,*
565 F.3d 180 (5th Cir. 2009)...........................................................................................17

*United States ex rel. Guth v. Roedel Parson Koch Blache Balhoff & McCollister,*
626 F. App'x 528 (5th Cir. 2015) ..................................................................................8, 11

*United States ex rel. Hebert v. Dizney,*
295 F. App'x 717 (5th Cir. 2008) ...........................................................................9, 11, 18

*United States ex rel. Hendrickson v. Bank of Am.,*
779 F. App'x 250 (5th Cir. 2019) .....................................................................................9

*United States ex rel. Hendrickson v. Bank of Am.,*
343 F. Supp. 3d 610 (N.D. Tex. 2018)..........................................................................9, 14

*United States ex rel. Integra Med Analytics v. Baylor Scott & White Health,*
816 F. App'x 892 (5th Cir. 2020) ....................................................................................6

*United States ex rel. Jackson v. Ventavia Rsch. Grp.,*
667 F. Supp. 3d 332 (E.D. Tex. 2023) ...........................................................................19

*United States ex rel. Jameson v. WBI Energy Transmission, Inc.,*
2024 WL 3512126 (S.D. Tex. July 22, 2024)................................................................8, 14

*United States ex rel. Lesnik v. ISM Vuzem d.o.o.,*
112 F.4th 816 (9th Cir. 2024)..........................................................................................13

*United States ex rel. Marcy v. Rowan Cos.,*
520 F.3d 384 (5th Cir. 2008)......................................................................................13, 14

*United States ex rel. Michigan v. State Farm Mut. Auto. Ins. Co.,*
2025 WL 101639 (6th Cir. Jan. 15, 2025) .......................................................................9

*United States ex rel. MSP WB v. State Farm Mut. Auto. Ins. Co.,*
2024 WL 1316223 (E.D. Mich. Mar. 26, 2024) ............................................................13

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.,*
519 F. App'x 890 (5th Cir. 2013) ........................................................................ 8, 17, 18

*United States ex rel. Polansky v. Exec. Health Res., Inc.,*
599 U.S. 419 (2023) ................................................................................................ 20

*United States ex rel. Porter v. Magnolia Health Plan, Inc.,*
810 F. App'x 237 (5th Cir. 2020) .......................................................................... 8

*United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.,*
843 F.3d 1033 (5th Cir. 2016) ...................................................................... 8, 13, 14

*United States ex rel. Spicer v. Westbrook,*
751 F.3d 354 (5th Cir. 2014) ................................................................................ 18

*United States ex rel. Steury v. Cardinal Health, Inc.,*
625 F.3d 262 (5th Cir. 2010) ................................................................................ 16

*United States ex rel. Steury v. Cardinal Health, Inc.,*
735 F.3d 202 (5th Cir. 2013) ................................................................................ 8

*United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.,*
674 F. App'x 92 (2d Cir. 2017) ............................................................................ 9

*United States v. Kay,*
359 F.3d 738 (5th Cir. 2004) ................................................................................ 15

*United States v. Shabazz,*
633 F.3d 342 (5th Cir. 2011) ................................................................................ 15

*Wood ex rel. United States v. Applied Rsch. Assocs., Inc.,*
328 F. App'x 744 (2d Cir. 2009) .......................................................................... 16

*Woods v. Empire Health Choice, Inc.,*
574 F.3d 92 (2d Cir. 2009) .................................................................................... 7

## OTHER AUTHORITIES

31 U.S.C. § 3729(a)(1)(A) ........................................................................ 2, 17, 18, 19

31 U.S.C. § 3729(a)(1)(G) ........................................................................................ 1, 3

31 U.S.C. § 3729(b)(1) ............................................................................................ 14

31 U.S.C. § 3729(b)(3) ............................................................................................ 13

31 U.S.C. § 3729(b)(4) ............................................................................................ 19

31 U.S.C. § 3730(b)(1) .............................................................................................. 2

31 U.S.C. § 3730(b)(2) ..............................................................................................2, 3

31 U.S.C. § 3730(b)(4)(B) ...............................................................................................3

31 U.S.C. § 3730(d)(1) .....................................................................................................3

31 U.S.C. § 3730(d)(2) .....................................................................................................3

42 U.S.C. § 1395y(b) ...................................................................................................3, 19

42 U.S.C. § 1395y(b)(1)(A)(i) ..........................................................................................3

42 U.S.C. § 1395y(b)(2)(A)(i) ..........................................................................................3

42 U.S.C. § 1395y(b)(2)(B) ............................................................................................10

42 U.S.C. § 1395y(b)(2)(B)(i) .........................................................................................20

42 U.S.C. § 1395y(b)(2)(B)(ii) ......................................................................3, 4, 7, 13, 14

42 U.S.C. § 1395y(b)(2)(B)(iii) .....................................................................................4, 7

42 U.S.C. § 1395y(b)(2)(B)(v) ............................................................................7, 14,  20

42 U.S.C. § 1395y(b)(3)(A) ..........................................................................................4, 7

Fed. R. Civ. P. 8(a) ........................................................................................................11

Fed. R. Civ. P. 9(b) ..................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................................................6

False Claims Act ......................................................................................................*passim*

Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(a), May 20, 2009,
    123 Stat. 1617, 1621 .................................................................................................16

Medicare Secondary Payer Act .................................................................................*passim*

*Black's Law Dictionary* (9th ed. 2009) ...........................................................................15

*Webster's Third New Int'l Dictionary* (2002) ..................................................................15

Centers for Medicare & Medicaid Services, Coordination of Benefits,
    https://www.cms.gov/medicare/coordination-benefits-
    recovery/overview/coordination-benefits (Sept. 10, 2024) ...........................................10

**INTRODUCTION**

Relator Charles Bruff claims his employer, United Services Automobile Association (USAA), operates a health plan that categorically refuses to cover prescription drug claims for employees who also have Medicare coverage. According to Relator, USAA therefore violated the Medicare Secondary Payer Act (MSP Act), which requires private health plans like USAA's to provide primary coverage for their beneficiaries regardless of Medicare eligibility. But Relator did not sue under the MSP Act's remedial provisions, which would allow him to pursue double damages for any loss he actually suffered because of an MSP Act violation. Relator instead filed a False Claims Act (FCA) lawsuit against USAA and its pharmacy-benefit manager, Caremark RX, L.L.C., seeking billions of dollars in damages and penalties (of which he could seek up to 30% as a reward).

Relator's claims are fundamentally flawed. Out of the gate, Relator's lawsuit violates the fundamental rule that, when Congress enacts a specific remedial scheme to vindicate statutory rights, those remedies are exclusive. The MSP Act authorizes a limited cause of action allowing individual beneficiaries to recover their own damages caused by MSP Act violations. Rather than invoke that specific private right of action, Relator sued under the FCA, a generalized statute designed to prevent fraud against the government. This Court should reject Relator's attempt to subvert the MSP Act's carefully calibrated remedial framework by pursuing remedies the MSP Act does not authorize.

Relator's claims also fail on the merits. Relator asserts a "reverse" FCA claim under 31 U.S.C. § 3729(a)(1)(G), which imposes liability for "knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government." But Relator does not provide the details of any drug claim he submitted, as he would need to do to maintain a claim against any defendant under Rule 9(b). If anything, Relator's allegations and exhibits directly undermine his allegations because they demonstrate that many drug claims were, in fact, submitted to and covered by USAA. And even if Relator could plead a claim against some defendant,

1

his threadbare allegations about "USAA and Caremark" do not satisfy Rule 9(b)'s heightened pleading standard as to Caremark because they give no specific information about Caremark's role.

Relator's "reverse" FCA claim also fails because he does not allege any facts showing that Caremark has an existing obligation to reimburse the government. At most, he alleges that USAA violated a statute in a way that would authorize Medicare to seek reimbursement if it chose to do so, an allegation that is insufficient as a matter of law. Nor does Relator plead any facts showing Caremark acted with scienter, or that Caremark did anything to conceal or improperly avoid any obligation.

Relator also asserts that Caremark "knowingly present[ed]" a "false or fraudulent claim" in violation of 31 U.S.C. § 3729(a)(1)(A) by submitting prescription drug claims for individuals covered by USAA's insurance plan to Medicare. This tacked-on theory gets Relator nowhere. Again, Relator's failure to allege any particularized facts dooms this claim. And, on the merits, relators cannot establish an FCA claim based on an underlying statutory violation without alleging that the defendant implicitly certified compliance with that statute when submitting the claim, and that the government would not have paid the claim if it had known of the noncompliance. Relator fails to allege either element, and also fails to allege that Caremark acted with the requisite scienter or caused the government to overpay.

Finally, Caremark expressly reserves the right to argue that *qui tam* statutes are unconstitutional.

**STATUTORY BACKGROUND**

**A.      The False Claims Act.**

The FCA imposes liability against a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money … to the Government." 31 U.S.C. § 3729(a)(1)(A), (G).[1] Under the FCA's *qui tam* provision, private parties called "relators" may sue on the Government's behalf. *Id.* § 3730(b)(1). The relator must first file her complaint under seal and provide a copy to the government. 31 U.S.C. § 3730(b)(2). The Government may then "elect

---

[1] The text of the relevant statutes is set out in the statutory appendix appended hereto.

to intervene and proceed with the action … in which case the action shall be conducted by the Government." *Id.* § 3730(b)(2), (4)(A).  Alternatively, the Government may "notify the court that it declines to take over the action," in which case the relator "shall have the right to conduct the action." *Id.* § 3730(b)(4)(B).

If an FCA plaintiff establishes liability, the statute imposes treble damages and a per-claim penalty of up to $ 28,894.  *Id.* § 3729(a)(1)(G); *see* FAC ¶ 78.  In an "intervened" FCA action litigated by the government, the Relator may seek an award of 15% to 25% of the government's total recovery. 31 U.S.C. § 3730(d)(1).  If the government elects not to intervene the Relator may seek an award of up to 30%.  *Id.* § 3730(d)(2).

**B.** **The Medicare Secondary Payer Act.**

Before Congress enacted the MSP Act, "Medicare served as the primary payer of health costs for eligible individuals."  *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir. 2008).  In 1980, the MSP Act established Medicare as the "secondary payer" when claimants have other, private insurance coverage.  *See* 42 U.S.C. § 1395y(b).  The MSP Act therefore prohibits private plans from "tak[ing] into account" the fact that an individual is covered by Medicare and requires plans to provide Medicare beneficiaries with "the same benefits" under the "same conditions" as everyone else.  *Id.* § 1395y(b)(1)(A)(i).  The MSP Act also prohibits Medicare from providing coverage if "payment has been made, or can reasonably be expected to be made," by a private plan.  *See id.* § 1395y(b)(2)(A)(i).

If a private plan does not promptly cover a Medicare beneficiary's claim, Medicare still may pay the claim "conditionally" to ensure that "the beneficiary gets the health care she needs."  *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002).  In that scenario, Medicare is entitled to reimbursement if "it is demonstrated that" the "primary plan … has or had a responsibility to make payment with respect to such item or service."  42 U.S.C. § 1395y(b)(2)(B)(ii).

The MSP Act contains a comprehensive enforcement regime.  If a primary plan does not timely reimburse CMS for conditional claims, CMS "may charge interest … on the amount of the

3

reimbursement until reimbursement is made." *Id.* § 1395y(b)(2)(B)(ii). The government also may bring claims against parties responsible for payment and is entitled to "collect double damages." *Id.* § 1395y(b)(2)(B)(iii). And the MSP Act creates a private right of action for damages in cases in which a primary plan "fails to provide for primary payment (or appropriate reimbursement)" as required under the Act. *Id.* § 1395y(b)(3)(A). Critically, however, the MSP Act is not a *qui tam* statute. *See, e.g.*, *Stalley ex rel. United States v. Mountain States Health All.*, 644 F.3d 349, 351 (6th Cir. 2011). The MSP Act therefore does not permit plaintiffs to sue as "private attorneys general to sue on behalf of the United States," *see id.*, or to obtain a portion of the government's recovery for any proven violation. Instead, individual beneficiaries may only seek to recover their own damages (again, doubled). *See, e.g., id.*; *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1234 (11th Cir. 2008).

## FACTUAL BACKGROUND

Relator worked for USAA as a software engineer beginning in 2016. First Amended Complaint (FAC) ¶ 43. He maintained primary insurance coverage through the USAA Employer Group Health Plan. *Id.* ¶ 47. In addition to primary coverage through his USAA plan, Relator had additional insurance coverage through Medicare, including for prescription benefits. *Id.* ¶ 45.

Caremark is not an insurer, nor is it Relator's primary plan. Instead, Caremark is a PBM that manages the pharmacy-benefits component of Relator's USAA plan. *Id.* ¶¶ 48-49. Separately, Caremark manages pharmacy benefits for certain federal insurance plans, including plans offering Medicare Part D benefits. *See id.* ¶ 49.

Relator alleges that, shortly after he began working for USAA, he "discovered" that "USAA and Caremark refuse to coordinate benefits with public programs such as Medicare and Medicaid." *Id.* ¶¶ 50, 53. Relator asserts that "USAA does not coordinate benefits for anyone who has both private insurance through USAA and public healthcare," and that prescription drug claims for such employees "were not run through USAA's insurance at all." *Id.* ¶¶ 53, 56. Relator does not allege

how he "discovered" this information or from whom, and he does not identify any USAA employee other than himself who maintained coverage through both USAA's plan and Medicare.

Relator further alleges that he "raised this issue with USAA's HR" and was told that "USAA and Caremark do not coordinate prescription medication coverage for Medicare enrollees with CMS." *Id.* ¶¶ 54-55. Relator says he was told he should not "seek reimbursement of prescription drug costs paid by Medicare or Medicaid." *Id.* ¶ 55. Relator does not identify who at USAA provided this information, or what else was said during the conversation. Nor does he allege that anyone from Caremark said anything to him about coordination of benefits, or had any discussions with anyone at USAA about coordination of benefits.

At some point, Relator alleges that "USAA ultimately agreed to fix the issue and coordinate care for Mr. Bruff," but he claims USAA and Caremark later "once again flipped his coverage." *Id.* ¶¶ 57-58. According to Mr. Bruff, "neither USAA nor Caremark has repaid Medicare for any drug claims that Medicare conditionally paid for," and "Caremark has never sought reimbursement from USAA to CMS." *Id.* ¶ 60. Mr. Bruff does not allege any details about his USAA plan, what drugs are covered, the conditions of coverage, or what is deductible is. Mr. Bruff does not allege any details about particular claims submitted, such as where and how he purchased the drugs, or whether he properly submitted those claims to USAA. And Mr. Bruff pleads no other details about Caremark's involvement—he does not explain Caremark's role in administering benefits for USAA, Caremark's role in denying any claim, Caremark's knowledge of the reason that any claim was denied (assuming USAA denied any claims), or Caremark's responsibility to pay for any drug covered by his USAA plan.

**PROCEDURAL BACKGROUND**

Relator filed a sealed complaint on June 9, 2022, alleging that USAA, Caremark, and other pharmacy-benefit managers submitted false claims to the government by refusing to coordinate benefits. Dkt. 5. On February 11, 2025, the Government declined to intervene. Dkt. 24. The Court then ordered the Complaint unsealed and instructed Relator to serve Defendants. Dkt. 24. On July

5

21, 2025, Relator filed an Amended Complaint including new allegations related to the MSP Act and three exhibits. Dkt. 48. Exhibit A is an explanation of benefits for Mr. Bruff's "Medicare prescription drug coverage," which does not contain any information about his USAA plan or any claims submitted to it. Dkt. 48-1. Exhibit B is a self-made spreadsheet containing one list of claims "billed to and paid by Medicare only," and another list of claims "where Medicare and USAA both paid." Dkt. 48-2. This exhibit does not contain any details about the pharmacy that dispensed the drug, whether or how Mr. Bruff submitted the claim to USAA for coverage, whether USAA later reimbursed any payments, or whether the drugs were covered under his USAA plan. Finally, Exhibit C is a screenshot purporting to show a "Valid Claim USAA Rejected." Dkt. 48-3. The exhibit reflects that his *Medicare* plan, not USAA, "rejected" the claim. *See* Dkts. 48-1, 48-3.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter which, if accepted as true, 'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action" does not suffice, nor do conclusory statements or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up). Because the FCA is an anti-fraud statute, plaintiffs suing under it must satisfy Rule 9(b)'s heightened pleading standard by alleging the "who, what, when, where, and how" of their claims. *See, e.g.*, *United States ex rel. Integra Med Analytics v. Baylor Scott & White Health*, 816 F. App'x 892, 896-97 (5th Cir. 2020).

## ARGUMENT

### I. The MSP Act's Remedial Scheme Forecloses Relator's FCA Claim.

Relator's theory, at its core, is that Defendants violated the MSP Act. Even if Relator had alleged such a violation (and he did not), the MSP Act provides his remedy. Relator cannot use the FCA to end-run, and expand, the MSP Act's remedial scheme.

"Congress's inclusion of private remedial provisions in a statute ordinarily indicates that Congress did not intend to 'leave open a more expansive remedy.'" *M.V. ex rel. J.C. v. Conroe Indep. Sch. Dist.*, 2018 WL 4564948, at *10 (S.D. Tex. Sept. 24, 2018) (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005)). Accordingly, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Rancho*, 544 U.S. at 121, 125 (citation omitted); *see Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999). Parties may not use general causes of action to enforce statutes that contain their own "more restrictive private remedy." *Rancho*, 544 U.S. at 121; *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 456 (5th Cir. 2010).

Relator's FCA claim is plainly an attempt to avoid the MSP Act's remedial scheme. The MSP Act gives CMS discretion to pursue claims for reimbursement—or not, if the agency chooses. 42 U.S.C. § 1395y(b)(2)(B)(ii)-(iii), (v). But to protect individuals, the Act contains a private right of action that allows beneficiaries to sue "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)." *Id.* § 1395y(b)(3)(A). Unlike the FCA, the MSP Act only authorizes beneficiaries to recover for their own damages; they cannot stand in the government's shoes, pursue violations related to other beneficiaries, and seek a portion of the Government's ultimate recovery. *See Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 97-100 (2d Cir. 2009) (collecting cases); *supra* pp.3-4.

Relator seeks to avoid those carefully crafted limitations. Relator alleges an untold number of MSP Act violations affecting countless unidentified beneficiaries. And Relator seeks to recover, not the damages he actually suffered, but three times of "anywhere from $2 to $4 billion" in damages, as well as civil penalties under the FCA—of which he could seek up to 30% as a statutory reward. FAC ¶¶ 75-78. The MSP Act does not contemplate any such action or any such award. Allowing this case to proceed under the FCA would ignore Congress's judgment and undermine the remedial scheme Congress enacted. *Rancho*, 544 U.S. at 124. The Court should dismiss for that reason alone.

**II.     Relator Fails to Allege a Reverse FCA Claim.**

To state a "reverse" FCA claim, Relator must allege—with particularity under Rule 9(b)—"(1) an obligation to pay money to the Government; and (2) that the defendant knowingly concealed or knowingly and improperly avoided or decreased that obligation." *United States ex rel. Jameson v. WBI Energy Transmission, Inc.*, 2024 WL 3512126, at \*4, 5 (S.D. Tex. July 22, 2024) (quoting *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1034 (5th Cir. 2016)). Relator claims that Caremark avoided an obligation to pay CMS because Caremark denied prescription drug claims submitted by beneficiaries under USAA's plan, then failed to reimburse CMS when CMS made conditional payments to cover those claims. FAC ¶ 42. Relator did not plead that theory adequately under Rule 9(b), and even if he had, his claim would fail on its own terms because he does not allege that Caremark had any obligation to reimburse CMS, or that Caremark knowingly concealed or knowingly improperly avoided any such obligation.

**A.     The Alleged Reverse FCA Claim Fails Rule 9(b).**

The Fifth Circuit applies Rule 9(b) "with bite and without apology." *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 240 (5th Cir. 2020). A Relator must allege with particularity the "who, what, when, where, and how" of the alleged wrongdoing. *See, e.g.*, *United States ex rel. Guth v. Roedel Parson Koch Blache Balhoff & McCollister*, 626 F. App'x 528, 531 (5th Cir. 2015). And when, as here, an FCA claim requires proof that the defendant violated a separate statute, the Relator must plead the underlying statutory violation with specificity as well. *See United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (per curiam).

Courts routinely dismiss FCA claims for failure to satisfy this heightened standard. *See, e.g.*, *id.*; *United States ex rel. Gage v. Davis S.R. Aviation*, 623 F. App'x 622, 628 (5th Cir. 2015); *United States ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 207-08 (5th Cir. 2013). The Sixth Circuit's decision in *United States ex rel. Angelo v. Allstate Insurance Co.*, is instructive. *See* 106 F.4th 441 (6th Cir. 2024). There, as here, the relator alleged that the defendant did not satisfy its primary-payer obligations under the MSP Act, then failed to reimburse Medicare for conditional payments. *See id.* at 447. The district

court dismissed and the Sixth Circuit affirmed, holding that the complaint failed to allege with specificity that the defendant avoided any established duty to pay the government. *See id.* at 449-50. In particular, the relator failed to allege with specificity that the insurer "was responsible for the underlying medical expenses in the first place," nor did it sufficiently allege that the insurer "did not honor its obligation" to pay. *See id.*; *United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92, 95-96 (2d Cir. 2017) (per curiam) (dismissing similar claim); *United States ex rel. Michigan v. State Farm Mut. Auto. Ins. Co.*, 2025 WL 101639, at *3-7 (6th Cir. Jan. 15, 2025) (same).

Similarly, in *United States ex rel. Hendrickson v. Bank of America*, the Fifth Circuit upheld dismissal of a reverse FCA claim alleging that Bank of America failed to return government-benefit payments for deceased individuals. 779 F. App'x 250, 252 (5th Cir. 2019). There, dismissal was appropriate because the relator failed to include the "particular details" of the alleged wrongdoing, such as "the subset of recipient deaths that Defendants supposedly exploited, the person at each bank who may have driven the scheme, or any characteristic of the recipients that made them ripe for the purported fraudulent scheme." *See United States ex rel. Hendrickson v. Bank of Am.*, 343 F. Supp. 3d 610, 633 (N.D. Tex. 2018) (cleaned up); *Hendrickson*, 779 F. App'x at 253 (adopting this reasoning); *see also, e.g.*, *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 723 (5th Cir. 2008) (dismissing direct FCA claim where complaint alleged that defendants "routinely failed to collect co-insurance payments" and that "Medicaid was routinely billed [improperly]" without providing specifics (cleaned up)).

Relator's Amended Complaint fails for similar reasons. Relator claims that USAA "never coordinates with CMS regarding payment for the prescription drugs provided to USAA's group health plan enrollees," and that USAA "never reimburses CMS" for conditional payments made to cover the claims. FAC ¶ 10; *see id.* ¶ 56.

Those vague, sweeping allegations do not state a claim against anyone under Rule 9(b). *Hebert*, 295 F. App'x at 722. Relator does not allege that he went to any particular pharmacy. He does not allege that he properly submitted any particular claim for coverage through his USAA account. He

does not allege that any particular drug he obtained was actually covered by USAA's plan. He does not allege that he was denied coverage on any particular claim because of his status as a Medicare beneficiary. He does not allege that any particular drug claim was submitted to Medicare. He does not allege that Medicare made any particular "conditional payment." 42 U.S.C. § 1395y(b)(2)(B). He does not allege that he or CMS "demonstrated" USAA "has or had a responsibility to make payment" with respect to any particular claim, or sought reimbursement for a conditional payment. *Id.* And he does not allege that USAA failed to make any conditional payment it owed.

Relator's allegations against Caremark are even sparser. Relator alleges Caremark knew about and acquiesced in USAA's refusal to pay prescription-drug claims for beneficiaries with government insurance. *E.g.*, FAC ¶ 1. But Relator never alleges *what exactly Caremark knew or did*. Nor does Relator say when Caremark learned of USAA's alleged wrongdoing, how Caremark acquired that knowledge, whether Caremark subjectively believed USAA was doing anything wrong, or how Caremark could or should have known whether USAA fulfilled any obligation it may have had to reimburse CMS.

Relator also alleges that Caremark "allow[s] its clients to elect whether or not to turn on a flag that requires coordination of benefits." FAC ¶ 64. That is irrelevant. Many pharmacy-benefit managers—including Caremark—offer a service that facilitates automatic coordination of benefits for beneficiaries of private insurers. *See* Centers for Medicare & Medicaid Services, Coordination of Benefits, https://www.cms.gov/medicare/coordination-benefits-recovery/overview/coordination-benefits (Sept. 10, 2024) (describing similar arrangements). But, as CMS itself makes clear, this sort of automatic process is entirely voluntary and, in the absence of such an arrangement, "the person with Medicare"—here, the Relator himself—"is required to coordinate secondary or supplemental payment of benefits with any other insurers he or she may have in addition to Medicare." *Id.* In all events, Relator never explains what impact the "coordination of benefits" flag has—much less how, specifically, the flag contributed to an alleged violation of the MSP Act. *See Gage*, 623 F. App'x at 623.

That leaves Relator's allegation that "USAA and Caremark refuse to coordinate benefits with public programs such as Medicare and Medicaid." FAC ¶ 38; *see id.* ¶¶ 7-9, 50-51, 53, 55, 58, 60, 62, 66, 68. At the threshold, these allegations do not satisfy even the ordinary pleading standard under Rule 8(a). *See Guth*, 626 F. App'x at 533 (dismissing FCA complaint under Rule 8(a) without even reaching heightened 9(b) standard). Indeed, the allegations here are even less particular than in *Angelo*—where the district court granted a motion to dismiss and the Sixth Circuit affirmed. The Relator in *Angelo* at least provided specific "exemplars" of coverage determinations that it alleged the insurer failed to cover or reimburse. *See* 106 F.4th at 449-50. In contrast, the Amended Complaint here simply repeats its refrain that Caremark "refused" to coordinate benefits without any elaboration.

If that were not enough (and it is), Relator's allegations about "USAA and Caremark" are improper group pleading. Rule 9(b) requires that plaintiffs "identify[] specific actions of specific individuals at specific times" that violate the FCA. *Hebert*, 295 F. App'x at 722. Because plaintiffs must satisfy Rule 9(b) separately "as to each Defendant," it is "impermissible to make general allegations that lump all defendants together." *United States ex rel. Frey v. Health Mgmt. Sys.*, 2023 WL 2563239, at *7 (S.D. Tex. Feb. 10, 2023). Here, Relator does not identify Caremark's role in the alleged scheme, or explain what obligation *Caremark* (as opposed to USAA) could have to pay CMS.

Relator's exhibits do not salvage his claim. Exhibit A is a monthly prescription drug summary from August 2021, which Relator claims demonstrates that his prescription claims "were not run through USAA's insurance at all." FAC ¶ 56. Exhibit A shows no such thing—it is a summary of benefits from his "*Medicare* prescription drug coverage," which would not reflect payments from his private plan. *See* FAC Ex. A (emphasis added). And in his apparently self-made Exhibit B, Relator asserts that "Medicare and USAA both paid" for 49 claims. *See id.* Ex. B. at 2. This exhibit directly undermines Relator's conclusory assertion that Caremark did not "allow" his claims to be "processed" under USAA's plan because he was also eligible for federal benefits. *See, e.g., id.* ¶ 62.

11

Exhibit B also lists certain claims that, according to Relator, were paid for "by Medicare only." *Id.* Ex. B at 1. It is not at all clear how Plaintiff created this exhibit or whether it is accurate but, accepting the truth of Exhibit B's assertion, there is no allegation that (1) these claims were covered by Relator's USAA plan; (2) Relator properly presented the claims to be processed by USAA; (3) Medicare's payments for these drugs were "Conditional Payments" made subject to potential reimbursement; (4) CMS "demonstrated" that USAA should have paid for all or some of these claims; (5) CMS informed USAA of this determination and demanded payment; (6) USAA refused to pay; or (7) Caremark had any role in any alleged wrongdoing connected with these claims.

Relator also attaches a screenshot of a claim denial, which (he claims) shows that USAA and Caremark "do not allow the claim to be processed when another payer is available." FAC ¶ 62; *id.* Ex. C. But the screenshot makes clear that this claim was denied *by his Medicare plan*, not his USAA plan, because the rejection reflects the same Prescription Control Number, MEDDADV, and Member ID, 28150541, as his Medicare Monthly Prescription Drug Summary. *See id.* Ex. A at 1; *id.* Ex. C at 2. Even if (counterfactually) this exhibit involved Relator's USAA plan, he does not allege that this drug was covered under that plan, he submitted the claim to USAA, it was denied because of his dual Medicare eligibility, CMS sought reimbursement, or USAA or Caremark failed to pay USAA's portion.

## B. The Amended Complaint Fails to Allege the Elements of a Reverse FCA Claim.

Even setting aside Relator's dispositive failure to plead adequate facts under Rule 9(b), his allegations still fail to state a reverse FCA claim.

### 1. The Amended Complaint Fails to Allege an "Obligation."

Relator asserts that "USAA and Caremark" had an obligation to reimburse CMS for conditional payments made to cover Mr. Bruff's prescription claims. But Relator fails to allege that Caremark had a present duty to pay the government because he does not allege CMS ever demonstrated that Caremark was required to reimburse any payments to CMS.

The FCA defines "obligation" as "an *established duty*, whether or not fixed, arising from" various sources. 31 U.S.C. § 3729(b)(3) (emphasis added). The FCA "does not extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed (and to which no formal proceedings to do so have been instituted)." *Simoneaux*, 843 F.3d at 1035. The asserted "obligation" therefore "cannot be merely a potential liability; a defendant must have a present duty to pay the government." *United States ex rel. Lesnik v. ISM Vuzem d.o.o.*, 112 F.4th 816, 819 (9th Cir. 2024) (cleaned up). Relators cannot establish reverse FCA liability merely by showing that the defendant violated a statute that would entitle the government to payment. As the Fifth Circuit has explained, for example, "when potential fines depend on intervening discretionary governmental acts, they are not sufficient to create 'obligations to pay.'" *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 391-92 (5th Cir. 2008); *see United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648 (5th Cir. 2004); *Simoneaux*, 843 F.3d at 1036.

The Amended Complaint here similarly fails to allege that USAA (much less Caremark) had an "established duty" to pay CMS. To be sure, the MSP Act authorizes CMS to make "conditional payments" in some circumstances and further authorizes CMS to seek reimbursement of those payments from the primary payor. 42 U.S.C. § 1395y(b)(2)(B)(ii), (iii). But the primary plan is only required to reimburse CMS "if it is demonstrated that such primary plan has or had a responsibility to make a payment with respect to" the claim CMS paid. *Id.* § 1395y(b)(2)(B)(ii). CMS may "demonstrate[]" that payment is due through "a judgment, a payment conditioned upon a recipient's compromise, waiver, or release … of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." *Id.* Relator does not allege that CMS "demonstrated" that Caremark has a responsibility to reimburse Medicare, by judgment or otherwise. *See, e.g.*, *United States ex rel. MSP WB v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 1316223, at *10 (E.D. Mich. Mar. 26, 2024) (plaintiff failed to allege current obligation to reimburse Medicare). At most,

then, Relator alleges a "potential or contingent" duty to pay CMS, which is insufficient as a matter of law. *Simoneaux*, 843 F.3d at 1036.

What is more, the MSP Act specifically authorizes CMS to "waive (in whole or in part)" its right to seek reimbursement of conditional payments "if the Secretary determines that the waiver is in the best interests of the program." 42 U.S.C. § 1395y(b)(2)(B)(v). Any potential duty to reimburse therefore depends on "intervening discretionary governmental acts," *Marcy*, 520 F.3d at 391—a discretionary decision about whether to waive reimbursement. Relator never alleges that the government made a decision to waive, or not to waive, reimbursement for any claim. Thus, no reverse FCA claim could possibly lie.

Furthermore, 42 U.S.C. § 1395y(b)(2)(B)(ii) requires "primary plan[s]" to reimburse CMS. As the allegations confirm, Caremark is not Relator's "primary plan"—USAA is. *See* FAC ¶¶ 8, 30.

### 2. The Amended Complaint Fails to Allege a "Knowing Concealment" or "Knowing and Improper Avoidance."

Even if the Amended Complaint alleged a cognizable obligation, Relator's reverse FCA claim still would fail because he does not allege that (1) Caremark acted "knowingly," or (2) Caremark "conceal[ed]" or "improperly avoid[ed]" any obligation.

*Scienter:* The FCA defines "knowingly" as (i) "actual knowledge of the information"; (ii) "deliberate ignorance of the truth or falsity of the information"; or (iii) "reckless disregard for the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). In a reverse FCA claim, the relator must allege the defendant's "awareness of *both* an obligation to the United States and his violation of that obligation." *Jameson*, 2024 WL 3512126, at *5. Although Rule 9(b) allows plaintiffs to plead knowledge generally, "simple allegations of fraudulent intent will not suffice, and plaintiffs must set forth *specific facts* supporting an inference of fraud." *Hendrickson*, 343 F. Supp. 3d at 635; *Jameson*, 2024 WL 3512126, at *5.

Courts "rigorously enforce the False Claims Act's knowledge requirement," *Angelo*, 106 F.4th at 451, because the knowledge requirement prevents the separate "obligation" and "scienter" elements from becoming a "one-part test"—contrary to the statute, *Jameson*, 2024 WL 3512126, at *7.

As explained above (at 8-12), Relator does not allege any "specific facts," *id.* at *6 (quotation omitted), showing that Caremark denied a prescription claim because Relator also is entitled to federal benefits, nor does it allege anywhere that CMS ever determined that Caremark should have provided coverage for a claim, demonstrated that it was entitled to reimbursement, and sought reimbursement from Caremark. Relator's failure to allege Caremark's scienter independently dooms his complaint.

***Concealment or Improper Avoidance:*** The Amended Complaint is not clear as to whether Relator claims Caremark "conceal[ed]" or "improperly avoid[ed]" an obligation. But Relator fails to allege facts supporting a claim under either prong.

Because the FCA does not define "conceals" or "improper[]," this court must give those words their "ordinary and natural meaning" and interpret them "according to the 'overall policies and objectives of the statute." *United States v. Shabazz*, 633 F.3d 342, 345 (5th Cir. 2011) (quoting *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004)); *Muth v. United States*, 2021 WL 3017992, at *9 (W.D. Tex. Apr. 22, 2021) (Ezra, J.). Dictionaries from the time of the FCA's 2009 amendment define "conceal" as "an act by which one prevents or hinders the discovery of something," *Black's Law Dictionary* (9th ed. 2009), or "to prevent disclosure or recognition of," *Webster's Third New Int'l Dictionary* (2002). So too with Relator's claim that Caremark "improperly avoid[ed]" an obligation. "Improper" is defined as "fraudulent or otherwise wrongful," *Black's*, and "not accordant with fact, truth, or right procedure." *Webster's Third.* To satisfy this statutory element, therefore, Relator was required to allege that Caremark avoided the obligation through some fraudulent or untruthful means. The ordinary meaning of the "conceal" and "improper," therefore, require affirmative deceptive conduct—not a mere failure to pay the government money.

15

The "overall policies and objectives" of the FCA—namely, preventing fraud on the government—confirm the text's plain meaning.  *See Shabazz*, 633 F.3d at 345.  As courts routinely recognize, "the False Claims Act is, at its core, an anti-fraud statute." *Angelo*, 106 F.4th at 448; *see also, e.g., Wood ex rel. United States v. Applied Rsch. Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009) ("[I]t is self-evident that the FCA is a fraud statute." (citation omitted)).  It would be inconsistent with that statutory purpose to allow an FCA claim based on a mere failure to pay the government money, because the FCA is not a "vehicle for punishing garden-variety breaches of contract or regulatory violations." *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016); *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010) (similar).

Other interpretive clues support this reading as well.  For example, the current version of the "reverse" FCA provision was enacted in the Fraud Enforcement and Recovery Act of 2009, further evidencing its fraud-based focus.  *See* Pub. L. No. 111-21, § 4(a), May 20, 2009, 123 Stat. 1617, 1621. Furthermore, it is black-letter law that courts must construe statutes "in such fashion that every word has some operative effect."  *Muth*, 2021 WL 3017992, at *9 (citation omitted).  If relators could establish reverse FCA claims simply by demonstrating that defendants failed to pay the government, the terms "conceals" and "improper" would be entirely superfluous.

Here, Relator fails to allege that Caremark "conceal[ed]" any obligation because he does not allege that Caremark took affirmative steps to prevent CMS from learning that USAA had an obligation to reimburse it.  Similarly, Relator does not allege that Caremark did anything "improper" because he does not allege that Caremark did anything fraudulent to avoid paying reimbursements. At most, Relator alleges that USAA failed to reimburse CMS, a "garden-variety" statutory violation beyond the FCA's scope—and unconnected to Caremark.  *Escobar*, 579 U.S. at 194.

**III.    Relator Fails to Allege a Claim Under Section 3729(a)(1)(A).**

In addition to his reverse FCA claim, Relator makes a cursory allegation that, when Caremark submitted USAA beneficiaries' claims to Medicare Part D plans, Caremark "knowingly present[ed] … a false or fraudulent claim for payment." FAC ¶ 72 (quoting 31 U.S.C. § 3729(a)(1)(A)).

To state a claim under this subsection, Relator was required to allege with particularity that Caremark "(1) made a false statement or performed a fraudulent course of conduct; (2) with the requisite scienter … ; (3) that was material; and (4) caused the government to pay out or forfeit money in connection with a claim." *United States ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland*, 157 F.4th 758, 763 (5th Cir. 2025) (citation omitted). Relator has not pled any of those elements—much less has he done so with the particularity Rule 9(b) requires.

**A.    Relator's Section 3729(a)(1)(A) Claim Fails Rule 9(b).**

As discussed above (at 8-9), Rule 9(b) serves a critical "screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). To state a claim under section 3729(a)(1)(A) with particularity, relators either must allege "the details of an actually submitted false claim," or "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190; *Nunnally*, 519 F. App'x at 893.

The Fifth Circuit routinely upholds dismissals of FCA claims under this demanding standard. For example, the relator in *Nunnally* was a former hospital employee who alleged the hospital violated the FCA by improperly certifying compliance with the Anti-Kickback Statute when it had actually paid doctors for referrals. *See* 519 F. App'x at 892-94. Dismissal was proper because the complaint offered only "sweeping and conclusory allegations of 'verbal agreements' between [the hospital] and 'various physicians.'" *Id.* at 894. The relator provided "no information on the contents of those agreements, the identity of any physicians, actual inducements, or improper referrals," and "d[id] not specify who in particular was involved in this 'agreement,' or how it constituted an illegal kickback." *Id.*; *see Gentry*, 157 F.4th at 765; *United States ex rel. Colquitt v. Abbott Lab'ys*, 858 F.3d 365, 372 (5th Cir. 2017).

The Amended Complaint is of a piece. Relator alleged no specific details in support of his theory. He did not say what drugs were purchased, whether they were covered under his private plan, where he obtained them, or how the claims were processed. *Supra* pp.8-12. And he never explained in any detail—much less with Rule 9(b) particularity—Caremark's role in or knowledge of USAA's allegedly wrongful denial of prescription-drug coverage for beneficiaries who also had coverage under Medicare Part D. All Relator says is that "Caremark's knowing presentation of claims to CMS that Caremark knew were not owed by the Medicare program because Medicare and Medicaid are secondary payers and USAA is primary payer, constitutes false claims." FAC ¶ 73. But Relator never pleads *which claims* Caremark knew were false, when it obtained that alleged knowledge, or from whom. Relator's allegation that Caremark knowingly presented claims it knew were false is exactly the kind of "wholly generalized allegation[] of false claims presented to the Government" that courts routinely reject under Rule 9(b). *See Nunnally*, 519 F. App'x at 895; *Hebert*, 295 F. App'x at 721-22.

**B.      Relator's Section 3729(a)(1)(A) Claim Fails on Its Own Merits.**

Even setting his pleading failures aside, Relator does not state a claim under section 3729(a)(1)(A). Relator cannot show any of the elements of his claim.

*Falsity:* Start with falsity. Relator does not allege that Caremark submitted claims that were, on their face, false (because, for example, they requested reimbursement for medicine a patient never received). Instead, Relator alleges that Caremark submitted claims it knew USAA should have reimbursed under the MSP Act. That theory of falsity relies on an implied, and allegedly false, certification. To state a claim, Relator therefore would need to plead that Caremark certified to the government, either explicitly or implicitly, that each claim submitted complied with the MSP Act. *See Escobar*, 579 U.S. at 190; *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014).

Relator does not point to any affirmative certification Caremark made when submitting a claim to Medicare Part D. Nor does he detail the circumstances that would make any such submission implicitly false—for example, if a healthcare facility submitted to Medicare reimbursement claims that

18

made "specific representations about the goods or services provided," but failed to disclose "serious violations of regulations pertaining to staff qualifications and licensing requirements." *Escobar*, 579 U.S. at 184, 190. He utterly fails to allege (with specificity or otherwise) any details about any drug claim submitted—much less how, specifically, a particular claim violated the MSP Act and why its submission was an implicit representation of compliance. That failure is dispositive. *See id.*; *United States ex rel. Jackson v. Ventavia Rsch. Grp.*, 667 F. Supp. 3d 332, 355 (E.D. Tex. 2023).

**Scienter:** As with his reverse-FCA claim, Relator must allege that Caremark "knowingly" presented a claim to the government that violated the MSP Act. *See* 31 U.S.C. § 3729(a)(1)(A); *Gentry*, 157 F.4th at 763; *supra* p.14. But the Amended Complaint contains no specific allegations suggesting that Caremark knew, or had reason to know, that USAA had an obligation to cover the payment for any specific claim Caremark submitted to Medicare. Nor does Relator allege that Caremark had any reason to know that USAA rejected any claim because of the beneficiary's Medicare coverage. The only claim rejection Relator identifies at all was rejected by *Medicare*, not by USAA. *See* FAC Ex. C; *supra* p.12.

**Materiality:** The Amended Complaint does not allege that the purported noncompliance with the MSP Act was "material to the government's payment decision." *Escobar*, 579 U.S. at 181. The FCA defines materiality, consistent with the common law, as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Under that "demanding" and "rigorous" standard, courts must consider the alleged misrepresentation's "effect on the likely or actual behavior" of the government. *Escobar*, 579 U.S. at 181, 193-94.

There are no allegations here suggesting that any alleged noncompliance with the MSP Act would have had any effect on the government's decision about whether to cover any prescription drug claim. On the contrary, the MSP Act explicitly *permits* the Government to pay for claims, even if that statute required another payer to assume primary responsibility. *See* 42 U.S.C. § 1395y(b). And the

MSP Act allows the government to elect not to seek reimbursement from a primary plan even when it would otherwise have the right to do so. *Id.* § 1395y(b)(2)(B)(i), (v). Relator therefore cannot establish materiality.

***Causation*:** Finally, for many of the same reasons, Relator never pled that any submission of a USAA beneficiary's prescription to a Medicare Part D plan caused the government to pay or forfeit money. The MSP Act expressly authorizes the government to make "conditional payments" to cover claims, even if another payer had primary responsibility, and to "waive" any claim for reimbursement of a conditional payment. *Id.* § 1395y(b)(2)(B)(i), (v). Relator never pled that Medicare would not have covered any claim had it known that USAA had an obligation to cover it in the first instance, nor does he allege that CMS ever made determination that it would not waive reimbursement.

## IV.     In the Alternative, the Constitution Prohibits This *Qui Tam* Action.

Caremark expressly preserves the right to urge the Fifth Circuit to reverse its earlier precedent upholding the constitutionality of non-intervention *qui tam* actions. *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) (en banc). As numerous Justices and judges have observed, the FCA's *qui tam* provision violates the Appointments Clause by allowing ordinary citizens to exercise executive authority that may only validly be exercised by officers appointed pursuant to Article II. *See, e.g.*, *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting); *Gentry*, 157 F.4th at 766 (Ho, J., concurring). In the event this Court does not dismiss this Complaint with prejudice, Caremark will pursue its constitutional challenge through the appellate process.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint.

Date:   February 9, 2026

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
(210) 477-7401 [Direct]
Email: dprichard@pomllp.com
Jillian C. Beck
State Bar No. 24082672
(210) 477-7405 [Direct]
Email:  jbeck@pomllp.com
Prichard Oliver Montpas, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, TX 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Fax]

-and-

**WILLIAMS & CONNOLLY LLP**

By:  */s/ Enu A. Mainigi*
     Enu A. Mainigi

Enu A. Mainigi
D.C. Bar No. 454012
Email: EMainigi@wc.com
A. Joshua Podoll (*pro hac vice*)
D.C. Bar No. 1011743
Email: APodoll@wc.com
680 Maine Avenue SW
Washington, DC 20024
Tel.    (202) 434-5000
Fax    (202) 434-5029

*Attorneys for Defendant Caremark RX, L.L.C.*

21

# STATUTORY APPENDIX

# TABLE OF CONTENTS

31 U.S.C.
    § 3729 ................................................................................................. 1a
    § 3730 ........................................................................................... 1a, 2a
42 U.S.C.
    § 1395y(b)(2)(A) ......................................................................... 2a
    § 1395y(b)(2)(B) ..................................................................... 2a, 3a
    § 1395y(b)(3) ................................................................................. 4a

**31 U.S.C. § 3729(a)(1).  False claims.**

(a) LIABILITY FOR CERTAIN ACTS.—

> (1) IN GENERAL.—Subject to paragraph (2), any person who—

>> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

>> …

>> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

**31 U.S.C. § 3729(b).  False claims.**

(b) DEFINITIONS.-For purposes of this section-

> …

> (3) the term "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment; and

> (4) the term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

**31 U.S.C. § 3730(b).  Civil actions for false claims.**

(b) ACTIONS BY PRIVATE PERSONS. —(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

…

(4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall—

(A) proceed with the action, in which case the action shall be conducted by the Government; or

(B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

**42 U.S.C § 1395y(b)(2)(A).  Exclusions from coverage and Medicare as secondary payer**

**(2) Medicare secondary payer**

**(A) In general**

Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that-

(i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or

(ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

**42 U.S.C. § 1395y(b)(2)(B)**

**(B) Conditional payment**

**(i) Authority to make conditional payment**

The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.

**(ii) Repayment required**

Subject to paragraph (9), a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means. If reimbursement is not made to the appropriate Trust Fund before the expiration of the 60-day period that begins on the date notice of, or information related to, a primary plan's responsibility for such payment or other information is received, the Secretary may charge interest (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made (at a rate determined by the Secretary in accordance with regulations of the Secretary of the Treasury applicable to charges for late payments).

**(iii) Action by United States**

In order to recover payment made under this subchapter for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity. In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity. The United States may not recover from a third-party administrator under this clause in cases where the third-party administrator would not be able to recover the amount at issue from the employer or group health plan and is not employed by or under contract with the employer or group health plan at the time the action for recovery is initiated by the United States or for whom it provides administrative services due to the insolvency or bankruptcy of the employer or plan. An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed.

…

**(v) Waiver of rights**

The Secretary may waive (in whole or in part) the provisions of this subparagraph in the case of an individual claim if the Secretary determines that the waiver is in the best interests of the program established under this subchapter.

**42 U.S.C. § 1395y(b)(3)**

**(3) Enforcement**

**(A) Private cause of action**

There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

## CERTIFICATE OF SERVICE

I hereby certify that, on this 9th day of February 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which will send electronic notice of filing to all counsel of record.

*/s/ David M. Prichard*
Attorney for Defendant