**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, CHARLES TERRENCE BRUFF, | § § § § | |
| Plaintiff, | § | |
| v. | § § | Case No: 5:22-CV-00593-DAE |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, *et al.*, | § § § | |
| Defendants. | § § | |

**DEFENDANT CAREMARK RX, L.L.C.'S REPLY IN SUPPORT**
**OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

TO SENIOR UNITED STATES DISTRICT JUDGE DAVID A. EZRA:

**TABLE OF CONTENTS**

INTRODUCTION......................................................................................................................................1

ARGUMENT..............................................................................................................................................2

I.      RELATOR CANNOT SIDESTEP THE MSP ACT'S COMPREHENSIVE REMEDIAL FRAMEWORK.........................................................................................................................2

II.     RELATOR FAILED TO ALLEGE A REVERSE FCA CLAIM. ...........................................4

        A.      Relator's Reverse FCA Claim Fails Rule 9(b)...................................................................4

        B.      Relator Does Not Allege the Elements of His Reverse FCA Claim.............................7

III.    RELATOR FAILS TO ALLEGE A CLAIM UNDER SECTION 3729(a)(1)(A)..................9

        A.      Relator's Section 3729(a)(1)(A) Claim Does Not Satisfy Rule 9(b)................................9

        B.      Relator's Section 3729(a)(1)(A) Claim Also Fails on the Merits.....................................9

CONCLUSION..........................................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Caldera v. Ins. Co. of Pa.*,
716 F.3d 861 (5th Cir. 2013)...............................................................................3, 7

*City of Rancho Palos Verdes v. Abrams*,
544 U.S. 113 (2005)..............................................................................................2, 3

*Efurd v. Baylor Health Care Sys.*,
2015 WL 11027603 (N.D. Tex. Mar. 25, 2015).................................................7

*Fitzgerald v. Barnstable Sch. Comm.*,
555 U.S. 246 (2009)...................................................................................................2

*Glover v. Liggett Grp., Inc.*,
459 F.3d 1304 (11th Cir. 2006) ............................................................................7

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
685 F.3d 353 (3d Cir. 2012)...................................................................................2

*Lollar v. Baker*,
196 F.3d 603 (5th Cir. 1999)..................................................................................3

*Manning v. Utilities Mut. Ins. Co.*,
254 F.3d 387 (2d Cir. 2001).............................................................................2, 3

*Netro v. Greater Balt. Med. Ctr., Inc.*,
891 F.3d 522 (4th Cir. 2018).................................................................................3

*Smith v. Robinson*,
468 U.S. 992 (1984).................................................................................................4

*Stalley ex rel. United States v. Cath. Health Initiatives*,
458 F. Supp. 2d 958 (E.D. Ark. 2006) ...............................................................2

*Stalley ex rel. United States v. Cath. Health Initiatives*,
509 F.3d 517 (8th Cir. 2007)............................................................................2, 3

*Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys.*,
524 F.3d 1229 (11th Cir. 2008) ............................................................................4

*United States ex rel. Angelo v. Allstate Ins. Co.*,
106 F.4th 441 (6th Cir. 2024) ..........................................................................5, 6

*United States ex rel. Aranda v. Cmty. Psychiatric Ctrs. of Okla., Inc.*,
945 F. Supp. 1485 (W.D. Okla. 1996)..............................................................3, 4

*United States ex rel. Gage v. Davis S.R. Aviation*,
  623 F. App'x 622 (5th Cir. 2015) ................................................................5

*United States ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009).................................................................9

*United States ex rel. Hebert v. Dizney*,
  295 F. App'x 717 (5th Cir. 2008) ...........................................................5

*United States ex rel. Jamison v. Career Opportunities, Inc.*,
  2019 WL 460229 (N.D. Tex. Feb. 6, 2019)....................................................9, 10

*United States ex rel. Kelly v. Serco, Inc.*,
  846 F.3d 325 (9th Cir. 2017)....................................................................9

*United States ex rel. Poehling v. UnitedHealth Grp.*,
  2025 WL 682285 (C.D. Cal. Mar. 3, 2025) ...................................................8

*United States ex rel. Smith v. Wallace*,
  723 F. App'x 254 (5th Cir. 2018) .............................................................9

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  579 U.S. 176 (2016).......................................................................9, 10

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ................................................................................. 1, 4, 5, 9

42 U.S.C. § 1395y(b) .....................................................................................2

42 U.S.C. § 1395y(b)(2)(B)(ii) ....................................................................3, 7

42 U.S.C. § 1395y(b)(2)(B)(iii) ......................................................................3

42 U.S.C. § 1395y(b)(2)(B)(iv) ......................................................................3

**INTRODUCTION**

Relator does not and cannot contest the core principles that require dismissal of this case. Relator agrees, for example, that a plaintiff cannot use a general cause of action to change specific remedies Congress created for specific wrongs. But Relator seeks to use the FCA's antifraud provisions (complete with treble damages and civil penalties) to rewrite the more limited remedies Congress enacted in the MSP Act. Relator likewise concedes that Rule 9(b) applies to both of his claims. But Relator admittedly does not plead *any* particularized facts to support either one, including basic facts about what his USAA plan covered and whether he ever submitted claims for payment.

With no answer to Caremark's legal arguments, Relator asks the Court to ignore the law and rewrite the rules. Relator suggests, for example, that the MSP Act's remedial scheme is distinct from the FCA because it protects private interests, not the federal government's. But Relator ignores that the MSP Act's enforcement regime *does* vindicate governmental interests by authorizing CMS itself to sue for alleged violations. As to Rule 9(b), Relator asserts that he did not need to plead *any* particular facts because he alleged USAA (or Caremark) denied *all* claims. That argument turns Rule 9(b) on its head. To plead a claim for fraud—especially a broad, sweeping claim like Relator's—plaintiffs need to provide more, not less, of a factual basis. But even on its terms, Relator's "categorical" argument fails: the exhibits attached to Relator's complaint establish that USAA *did* cover prescription claims, and that *Medicare* denied them.

Relator's remaining hodgepodge of arguments are equally flawed. Relator does not allege USAA or Caremark had a demonstrated obligation to reimburse CMS, much less that Caremark affirmatively and fraudulently concealed or avoided one. Nor does Relator allege any facts suggesting that Caremark submitted claims to CMS containing specific representations that implicitly and falsely certified statutory compliance. The Court should dismiss Relator's FAC with prejudice. Relator already has amended his complaint in response to a motion to dismiss, and that amendment simply repackaged the same deficient allegations and added exhibits that affirmatively undermine his claim.

## ARGUMENT

### I.   Relator Cannot Sidestep the MSP Act's Comprehensive Remedial Framework.

Relator concedes that when Congress enacts statutes with "private remedial provisions," parties are limited to the "more restrictive private remedy" Congress provided and cannot pursue broader relief under general statutes.  Mot. 7.  Relator also does not dispute that the MSP Act contains a "comprehensive enforcement scheme," *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252 (2009), including detailed reporting requirements, reimbursement procedures, private and public causes of action, specified remedies, and an appeals process, 42 U.S.C. §1395y(b).  And Relator admits (at 8) that the MSP Act is "not a qui tam statute," does not allow recovery for failing to cover third parties' claims, and does not authorize treble damages or penalties.

Relator insists (at 2, 8), however, that the MSP Act does not foreclose this action because it "says nothing about qui tam enforcement."  Relator has it backwards.  Congress included a specific enforcement regime in the MSP Act.  That regime *excludes* qui tam actions.  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 685 F.3d 353, 359 n.9 (3d Cir. 2012) (collecting cases).  That choice was intentional:  "[t]he MSP's private right of action was enacted during the same month and year that Congress created the FCA's express *qui tam* language."  *Stalley ex rel. United States v. Cath. Health Initiatives*, 458 F. Supp. 2d 958, 963 n.4 (E.D. Ark. 2006), *aff'd* 509 F.3d 517 (8th Cir. 2007); *accord Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 396-97 (2d Cir. 2001).  Congress's decision to exclude "qui tam enforcement" from the MSP Act forecloses Relator from enforcing it through the FCA.

Relator next argues (at 2, 8-9) that the MSP Act's remedial scheme does not bar his claim because the MSP Act and the FCA "address fundamentally different harms to different legal persons and serve fundamentally different purposes."  But Relator's focus on the "purpose" of the MSP Act's remedial scheme and the "harms" it seeks to remedy misses the point.  "[T]he express provision of one method of *enforcing a substantive rule* suggests that Congress intended to preclude others."  *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005) (emphasis added) (citation omitted).  The "substantive rule" Relator seeks to enforce is the MSP Act, which has its own enforcement methods.

2

In addition to being irrelevant, Relator's contention (at 8) that these statutes address "distinct harms suffered by distinct parties" is also wrong. As Relator acknowledges (at 10), the MSP Act's comprehensive scheme *does* address harm to the federal fisc by allowing CMS to pursue claims for conditional payment reimbursements. 42 U.S.C. § 1395y(b)(2)(B)(ii)-(iv). And contrary to Relator's assertion (at 8-9), the MSP Act's private-suit provision serves the same "cost-saving" goal, *see Caldera v. Ins. Co. of Pa.*, 716 F.3d 861, 863 (5th Cir. 2013); *Netro v. Greater Balt. Med. Ctr., Inc.*, 891 F.3d 522, 524 (4th Cir. 2018) (government- and private-suit provisions are "two tools to ensure that so-called 'primary plans' would compensate Medicare for [its] 'conditional payments'"). That is because the MSP Act allows CMS to collect conditional payments from beneficiaries who successfully sue their plans but fail to pay back CMS. *See Cath. Health*, 509 F.3d at 527; 42 U.S.C. §1395y(b)(2)(B)(iii)-(iv).[1]

"[T]he FCA and MSP [Act]," in other words, have the same aim: namely, "helping the government recover funds erroneously paid." *Manning*, 254 F.3d at 397. But they do so in different ways. The FCA authorizes private parties to pursue broad enforcement actions on behalf of the government. The MSP Act allows the government to pursue any underpayments it chooses, but limits individuals to their own claims. By including a "more restrictive" enforcement mechanism in the MSP Act, Congress foreclosed other, broader avenues to enforce the MSP Act's "substantive rule." *Rancho*, 544 U.S. at 120-22; *accord Lollar v. Baker*, 196 F.3d 603, 609-10 (5th Cir. 1999).

Relator (at 8-9), referring to the FCA, claims Caremark's position would "foreclose[] the government's own fraud-recovery mechanism" for MSP Act violations. But Relator again ignores the MSP Act's own government-fraud-recovery mechanisms. Regardless, Relator's only cited authority is a 30-year-old, out-of-circuit district court case that predates the Supreme Court's binding decision in *Rancho. See United States ex rel. Aranda v. Cmty. Psychiatric Ctrs. of Okla., Inc.*, 945 F. Supp. 1485, 1487-88

---

[1] For that reason, some courts broadly interpret the private-damages provision to allow a beneficiary to recover "twice the amount that the Medicare paid on his behalf," *i.e.*, twice the conditional payment. *See Caldera*, 716 F.3d at 863; *Cath. Health*, 509 F.3d at 525-27 (collecting authority going both ways).

(W.D. Okla. 1996).  And unlike Caremark, the defendant in *Aranda* "provide[d] no legal authority" for its exclusive-remedy argument.  *See id.* at 1489.

Relator's related suggestion (at 9) that the MSP Act's remedial scheme is not "more restrictive" than the FCA strains credulity.  The FCA allows anyone to sue as a relator and seek treble damages and penalties for any alleged fraud on the government.  The MSP Act only allows individuals with Medicare to pursue double damages based on alleged violations impacting their own coverage.

Relator (at 9-10) attempts to distinguish *Stalley ex rel. United States v. Orlando Regional Healthcare System* on the basis that he is "a Medicare recipient" who "suffered an injury under the MSP Act" and therefore has Article III standing.  *See* 524 F.3d 1229, 1232-35 (11th Cir. 2008).  But that argument is irrelevant because *Orlando Regional* involved a claim under the MSP Act, which Relator has not brought, and because Caremark did not move to dismiss for lack of standing.

Finally, Relator resorts to policy arguments, claiming (at 9) that Caremark's position would "gut" the FCA.  But it is Relator who would run roughshod over Congress's handiwork.  The MSP Act's comprehensive scheme provides the exclusive remedy to private parties seeking to enforce its mandates.  Relator's attempt to "circumvent the [MSP Act's] remedies would be inconsistent with Congress' carefully tailored scheme."  *See Smith v. Robinson*, 468 U.S. 992, 1012 (1984).  And allowing claims like this would render wholly superfluous the MSP Act's entire remedial framework.

## II.    Relator Failed to Allege a Reverse FCA Claim.

### A.    Relator's Reverse FCA Claim Fails Rule 9(b).

Relator acknowledges that Rule 9(b) applies to his reverse FCA claim.  Thus, as Caremark explained, Relator was required to allege with particularity:  the transactions at issue, USAA's obligation to cover them, Relator's proper submission of claims to USAA, the fact of and reason for USAA's denials, the government's decision to make "conditional" payments, USAA's failure to reimburse CMS, and CMS's demonstration that USAA had reimbursement obligations.  Mot. 9-10. And Relator had to allege particular facts showing Caremark's role in any claim denial, knowledge of

4

USAA's obligation and failure to pay, and fraudulent conduct to conceal or avoid that obligation. Mot. 10. Relator alleged none of those facts; his claim therefore fails under Rule 9(b).

With no serious argument that he can satisfy Rule 9(b), Relator asks the Court not to apply it. Relying on district-court rulings, Relator (at 7) urges the Court to apply a "relaxed" version of Rule 9(b) because the alleged fraud occurred "over an extended period of time" and involved "numerous acts." But the Fifth Circuit has rejected this precise argument, stating "the allegedly great extent and complexity of a fraudulent scheme does not excuse a failure to plead at least one false claim with the requisite specificity." *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 723 (5th Cir. 2008).

Relator (at 12) also asserts he did not need to plead particularized facts because the alleged scheme operates "categorically," meaning that USAA denies "every claim by every dual-eligible USAA beneficiary." That argument contradicts Rule 9(b). Rule 9(b) serves as a critical "screening function" by requiring relators to allege particular facts before getting to discovery. *See United States ex rel. Gage v. Davis S.R. Aviation*, 623 F. App'x 622, 623 (5th Cir. 2015). Relators cannot evade this requirement by framing fraud claims *more generally*. Courts routinely *dismiss* FCA claims when relators "paint[] in their complaint with a broad brush." *United States ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 447 (6th Cir. 2024) (dismissing complaint alleging MSP Act violations in all "instances where [defendant] had primary payor obligations"). Even if "categorical" schemes were different, Relator's Exhibit B indicates USAA *did* cover claims, so he did not allege that USAA denied "every claim." Mot. 11. Relator's separate assertion (at 11) that Exhibit B shows that CMS made "all payments for Mr. Bruff's prescriptions" is demonstrably wrong because that exhibit identifies 49 claims that USAA covered.

Regardless, Relator's allegations fail under any standard. Relator (at 11) says the alleged fraud occurred "since at least 2016," and again "in January 2021," "[e]very time" unidentified USAA employees filled prescriptions at unidentified "point-of-sale pharmac[ies]." Those sweeping assertions provide no information about when or where CMS decided to make conditional payments or determined USAA should reimburse it, or when or where USAA failed to do so. And Relator nowhere

explains what role Caremark played in USAA's alleged non-reimbursement.  At most, Relator (at 11) claims Caremark disabled a benefits-coordination "flag."  But this flag—as Caremark explained and Relator did not dispute—refers to a *voluntary* service Caremark's clients can choose to adopt.  Absent such a voluntary arrangement, the *beneficiary* is required to facilitate coordination.  Mot. 10.

Critically, Relator still fails to say anything about his USAA policy, what drugs it covered, whether it covered the drugs Medicare paid for, or whether he ever submitted the claims to USAA.  Numerous appellate courts have dismissed indistinguishable FCA claims for failing to plead those very facts.  *See Angelo*, 106 F.4th at 449-50; Mot. 8-9.  Relator ignores most of those cases and attempts (at 12) to distinguish *Angelo* on the basis that the relators there were "not employees of the defendant insurance company."  But *Angelo* did not find the pleadings deficient because of the relators' jobs; it dismissed the claims because the relators there, as here, did not allege with particularity that the defendant "was responsible for the underlying medical expenses" or that defendant "did not honor its obligation" to reimburse CMS.  106 F.4th at 449-50.  Here, Relator's status as employee and beneficiary makes the same omission all the more glaring.

Relator's reliance (at 11) on his exhibits also fails.  Caremark already explained that Exhibit B affirmatively undercuts Relator's claims because it shows that USAA covered numerous claims, and Relator seemingly abandoned reliance on Exhibit A, which only reflects payments by Medicare.  Mot. 11.  Relator correctly observes that Exhibit C "shows a pharmacy's claim being rejected."  But he leaves out the key fact: *Medicare*—not USAA—denied the claim.  *Id.* at 12.

Finally, Relator (at 12) claims that the FAC does not improperly group-plead because he alleged Caremark's "distinctive" role adjudicating claims, administering the "flag," and providing PBM services.  But no allegations distinguish Caremark's role from USAA's on the critical points—who supposedly had an obligation to pay CMS, and how they improperly avoided or concealed it.

6

### B.    Relator Does Not Allege the Elements of His Reverse FCA Claim.

*Obligation:*  Relator does not dispute he was required to allege an established duty to pay the government, or that the MSP Act requires primary plans to repay CMS only "if it is demonstrated that such primary plan has or had a responsibility to make payment."  Mot. 12-13.

Relator (at 14) acknowledges he has not pled that a repayment obligation was demonstrated. But he insists the repayment obligation can be "*demonstrated* in litigation," by which he presumably means in this case.  That is flat wrong.  A demonstrated responsibility to reimburse is an element of an MSP Act claim.  *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1309 (11th Cir. 2006).  "[T]he responsibility to reimburse," therefore, "must be demonstrated *before* the claim can be brought."  *See Efurd v. Baylor Health Care Sys.*, 2015 WL 11027603, at *3 (N.D. Tex. Mar. 25, 2015) (emphasis added).

It is no answer for Relator to claim (at 14) that he has alleged a duty to pay "through evidence of coverage," Medicare payments, and the "absence of reimbursement."  Relator did not allege with particularity what his USAA plan covered, the drugs he purchased, that he submitted the claims for payments, or that USAA did not reimburse CMS.  *Supra* pp.5-6.  And primary plans are under no obligation to reimburse CMS for claims not properly submitted.  *See Caldera*, 716 F.3d at 865.

Further, the MSP Act grants CMS discretion to "waive" repayment.  On this point, Relator (at 14-15) says only that this discretionary authority "does not negate the obligation's existence before the waiver is exercised."  But Relator's only cited authority does not help him.  That case simply distinguished statutory obligations (here, USAA's alleged obligation to repay CMS), from discretionary enforcement decisions (here, the decision about whether to waive repayment), which is exactly Caremark's point.

Finally, Relator (at 15) claims Caremark, in addition to USAA, has a repayment obligation under the MSP Act.  As Relator points out, the statute requires repayment from "a primary plan, and an entity that receives payment from a primary plan."  42 U.S.C. § 1395y(b)(2)(B)(ii).  But Relator does not allege Caremark received payments from USAA; rather, he alleges USAA failed to pay anyone.

Relator also asserts, without any citation, that Caremark may be liable under the FCA for avoiding or concealing USAA's payment. That essentially concedes that Caremark itself has no MSP Act obligation. And as explained below, Caremark did not conceal USAA's alleged obligation.

**_Scienter:_** Relator does not dispute he was required to allege "specific facts" demonstrating that Caremark knew that Caremark or USAA (1) had an obligation to reimburse CMS and (2) violated that obligation. Mot. 14-15. Relator failed to do so.

Relator (at 15-16) claims Caremark had knowledge because Caremark provided PBM services to USAA as well as some Medicare plans. But Relator alleges no specific facts suggesting that USAA denied any claim, that Caremark knew of the reason USAA denied it, or even that any Caremark personnel who provided services to Medicare had any involvement in the separate USAA plan. Relator (at 16) further relies on a generalized allegation about a conversation between Relator and USAA, which says nothing about _Caremark's_ knowledge. Finally, Relator (at 16) again cites allegations about the benefits-coordination "flag," but he fails to acknowledge that providing a service CMS recognizes as "voluntary" cannot establish that Caremark knowingly violated the law. Mot. 10.

**_Concealment or Improper Avoidance:_** Relator concedes he was required to allege that Caremark engaged in active, fraudulent conduct. _Id._ at 15-16; _United States ex rel. Poehling v. UnitedHealth Grp._, 2025 WL 682285, at *15 (C.D. Cal. Mar. 3, 2025) ("deception is a requirement"). He did not.

Relator (at 17) claims Caremark engaged in fraudulent conduct by "reject[ing] prescription claims" and "[r]outing claims to Medicare." But the FAC alleges that USAA, not Caremark, denied claims, FAC ¶ 42, and there are no specific allegations that USAA _or_ Caremark denied any claim in any event. Relator's reliance (at 17) on the benefits "flag" fails for the reasons already stated. Finally, Relator (at 17) claims that Caremark failed to "notify HCFA" after learning that CMS made conditional payments. But as explained, Relator fails to allege that Caremark had any knowledge of conditional payments, and a _failure_ to report does not constitute affirmative, fraudulent conduct.

8

### III.   Relator Fails to Allege a Claim Under Section 3729(a)(1)(A).

#### A.   Relator's Section 3729(a)(1)(A) Claim Does Not Satisfy Rule 9(b).

Relator does not dispute that he failed to identify "details of an actually submitted false claim." He therefore must allege, with Rule 9(b) particularity, "details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009); Opp'n 10-11, 18.

Yet Relator (at 18) offers only bare generalizations (without citation) that claims were submitted "since at least 2016," "at the pharmacy," "by rejecting the USAA-plan claim." Those allegations are not sufficient. The FAC alleges no particularized facts showing that Relator properly submitted any claim to USAA after purchasing drugs, that USAA's policy covered those drugs, or that USAA denied that claim because of his dual coverage. Much less does it allege that Caremark had any knowledge of this denial, or the reason for it, when processing Medicare claims. And Relator ignores the mountain of authority Caremark provided dismissing similar complaints. Mot. 17-18.

#### B.   Relator's Section 3729(a)(1)(A) Claim Also Fails on the Merits.

*Falsity:* Relator does not dispute that Caremark did not submit claims that were actually false or claims that expressly and falsely certified MSP Act compliance. *Id.* at 18.

Instead, Relator (at 18) attacks a straw man and claims that "the implied certification doctrine does not require an explicit statement of compliance." Caremark never argued otherwise. Rather, Caremark argued Relator failed to satisfy the implied-certification standard, which required him to allege Caremark submitted claims containing "specific representations about the goods or services provided" that would render misleading Caremark's alleged undisclosed noncompliance. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 188-89 (2016); *United States ex rel. Smith v. Wallace*, 723 F. App'x 254, 256 (5th Cir. 2018) (must allege "specific representations that were misleading half-truths"); *United States ex rel. Kelly v. Serco*, 846 F.3d 325, 332 (9th Cir. 2017); Mot. 19.

Rather than allege at "any level of particularity what specific representations were made" to Medicare, *United States ex rel. Jamison v. Career Opportunities, Inc.*, 2019 WL 460229, at *7 n.8 (N.D. Tex.

Feb. 6, 2019), Relator (at 18-19) asserts the "entire structure of the Medicare Part D program" renders every claim an implied certification of MSP Act compliance.  Relator cites nothing for that startling proposition, which would turn every MSP Act violation into a treble-damages FCA claim.  But the FCA is not a "vehicle for punishing garden-variety … regulatory violations."  *Escobar*, 579 U.S. at 194.

**Scienter:**  Relator makes no independent argument as to his claim under section 3729(a)(1)(A), and for the reasons explained *supra* p.8, Relator does not allege scienter. Nor does Relator respond to Caremark's observation that Medicare, not USAA, denied the only specific claim alleged.  Mot. 19.

**Materiality:**  Relator does not dispute that the Supreme Court's "demanding" materiality standard required him to allege facts showing the effect the alleged misrepresentation would have on the government.  *Id.*  Relator (at 19) claims that submitting a claim to Medicare "plainly satisfies this standard" because it "represent[s] that Medicare is the appropriate primary payer" and, if Medicare knew otherwise, it would not "make the conditional payment."  But that assertion is pure *ipse dixit*. Relator cites no allegations, because he alleged no facts (much less particularized ones) to support this element.  And Relator ignores that the MSP Act authorizes Medicare to ensure beneficiaries get care by making conditional payments *even* when a primary payer is responsible for the claim.  *Id.* at 3.

**Causation:**  For the same reasons, Relator also has not shown causation.  Relator (at 19-20) again asserts that the "causal chain is direct."  But Relator was required to plead particularized facts to support this element, which he failed to do.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint.

Date:    March 30, 2026                    Respectfully submitted,


                                           */s/ David M. Prichard*
                                           David M. Prichard
                                           State Bar No. 16317900
                                           (210) 477-7401 [Direct]
                                           Email: dprichard@pomllp.com
                                           Jillian C. Beck
                                           State Bar No. 24082672
                                           (210) 477-7405 [Direct]
                                           Email:  jbeck@pomllp.com
                                           Prichard Oliver Montpas, LLP
                                           Union Square, Suite 600
                                           10101 Reunion Place
                                           San Antonio, TX 78216
                                           (210) 477-7400 [Telephone]
                                           (210) 477-7450 [Fax]


                                           -and-

                                           **WILLIAMS & CONNOLLY LLP**


                                           By:  */s/ Enu A. Mainigi*
                                                Enu A. Mainigi

                                           Enu A. Mainigi
                                           D.C. Bar No. 454012
                                           Email: EMainigi@wc.com
                                           A. Joshua Podoll (*pro hac vice*)
                                           D.C. Bar No. 1011743
                                           Email: APodoll@wc.com
                                           680 Maine Avenue SW
                                           Washington, DC 20024
                                           Tel.    (202) 434-5000
                                           Fax    (202) 434-5029

                                           *Attorneys for Defendant Caremark RX, L.L.C.*


11

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 30th day of March 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which will send electronic notice of filing to all counsel of record.

/s/ David M. Prichard
Attorney for Defendant