IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA ex rel. CHARLES TERRENCE BRUFF<br>*Plaintiff*,<br><br>vs.<br><br>UNITED STATES AUTOMOBILE ASSOCIATION, CAREMARK RX, L.L.C., OPTUMRX, INC., AND EXPRESS SCRIPTS, INC.<br>*Defendants*. | § § § § § § § § § § § § § § | NO. 5:22-CV-593-DAE |

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

The matter before the Court is Defendants United Services Automobile Association's ("USAA"), Caremark Rx., LLC's ("Caremark"), and OptumRx, Inc.'s ("Optum") (collectively, Defendants") respective Motions to Dismiss Mr. Charles Terrence Bruff's ("Plaintiff," "Relator," or "Plaintiff-Relator") First Amended Complaint ("FAC"). The Court **GRANTS** the respective Motions and **DISMISSES WITHOUT PREJUDICE** all Plaintiff-Relator's claims against USAA and Caremark. It also **DISMISSES WITHOUT PREJUDICE** Plaintiff-Relator's claims against Optum.

# BACKGROUND

## I. Procedural History

Plaintiff-Relator filed a Motion for leave to File Sealed Document with the Court on June 3, 2022. (See Dkt. # 1.) On June 9, 2022, the Honorable U.S. Magistrate Judge Henry J. Bemporad granted the Motion (Dkt. # 4) and Plaintiff-Relator's complaint (Dkt. # 5) was filed. Then, on February 27, 2025, this Court ordered the Complaint to be unsealed. (Dkt. # 25.) On June 30, 2025, USAA moved to dismiss the unsealed Complaint. (Dkt. # 37.) While that motion was pending, however, Plaintiff-Relator exercised his right to amend his Complaint under Federal Rule of Civil Procedure 15. (See Dkt. # 48.) Defendants then filed a subsequent round of Motions to Dismiss the FAC. (See Dkts. ## 56 (USAA); 57 (Optum); 86 (Caremark).) Plaintiff-Relator responded to Defendants' Motions. (See Dkts. ## 61 (USAA); 67 (Caremark); 88 (Optum.) Defendants replied. (See Dkts. ## 68 (USAA); 69 (Optum); 91 (Caremark)).)

## II. Alleged Facts

Plaintiff-Relator has been employed by USAA as a software engineer since 2016. (Dkt. # 48 at 10.) He is also "an adult disabled child of a social security recipient." (Id.) He alleges that he has received both Medicare and Medicaid and, consequently, is enrolled in Part D and Extra Help. (Id.) He receives healthcare coverage from USAA's large group health plan ("the Plan").

(Id.) He also alleges that the Plan's prescription drug benefits are administered by Defendant Caremark, a pharmacy benefits manager ("PBM"). (Id.) And, as a PBM, Caremark bears responsibility for administering Plaintiff-Relator's Part D prescription drugs. (Id. at 10–11.)

As relevant in the instant suit, the FAC alleges that neither USAA nor Caremark meet their respective federal statutory obligations to coordinate benefits for covered employees. (Id. at 11.) He also claims that USAA's human resources department told him "in clear terms . . . that USAA and Caremark do not coordinate prescription medication coverage for Medicare enrollees with CMS and that employees enrolled within USAA's large group health plan should not seek reimbursement of prescription drug costs paid by Medicare or Medicaid." (Id.) To support this allegation, he points to the time he "took FMLA leave" in January 2021, and during which time "USAA and Caremark . . . attempt[ed] to designate [themselves] as the secondary payer *after* Medicare." (Id. at 12 (emphasis added).) Plaintiff-Relator contends that "neither USAA nor Caremark has repaid Medicare for any drug claims that Medicare conditionally paid for [him]." (Id.)

He further contends that USAA and the PBM Defendants (i.e., Caremark, Optum, and Express Scripts) engaged in conduct that deprived the federal government—particularly, the Centers for Medicare and Medicaid Services ("CMS")—of revenue to which it was entitled. (See id.) It is on this basis that he

seeks to recover treble damages. (See infra (discussing Plaintiff-Relator's "Prayer for Relief).)

III. Legal allegations

A. False Claims Act ("FCA")

Legally, the Plaintiff-Relator invokes the *qui tam* provision of the FCA. (See Dkt. # 48 at 5 (citing 31 U.S.C. §§ 3729(a); 3730(b)).) In particular, he advances the theory that he is authorized to "bring suit against a person who wrongfully retained money" owed to the Government. (Id.) He further alleges that "USAA's [and Caremark's] conduct defraud the United States Government of millions, if not billions[,] [*sic*] of dollars." (Id. at 13.) Plaintiff-Relator estimates that the sum total of damages is "anywhere from $2 to $4 billion." (Id. at 15.) At a granular level, Plaintiff-Relator claims a civil penalty of $14,308 and $28,619, respectively, under the *qui tam* provision for each false statement or claim submitted" as well as costs, attorneys fees, pre- and post-judgment interest and a percentage of the damages recovered. (Id.) In pertinent part, the FCA provides:

> If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds.

31 U.S.C. § 3730(d)(2). Section (d)(4) similarly states that, should the government decline to pursue a relator's claim, "the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." Id. § 3730(d)(4).

B. Medicare Second Payer Act ("MSP Act")

Wedded to the "direct" and "reverse" claims that Plaintiff-Relator pleads under the FCA, is his assertion of Defendants' violation of the MSP Act, 42 U.S.C. § 1395(y)(b)(1)(B)(i). (See Dkt. # 48 at 4–9); 45 U.S.C. §§ 1395y(b)(2)(B)(iii), (b)(3)(A); (see also Dkt. # 86 at 10). More precisely, the claim is that the FCA authorizes him to pursue *qui tam* relief on the United States Government's behalf for Defendants' alleged violations of the MSP Act. See Dkt. # 48.) As relevant here, 42 U.S.C. § 1395y] (b)(3)] provides:

**(A) Private cause of action**

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

The Court reproduces the relevant statutory language from § 1395y(b)(2)(B)(iii) in the following footnote.[1]

## LEGAL STANDARDS

### I. 12(b)(1): Article III Standing

Federal courts are courts of limited jurisdiction. See U.S. Const. art. III, § 2. In practice, this means that federal district courts like this Court lack the power to adjudicate claims that fall outside of their subject-matter jurisdiction. See, e.g., Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 778–

---

[1] That provision provides: [42 U.S.C. § 1395y(b)(2)(B)] **(iii) Action by United States**

> In order to recover payment made under this subchapter for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity. In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity. The United States may not recover from a third-party administrator under this clause in cases where the third-party administrator would not be able to recover the amount at issue from the employer or group health plan and is not employed by or under contract with the employer or group health plan at the time the action for recovery is initiated by the United States or for whom it provides administrative services due to the insolvency or bankruptcy of the employer or plan. An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed.

79 (2000). In Vermont Agency, the Supreme Court held that "[q]uestions of jurisdiction . . . should be given priority—since if there is no jurisdiction there is no authority to sit in judgment of anything else." Id. Furthermore, it observed the cold truth that, because "[j]urisdiction is power to declare the law, . . . when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Id. at 778–79 (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)); see also TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021).

To prevent a federal court from *sua sponte* dismissing his claims for lack of subject matter jurisdiction, a plaintiff must plead *all* of the following: "[that he] (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016); see also id. ("Where . . . a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating *each element*." (citation modified) (emphasis added)). A *qui tam* relator under the FCA must plead standing on behalf of the United States. Stevens, 529 U.S. at 774; Riley v. St. Luke's Episcopal Hosp., 252 F.3d 749, 752 n.3 (5th Cir. 2001) (en banc). Accordingly, the failure to plead any of the three elements

signals the lack of Article III standing and prevents this Court from reaching the merits of a relator's case.[2]

II. 12(b)(6): Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a Defendant to move to dismiss a relator's claim that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court's review is limited to the contents of the complaint and matters properly subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he [C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

[2] Because a court that dismisses for lack of subject matter jurisdiction does not have the authority to reach the merits of the case, its dismissal should be without prejudice. See, e.g., Green Valley Special Util. Dist. v. City of Schertz, 969 F.3d 460, 468 (5th Cir. 2020) ("[W]hen a complaint is dismissed for lack of jurisdiction, including lack of standing, it should be without prejudice.").

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555–56. In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (internal citation omitted). However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissal with prejudice, "unless it is clear that

the defects are incurable." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

III. FCA-Specific Pleading Standards[3]

District courts in the Fifth Circuit must dismiss "a complaint filed under the False Claims Act [that does not] meet the heightened pleading standard of Rule 9(b)." U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 (5th Cir. 2009). In pertinent part, Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit has underscored how "this is an exception to Rule 8(a)'s simplified pleading that calls for a 'short and plain statement of the claim.'" Grubbs, 565 F.3d at 185 (quoting Fed. R. Civ. P. 8(a)). Additionally, [t]he particularity demanded by Rule 9(b) is *supplemental* to the Supreme Court's . . . interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570) (alteration in original) (emphasis added). "[T]he who, what, when, and where

[3] "The FCA may be enforced by either (1) a suit brought directly by the United States or (2) a *qui tam* action brought by a private person (called a "relator") in the name of the United States." United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co., 843 F.3d 1033, 1034 (5th Cir. 2016) (citations omitted). "*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" Rockwell Int'l Corp. v. United States, 549 U.S. 457, 463 n.2 (2007), overruled on other grounds by Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22 (2025).

must be laid out before access to the discovery process is granted." Williams v. WMX Techs., Inc., 112 F.3d 175, 178 (5th Cir. 1997). In other words, the Fifth Circuit requires that this Court "apply the rule with force, without apology." Id.

A district court succinctly summarized a relator's burden to allege a reverse FCA claim. See United States ex rel. Jameson v. WBI Energy Transmission, Inc., No. 3:20-CV-00172, 2024 WL 3512126, at *4–5 (S.D. Tex. July 22, 2024), report and recommendation adopted, 2024 WL 3939582 (S.D. Tex. Aug. 26, 2024). Specifically, to survive a motion to dismiss, a relator pressing a reverse FCA claim must allege that the defendant had "(1) an obligation to pay money to the Government; and (2) that the defendant knowingly concealed *and* improperly avoided *or* decreased that obligation." Id. (emphasis added); accord Simoneaux, 843 F.3d at 1034; U.S. ex rel. Doe v. Dow Chem. Co., 343 F.3d 325, 329 (5th Cir. 2003).

## DISCUSSION

### I. Plaintiff-Relator Pleaded Article III Standing as to USAA and Caremark but Lacks Article III Standing as to Optum

To begin, the Court must assure itself that it possesses subject matter jurisdiction over the claim before it can address the merits of Defendants' 12(b)(6) arguments. See Ruhrgas, 526 U.S. at 583. Article III standing is a part of that analysis such that the Plaintiff-Relator's failure to plead that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

defendant[s], and (3) that is likely to be redressed by a favorable judicial decision" defeats this Court's subject matter jurisdiction and requires dismissal. Spokeo, 578 U.S. at 338.

A. Plaintiff Has Met His Burden to Allege Article III Standing as to USAA and Caremark

Despite the barrier that Article III presents to Plaintiff-Relator's claims concerning Optum, see infra, he has sufficiently pled Article III standing as to Defendants USAA and Caremark. The Supreme Court has recognized that a "pocketbook injury" occasioned by a plaintiff-relator is enough to clear the Article III bar. See, e.g., Tyler v. Hennepin Cnty., 598 U.S. 631, 636 (2023) (holding that a plaintiff had standing when she pled that the defendant County "illegally appropriated the $25,000 surplus beyond her $15,000 tax debt"). Here, Plaintiff-Relator's claims operate similarly. He has alleged an injury in fact to the United States (USAA's and Caremark's failure to process his prescription claims under the primary plan such that CMS's programs alone pay for his prescription drugs. (See Dkt. # 48 at 3, 7, 11, 13.) These injuries in the form of lost revenue are sufficiently traceable to Defendants, and this Court has the power to redress them by entering judgment for damages. Cf. Spokeo, 578 U.S. at 338.

B. Plaintiff Lacks Article III Standing as to Optum

Plaintiff-Relator likely has not alleged Optum caused a "concrete and particularized injury." See TransUnion, 594 U.S. at 423.[4] The Court is certain, however, that Plaintiff-Relator has failed to allege any injury sufficiently traceable to Optum. See Spokeo, 578 U.S. at 338. Other than the FAC's case caption and portions identifying the "Parties," "Optum," and "Express Scripts" appear only twice. (See Dkt. # 48 at 14–15.) Plaintiff-Relator alleges nothing about Optum's conduct to indicate that any injury—either that he incurred individually or that the United States has suffered in terms of lost CMS revenue—is traceable to Optum. Without more, neither Plaintiff-Relator nor, by extension, the United States can answer the antecedent question that Article III standing requires: "What's it to you?" Bost v. Ill. State Bd. of Elections, 607 U.S. 71, 76 (2026) (quoting Antonin Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). That question is not rhetorical. Plaintiff-Relator's failure to answer it necessitates that his claims against Optum be

[4] For example, Plaintiff-Relator claims that Optum "allow[s] large group health plans to determine whether to coordinate benefits with public programs" (Dkt. # 48 at 14.) This, his theory goes, "makes it impossible for any Medicare Part D beneficiary to enroll, which means Medicare is paying for claims that should be covered by the private insurer." (Id.) Under Article III standing doctrine (as clarified by the TransUnion Court), this is likely not enough. Cf. 594 U.S. at 423.

dismissed for lack of subject matter jurisdiction. See Green Valley, 969 F.3d at 468.

II. Plaintiff-Relator's Claims against USAA and Caremark Fail to State a Claim under 12(b)(6)

A. Plaintiff Cannot Cloak his MSP Claims Under the Guise of the FCA, "Reverse" or Otherwise

The plain text of the MSP Act is clear: "[T]he *United States* may bring an action against any or all entities that are or were required . . . to make payment . . . under a primary plan. 42 U.S.C. § 1395(y)(b)(1)(B)(iii) (emphasis added). Alternatively, *individuals* have the right to proceed via "a private cause of action." Id. § 1395(y)(b)(3)(A); see also Manning v. Utilities Mut. Ins. Co., 254 F.3d 387, 394 (2d Cir. 2001) (elaborating on the rights that the MSP Act confers to the United States and private individuals, respectively).

In addition to the statute's plain text, the canon of *expresio unius est exclusio alterius* ("*expresio unius*") reinforces the Court's conclusion. *Expresio unius* provides that "expressing one item of [an] associated group or series excludes another left unmentioned." Baptist Mem'l Hosp. - Golden Triangle, Inc. v. Azar, 956 F.3d 689, 694 (5th Cir. 2020) (quoting NLRB v. SW Gen., Inc., 580 U.S. 288, 302 (2017)). Because Congress expressly created separate rights of action for the United States Government to assert on its own behalf *and* for

individuals to assert privately on their *own* behalf, see id. § 1395(y)(b)(3)(A), *expresio unius* cautions federal courts against finding the proverbial "elephant" of a right of action in a mousehole. See Baptist Memorial, 956 F.3d at 694. Persuasive authorities beyond the statute's plain text urge the same conclusion. See, e.g., In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig., 685 F.3d 353, 359 (3d Cir. 2012) (so holding and collecting authorities five other circuits reaching the same conclusions); see also Woods v. Empire Health Choice, Inc., 574 F.3d 92, 98 (2d Cir. 2009) ("[In Vermont Agency, t]he Supreme Court did not list § 1395y(b)(3)(A) as among the statutory provisions authorizing *qui tam* actions . . . ." (citing 529 U.S. at 768 n.1)). It thus follows that Plaintiff-Relator can *only* assert the instant claims on his own behalf, *not* the United States's. (See Dkt. # 48 at 5–9.).

The Fifth Circuit's holdings in U.S. ex rel. Bain v. Georgia Gulf Corp., and United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co. are instructive here. Bain, 386 F.3d 648 (5th Cir. 2004); Simoneaux, 843 F.3d at 1035. Chiefly, they establish that Defendants violated no duty either to Plaintiff-Relator or to the United States Government. In Bain, the Fifth Circuit reviewed a district court's denial of a defendant's motion to dismiss a relator's reverse FCA claim. See 386 F.3d at 658. Specifically, the Court reasoned that "[n]either the [Relator's] complaint nor the amended complaint alleges, and [Relator] does not

contend, that at any time at or after the making of the herein complained of false statements any fine or penalty [flowing therefrom] . . . had ever been imposed on [Defendant]." Id. at 654. So too in this case. Nothing in Plaintiff-Relator's FAC shows that CMS has instigated any proceedings in any way connected to USAA's or Caremark's alleged conduct. (See Dkt. # 48.) Additionally, nothing in the FAC suggests CMS or another federal regulatory entity was aware of the vast "scheme" that Plaintiff-Relator alleges USAA and Caremark to have perpetrated. (See id. at 1, 13.)

Also, and as in this case, the relator in Bain "could not identify any proceeding seeking to impose, or to determine whether to impose, any such fine or penalty [that had] ever [been] pending or instituted." Bain, 386 F.3d at 654. To wit, the Bain Defendant, like USAA and Caremark here, was "obligated to obey the law, including the [MSP] Act and the regulations pursuant thereto, and if [they] did not [they] could be subjected (as alleged in the amended complaint) to statutory fines and penalties." Id. at 658 (citation modified). Yet, "the mere contingent potential that such fines or penalties might be (but had not been) sought and imposed does not constitute an obligation to pay or transmit money or property to the Government." Id. (citation modified).

Then, in Simoneaux, the Fifth Circuit heard a defendant's appeal of a district court's denial of summary judgment on the relator's reverse FCA claim.

843 F.3d at 1035. The Simoneaux Court analyzed the "interplay" between two federal statutes: the FCA and the Toxic Substances Control Act. See id. Relying on Bain, the Simoneaux Court rejected the Defendant's argument that civil penalty "gives rise to reverse FCA liability . . . because the unpaid civil penalty [qualifies as] an 'obligation' to pay the United States." Id. at 1036. By analogy, the anatomy of this case is similar: it involves the interplay between the FCA and the MSP Act. Id. And, although this Court is unaware of any Fifth Circuit rule of decision addressing the specific "interplay" between the FCA and the MSP Act, authorities from other circuits, as well as the Court's construction of the FCA's and MSP Act's plain text, militate in favor of holding that Bain and Simoneaux foreclose a reverse FCA claim. See In re Avandia, 685 F.3d at 359; Woods, 574 F.3d at 98.

In short, both cases compel this Court's conclusion that Plaintiff-Relator has failed to state a claim upon which relief can be granted. Bain, 386 F.3d at 654–58; Simoneaux, 843 F.3d at 1035.[5] Taking the Plaintiff-Relator's claims in

[5] Because the Plaintiff-Relator ultimately fails to allege facts upon which relief can be granted on both sets of claims, the Court declines to engage in the protracted statutory right of action analysis that Defendants invite as to the FCA's constitutionality. (See Dkts. ## 86 at 20; 91 at 6–8); see also TransUnion, 594 U.S. at 423 ("Federal courts do not possess a roving commission to publicly opine on every legal question."); Whole Woman's Health v. Smith, 896 F.3d 362, 370 (5th Cir. 2018) ("Together, the dearth of guiding case law and the importance of context in any resolution of these issues counsel strongly in favor of the doctrine of constitutional avoidance." (citing Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring)). To wit, it is inapposite to the Court's conclusion.

its FAC as true, which the Court *must* do at the motion to dismiss stage, they flunk Rule 9(b)'s heightened pleading standard. See In re Katrina, 495 F.3d at 205; Fed. R. Civ. P. 9(b); see also U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp., 519 Fed. App'x 890, 893 (5th Cir. 2013) (examining Fifth Circuit authority that "reaffirms the importance of Rule 9(b) in FCA claims"). Plaintiff-Relator does not allege that either USAA or Caremark were under any "established duty" to pay CMS during the periods when he made claims on the primary plan. (See Dkt. # 48.) Instead, the FAC amounts to a "formulaic recitation of the elements of a cause of action." PSKS, Inc. v. Leegin Creative Leather Prods., Inc., 615 F.3d 412, 417 (5th Cir. 2010) (quoting Twombly, 550 U.S. at 555). And, as both the U.S. Supreme Court and the Fifth Circuit have warned litigants like Plaintiff-Relator here, such threadbare recitations simply "will not do." Id.

In cases affirming a district court's dismissal of a *qui tam* relator's FCA claims, the Fifth Circuit has similarly reiterated how a plaintiff-relator cannot survive a motion to dismiss with a "broad and sweeping" complaint that "provid[es] no indicia of any actual knowledge of any FCA-violating fraud." Nunnally, 519 Fed. App'x at 893–94. This captures the essence of Plaintiff-Relator's complaint. (See Dkt. # 48.) For instance, his assertion that someone from "USAA's HR" large group health plan should not seek reimbursement of prescription drug costs paid by Medicare or Medicaid" is much too vague to be

actionable. (Dkt. # 48 at 11.) Plaintiff-Relator does not attempt to indicate from whom he received this information—pleading neither the individual's name, nor specific job description, nor even an approximate date or the means of communication in which he interacted with said individual(s). (See id.)

The FAC is rife with additional unwarranted factual inferences and unsubstantiated legal conclusions. These lie at the heartland of what the Fifth Circuit has instructed federal district courts like this one *not* to credit. See, e.g., Plotkin, 407 F.3d at 696. For example, blanket claims that Plaintiff-Relator can provide "many examples" of how "[USAA's and Caremark's] scheme extends well beyond USAA [*sic*] and Caremark's administration of USAA's large group health plan" fall short of Rule 9(b)'s heightened pleading bar. Cf. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Grubbs, 565 F.3d at 189–90 (applying the standard). Nor is it clear that from Plaintiff-Relator's exhibits that Defendants did anything contrary to law as to him individually, let alone that they have "knowingly" engaged in any conduct rising to the level of fraud. (Dkt. # 48 at 1, 4, 9–10, 14–15.) And even if USAA failed to honor the terms of Plaintiff-Relator's Medicare Part D or Extra Help plans, he admits that "USAA ultimately agreed to fix the issue and coordinate care for [him]." (Id. at 12.)

Although he claims that USAA "failed to [coordinate care] for any other employee in a similar position [to himself]," Plaintiff-Relator provides no particularized allegations as to "the who, what, when, and where" such that this court may allow him "access to the discovery process." Williams, 112 F.3d at 178. Accordingly, this Court must dismiss his claims pursuant to Rule 12(b)(6).[6]

As a final matter, the Court notes that Defendant Express Scripts has not appeared and did not join any of the Motions to Dismiss discussed above. Plaintiff-Relator has neither moved the Clerk to enter default against Express Scripts nor voluntarily dismissed his claims against it. Failure to timely move for default may result in the dismissal of Plaintiff-Relator's claims against Express Scripts for failure to prosecute.

CONCLUSION

Based on the foregoing, the Court will **GRANT** Defendants' Motions to Dismiss. As to Defendants USAA and Caremark, Plaintiff-Relator's FAC does not state any claims upon which relief can be granted. And Plaintiff-Relator lacks standing entirely for his claims against Optum. It is therefore **ORDERED** that all

[6] To the extent Plaintiff-Relator requests leave to amend in his responses to Defendants' Motions to Dismiss, he has not attached a Second Amended Complaint so that the Court may determine whether he can overcome the identified deficiencies. See supra. Should Plaintiff-Relator wish to amend further, he may only do so by leave of Court.

Plaintiff-Relator's claims against USAA, Caremark, and Optum be **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

**DATED**: San Antonio, Texas, August 18, 2026.

_______________________________________
David Alan Ezra
Senior United States District Judge